1
2
3
4
5
6

Lars C. Golumbic, *pro hac vice*
Sarah M. Adams *pro hac vice*
Rosemary Loehr, *pro hac vice*
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue NW
Washington, DC 20006
P: (202) 857-0620
F: (202) 659-4503
lgolumbic@groom.com
sadams@groom.com
rloehr@groom.com

7
8
9
10

Dylan D. Rudolph, Bar No. 278707
TRUCKER HUSS, APC
135 Main Street, 9th Floor
San Francisco, CA 94105
P: (415) 788-3111
F: (415) 421-2017
drudolph@truckerhuss.com

11
12
13

Attorneys for Defendants
*INTUIT INC.; THE EMPLOYEE BENEFITS*
*ADMINISTRATIVE COMMITTEE OF THE INTUIT*
*INC. 401 (K) PLAN*

14

Additional attorneys listed on the following page.

15
16

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
SAN JOSE DIVISION

17
18
19
20
21
22
23
24
25

DEBORAH RODRIGUEZ,
individually and as a representative of a class of
participants and beneficiaries on behalf of the
intuit Inc. 401 (k) Plan,

          Plaintiff,

v.

INTUIT INC.; THE EMPLOYEE BENEFITS
ADMINISTRATIVE COMMITTEE OF THE
INTUIT INC. 401(K) PLAN; and DOES 1 to
10 inclusive,

          Defendants.

Case No. 5:23-cv-05053-PCP

**DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION
COMPLAINT**

Hearing Date: March 14, 2024
Hearing Time: 10:00 a.m.
Hearing Place: Courtroom 8

Judge: The Honorable Casey P. Pitts

26
27
28

Lindsey Barnhart, Bar No. 294995
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
P: (650) 632-4700
F: (650) 632-4800
lbarnhart@cov.com

Robert Newman, *pro hac vice* pending
COVINGTON & BURLING LLP
850 10th Street, NW
Washington, DC 20001
P: (202) 662-5125
F: (202) 778-5125
rnewman@cov.com

William O'Neil, *pro hac vice* pending
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018
P: (212) 841-1103
F: (646) 441-9103
woneil@cov.com

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED .................................................................. 1

STATEMENT OF RELEVANT FACTS ..................................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 3

I.     INTRODUCTION ........................................................................................................ 3

II.    BACKGROUND ........................................................................................................... 4

   A.   Historical Treatment of Forfeitures ..................................................................... 4

   B.   Plaintiff's Allegations .......................................................................................... 6

III.   STANDARD OF REVIEW ........................................................................................... 7

IV.    ARGUMENT ................................................................................................................. 7

   A.   Plaintiff Fails to State a Claim for Breach of Fiduciary Duty ............................. 7

     1.   Plaintiff Fails to Allege that Either Defendant Functioned as a Fiduciary ...................... 7

       a.   Decisions About Plan Funding Are Settlor Decisions ................................. 8

       b.   The Plan's Terms Incorporate the Settlor/Fiduciary Distinction ............................... 9

         i.    Intuit Decided Its Level of Contribution ................................. 9

         ii.   The Committee Had No Decision-Making Role in the Use of Forfeitures ........... 10

     2.   Using Forfeitures to Offset Employer Contributions Is Not a Fiduciary Breach .......... 13

     3.   Plaintiff Fails to Plead the Necessary Element of Damages .......................................... 14

   B.   Plaintiff Fails to State a Claim for Violation of the Anti-Inurement Clause ..................... 16

   C.   Plaintiff Fails to Allege Any Prohibited Transaction Occurred .......................................... 18

   D.   Plaintiff Fails to State a Claim Against Intuit for Failure to Monitor ................................. 20

V.     CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*,
    953 F.2d 587 (11th Cir. 1992) ...................................................................................17

*Anderson v. Intel Corp. Inv. Policy Comm.*,
    579 F. Supp. 3d 1133 (N.D. Cal. 2023) ...................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................7

*B.R. v. Beacon Health Options*,
    No. 16-cv-04576-MEJ, 2017 WL 2351973 (N.D. Cal. May 31, 2017)........................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................7, 20

*Coulter v. Morgan Stanley & Co.*,
    53 F.3d 361 (2d Cir. 2014)..........................................................................................9

*Curtiss-Wright v. Schoonejongen*,
    514 U.S. 73 (1995)......................................................................................................6

*Cyr v. Reliance Standard Life Ins. Co.*,
    642 F.3d 1202 (9th Cir. 2011) ..................................................................................12

*Daniels v. Am.'s Wholesale Lender*,
    No. ED CV 11-1287 PA (MANx), 2011 WL 13225097 (C.D. Cal. Oct. 24, 2011)......15

*Dimou v. Thermo Fisher Sci. Inc.*,
    No. 3:23-cv-01732, Dkt. 1 (S.D. Cal. Sept. 19, 2023)..................................................6

*Flanigan v. Gen. Elec. Co.*,
    242 F.3d 78 (2d Cir. 2001).........................................................................................17

*Gelardi v. Pertec Comput. Corp.*,
    761 F.2d 1323 (9th Cir. 1985) ..................................................................................12

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
    465 F.3d 1123 (9th Cir. 2006) ..................................................................................15

*Holliday v. Xerox Corp.*,
    732 F.2d 548 (6th Cir. 1984) ....................................................................................17

*Horvath v. Keystone Health Plan East, Inc.*,
    333 F.3d 450 (3d Cir. 2003)......................................................................................15

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) ...............................................................................8, 16, 17

*Hutchins v. HP Inc.*,
    No. 5:23-cv-05875, Dkt. 1 (N.D. Cal. Nov. 11, 2023) ..................................6

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) .........................................................................................4

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) ..........................................................................8, 18, 20

*Maez v. Mountain States Tel. & Tel., Inc.*,
    54 F.3d 1488 (10th Cir. 1995) ......................................................................17

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ........................................................................7

*McManus v. The Clorox Co.*,
    4:23-cv-05325, Dkt. 1 (N.D. Cal. Oct. 18, 2023) ..........................................6

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)......................................................................................7, 8

*Perez-Cruet v. Qualcomm Inc.*,
    No. 3:23-cv-01890, Dkt. 1 (S.D. Cal. Oct. 16, 2023) ....................................6

*Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*,
    No. LA CV14-02866 JAK (MANx), 2015 WL 13917970 (C.D. Cal. July 28, 2015) ...................9

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
    541 U.S. 1 (2004)...........................................................................................16

*Santomenno v. Transamerica Life Ins. Co.*,
    883 F.3d 833 (9th Cir. 2018) ........................................................................12

*Solis v. Webb*,
    931 F. Supp. 2d 936 (N.D. Cal. 2012) ...........................................................6

*Spink v. Lockheed Corp.*,
    125 F.3d 1257 (9th Cir. 1997) ..........................................................16, 19, 20

*The Depot, Inc. v. Caring for Montanans*,
    915 F.3d 643 (9th Cir. 2019) ..........................................................................7

*Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*,
    516 F.3d 719 (8th Cir. 2008) ..........................................................................9

*Useden v. Acker*,
   947 F.2d 1563 (11th Cir. 1991) ...................................................................12

*Winsor v. Sequoia Benefits & Ins. Servs. LLC*,
   62 F. 4th 517 (9th Cir. 2023) ......................................................................15

*Wise v. Verizon Commc'ns Inc.*,
   600 F.3d 1180 (9th Cir. 2010) ....................................................................14

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ......................................................13, 14, 19

**Statutes**

26 U.S.C. § 401(a)(8) ....................................................................................5

29 U.S.C. § 1002(21)(A) .............................................................................11

29 U.S.C. § 1053 ............................................................................................4

29 U.S.C. § 1053(a)(1) ..................................................................................4

29 U.S.C. § 1053(a)(2)(B) .............................................................................4

29 U.S.C. § 1102(a)(1) ..................................................................................6

29 U.S.C. § 1104(a)(1) ................................................................................13

29 U.S.C. § 1106(a)(1) ..........................................................................18, 19

29 U.S.C. § 1204(a) .......................................................................................4

41 U.S.C. § 6701 ..........................................................................................11

**Regulations**

26 C.F.R. § 1.401-1(b)(1) ..............................................................................5

29 C.F.R. § 2509.75 .....................................................................................12

88 Fed. Reg. 12282 ........................................................................................5

**Other Authorities**

H.R. Rep. No. 99–841, pt. 2 (1986) ...............................................................5

Pub. L. No. 99-514, 100 Stat. 2085 (1986) ...................................................5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **NOTICE OF MOTION AND MOTION**

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, March 14, 2024, at 10:00 AM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable P. Casey Pitts, United States District Judge, Northern District of California, located at 280 South First Street, San Jose, CA 95113, in Courtroom 8, 4th Floor, or by remote conferencing as directed by the Court, Defendants Intuit Inc. and the Employee Benefits Administrative Committee of the Intuit Inc. 401(k) Plan ("Defendants") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an Order dismissing the Complaint brought by Plaintiff Deborah Rodriguez.

For the reasons set forth in the accompanying Memorandum of Points and Authorities, Defendants respectfully move for dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6), given that, even accepting Plaintiff's well-pled factual allegations as true, Plaintiff has failed to state a claim for any ERISA violation.

## **STATEMENT OF THE ISSUES TO BE DECIDED**

Whether the Complaint fails to state a claim for any violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").

Whether the Complaint fails to state a claim for breach of ERISA fiduciary duties where Plaintiff has failed to adequately allege that Defendants functioned as fiduciaries with respect to the conduct complained of in the Complaint.

Whether the Complaint fails to state a claim for breach of ERISA fiduciary duties where Plaintiff has failed to adequately allege that Defendants breached any fiduciary duties.

Whether the Complaint fails to state a claim for breach of ERISA fiduciary duties where Plaintiff has failed to adequately allege that Plaintiff suffered any damages.

Whether the Complaint fails to state a claim for breach of ERISA's anti-inurement rule where Plaintiff has failed to adequately allege that forfeitures were used for any purpose other than to pay benefits and expenses.

NOTICE OF MOTION AND MOTION TO
DISMISS

Case No. 5:23-cv-05053-PCP

1    Whether the Complaint fails to state a claim under ERISA's prohibited transaction rules

2    where Plaintiff has failed to adequate allege that Defendants functioned as fiduciaries, has failed to

3    identify a covered transaction, and has failed to adequate allege that any self-dealing occurred.

4    Whether the Complaint fails to state a claim for breach of ERISA's duty to monitor where

5    Plaintiff failed to adequately allege an underlying breach and has failed to allege facts sufficient to

6    show any violation of duty by the appointing fiduciary.

7    **STATEMENT OF RELEVANT FACTS**

8    Defendant Intuit Inc. is the plan sponsor of the Intuit Inc. 401(k) Plan ("Plan"), Complaint,

9    Dkt. 1 ("Compl.") ¶ 6, which is a defined contribution, individual account, pension benefit plan. *Id*.

10   ¶ 4.  The Employee  Benefits Administrative Committee of the Intuit Inc. 401(k) Plan

11   ("Committee") was delegated certain responsibilities with respect to the Plan.  The Plan is funded in

12   multiple ways, including through withholding of wages by Plan participants and through Company

13   matching contributions. *See id*. ¶ 13.  For each year of the class period, the Company made certain

14   matching contributions to participants' accounts. *See id*.

15   The Plan's governing plan document provides for the forfeiture, under certain circumstances,

16   of non-vested matching contributions in participant accounts. *See* Declaration of Sarah M. Adams in

17   Support of Defendants' Motion to Dismiss Plaintiff's Complaint, Ex. A § 6.2.  At the start of the

18   putative class period, the plan document mandated that forfeitures "shall be applied, at [Intuit's]

19   election, to: (i) with respect to forfeitures of Matching Contributions or Safe Harbor Matching

20   Contributions, reduce the Participating Employers' obligation to make Safe Harbor Matching

21   Contributions…" *Id*. § 6.2(e).  The Plan Document required that "[a]ll reasonable fees and expenses

22   of the Administrator, the Committee and/or the Trustee incurred in the performance of their duties

23   hereunder or under the Trust shall be charged against Participants' Accounts, unless the Employer

24   elects to pay such fees and expenses." *Id*. § 10.1.

25   Later, effective January 1, 2020, the Plan Document was amended to permit for the first time

26   the use of forfeitures to pay Plan expenses:  "(e) [Forfeitures] shall be applied, at [Intuit's] election,

27

28   NOTICE OF MOTION AND MOTION TO
     DISMISS

1  to: (i) pay expenses of administering the Plan; (ii) with respect to forfeitures of Matching

2  Contributions or Safe Harbor Matching Contributions, reduce the Participating Employers'

3  obligation to make Safe Harbor Matching Contributions; and (iii) with respect to forfeitures of Profit

4  Sharing Contributions, allocated as Profit Sharing Contributions pursuant to Section 4.7."  Plan Doc.

5  Amend. 2.

6  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

7  **I.     INTRODUCTION**

8          Plaintiff attempts to manufacture a new type of ERISA claim by confusing and blurring the

9  well-established distinction between settlor and fiduciary roles in retirement plans covered by

10  ERISA.[1]  In doing so, she upends decades of unequivocal statutory law and agency interpretive

11  guidance and, as a result, fails to state any viable claim.

12          The law is clear:  When participants leave a retirement plan before fully vesting in their

13  benefits, the employer contributions they forfeit as a result of their departure may be applied as an

14  offset against the employer's future contributions to the plan, if the plan's governing document so

15  provides.  Such an offset is permissible under ERISA because, in an ERISA plan, the employer or

16  "plan sponsor" acts as the settlor of a trust and determines the level of contributions it will make to

17  the plan.  The extent to which forfeitures are used to satisfy employer contribution obligations

18  merely reflects the employer's decision, as settlor, regarding how much to contribute.

19          Plan fiduciaries, by contrast, exercise discretionary authority over the assets within the plan

20  to provide the benefits specified under the governing plan document.  However, Plaintiff, a

21  participant in the Intuit Inc. 401(k) Plan (the "Plan"), seeks in her Complaint, Dkt. 1 ("Compl."), to

22  impose on plan fiduciaries an obligation to use forfeitures as a mechanism to increase the employer's

23  contributions, a realm that ERISA rightfully reserves to the plan sponsor.  For this fundamental

24  reason and as explained in detail below, the Complaint fails to state any viable claim upon which

25  relief can be granted.

26

27  [1] Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq*.

NOTICE OF MOTION AND MOTION TO

28  DISMISS

Case No. 5:23-cv-05053-PCP

1   **II.   BACKGROUND**

2       **A.   Historical Treatment of Forfeitures**

3          Among its many technical rules, ERISA establishes the maximum vesting schedule a plan

4   can impose.  *See* 29 U.S. § 1053(a)(2)(B) (requiring full vesting within 3 years or graduated vesting

5   over 6 years for defined contribution plans).[2]  Because ERISA does not require immediate full

6   vesting, participants who leave employment without fully satisfying their plan's vesting

7   requirements may forfeit some of their benefits.  Although participants are always fully vested in the

8   contributions they make toward their own plan accounts, 29 U.S.C. § 1053(a)(1); Compl. ¶ 18,

9   unvested departing participants may forfeit the contributions the employer made to the plan on their

10  behalf, *see id*. § 1053(a)(2)(B).  Plaintiff's Complaint attempts to paint as a novel issue the question

11  of what the permissible uses are for those unvested employer contributions.  However, this question

12  has long been answered.

13         Indeed, for decades, it has been clear that forfeitures may be used to offset employer

14  contributions.  Ironically, Plaintiff comes to court claiming entitlement to the forfeitures of other

15  participants, but, at the time ERISA was enacted in 1974, the Internal Revenue Code (the "Code")[3]

16  expressly *prohibited* applying forfeitures to increase the benefits of remaining participants.  *See* 26

17

18  ---

   [2] "As its names imply, a 'defined contribution plan' or 'individual account plan' promises the

19  participant the value of an individual account at retirement, which is largely a function of the
   amounts contributed to that account and the investment performance of those contributions. A

20  'defined benefit plan,' by contrast, generally promises the participant a fixed level of retirement
   income, which is typically based on the employee's years of service and compensation." *LaRue v.*

21  *DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 n.1 (2008).  The Plan is a defined contribution
   plan.  Compl. ¶ 4.

22     [3] Although ERISA and the Code are separate statutes, when it comes to provisions governing tax-
   qualified ERISA plans, the Departments of Labor and Treasury are required to work together in

23  enforcing ERISA to the extent it overlaps with the Code.  *See* 29 U.S.C. § 1204(a) ("Whenever in
   this chapter or in any provision of law amended by this chapter the Secretary of the Treasury and the

24  Secretary of Labor are required to carry out provisions relating to the same subject matter (as
   determined by them) they shall consult with each other and shall develop rules, regulations,

25  practices, and forms which, to the extent appropriate for the efficient administration of such
   provisions, are designed to reduce duplication of effort, duplication of reporting, conflicting or

26  overlapping requirements, and the burden of compliance with such provisions by plan
   administrators, employers, and participants and beneficiaries.").

27

28  NOTICE OF MOTION AND MOTION TO
   DISMISS

Case No. 5:23-cv-05053-PCP

U.S.C. § 401(a)(8) (1962) (providing that "a trust forming part of a pension plan will not constitute a qualified trust under section 401(a) unless the plan provides that forfeitures must not be applied to increase the benefits any employee would otherwise receive under the plan").

As defined contribution plans became more prominent in the U.S., Congress made changes to the Tax Code provisions on forfeitures but did not waver from the principle that forfeitures may be used to offset employer contributions.  In the Tax Reform Act of 1986, Congress amended Code § 401(a)(8) to replace the term "pension plan" with the term "defined benefit plan."[4]  Pub. L. No. 99-514, 100 Stat. 2085, § 1119(a) (1986).  The House Conference Report discussing the bill explained that "**forfeitures arising in any defined contribution plan** . . . **can be either** (1) reallocated to the accounts of other participants in a nondiscriminatory fashion, **or** (2) **used to reduce future employer contributions or administrative costs**."  H.R. Rep. No. 99–841, pt. 2 at 442 (1986) (emphases added).  Congress has therefore made clear that participants cannot require that forfeitures be used to increase their benefits, either directly or through reduction of administrative costs.  At all times, it has been permissible for an employer to use forfeitures to reduce future employer contributions if done in accordance with the plan document.[5]

---

[4] The Code's prohibition on the use of forfeitures to increase benefits was driven by a concern that putting forfeitures—which could not be precisely anticipated—toward benefits could potentially violate the requirement that a tax-qualified plan's benefits be "definitely determinable."  *See* 26 C.F.R. §1.401-1(b)(1).  Because defined contribution plans employ a different benefit structure than defined benefit plans, this concern did not apply in the same way to defined contribution plans, so Congress revised the statutory section to apply only to defined benefit plans.

[5] Agency guidance has consistently confirmed that forfeitures may be used to offset employer contributions as provided in the plan document.  As recently as this year, the Treasury Department reiterated in proposed regulations that, where a defined contribution plan provides for forfeitures, the plan needs to clarify that "(1) Forfeitures will be used for one or more of the following purposes: (i) To pay plan administrative expenses; (ii) To reduce employer contributions under the plan; or (iii) To increase benefits in other participants' accounts in accordance with plan terms[.]"  88 Fed. Reg. 12282, 12285 (Feb. 27, 2023).  The Department of Labor has repeatedly observed that plans allow forfeitures to be used to offset contributions without ever raising an issue with the practice. *See, e.g.*, FAB 2012-02R; FAB 2006-01; DOL Adv. Op. 79-56A, 1979 WL 7031 (Aug. 9, 1979).

NOTICE OF MOTION AND MOTION TO DISMISS

Case No. 5:23-cv-05053-PCP

1

### B.    Plaintiff's Allegations

2          Against this backdrop, one plaintiffs' law firm ignores the relevant history and instead

3   pursues an alternative and novel theory:  that the use of forfeitures to offset employer contributions

4   somehow violates ERISA.[6]  Plaintiff alleges that "Defendants chose" to use forfeitures to offset

5   employer contributions.  Compl. ¶¶ 20, 33, 34.  "Defendants" are Intuit Inc. ("Intuit" or the

6   "Company") and the Employee Benefits Administrative Committee of the Intuit Inc. 401(k) Plan

7   (the "Committee").  Intuit is the Plan sponsor.  *Id.* ¶ 6.  The Committee is the named fiduciary and

8   plan administrator and is tasked with certain fiduciary functions as set forth in the Plan document.[7]

9          Plaintiff complains that, from 2018 through 2021, the Plan was injured because it received

10  less in future employer contributions than it would have had the forfeitures not been applied as an

11  offset to employer contributions.  *Id.* ¶¶ 20, 25, 34, 47, 52, 53, 57, 58.  Plaintiff alleges that these

12  acts violated ERISA's fiduciary duties, as well as statutory anti-inurement and prohibited transaction

13  rules.  For the reasons set forth below, this Court should not be the first to entertain this new theory,

14  and Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be

15  granted.

16

17

---

18  [6] Plaintiff's counsel filed a rash of 5 nearly identical cases over the course of two months, changing
19  little more than names and numbers.  *Compare* Dkt. 1 *with Dimou v. Thermo Fisher Sci. Inc.*, 3:23-
    cv-01732, Dkt. 1 (S.D. Cal. Sept. 19, 2023), *Perez-Cruet v. Qualcomm Inc.*, 3:23-cv-01890, Dkt. 1
20  (S.D. Cal. Oct. 16, 2023), *McManus v. The Clorox Co.*, 4:23-cv-05325, Dkt. 1 (N.D. Cal. Oct. 18,
    2023), and *Hutchins v. HP Inc.*, 5:23-cv-05875, Dkt. 1 (N.D. Cal. Nov. 11, 2023).

21  [7] One of ERISA's "core functional requirements" is that "[e]very employee benefit plan shall be
    established and maintained pursuant to a written instrument."  *Curtiss-Wright v. Schoonejongen*, 514
22  U.S. 73, 83 (1995) (quoting 29 U.S.C. § 1102(a)(1)).  This plan document lies at the heart of every
    ERISA claim.  *See id.* ("A written plan is to be required in order that every employee may, on
23  examining the plan documents, determine exactly what his rights and obligations are under the
    plan.") (quotation omitted).  For this reason, where a complaint is "predicated entirely on the terms
24  and benefits of the [ERISA plan], the Court may consider a document that contains the Plan's terms
    and benefits even though Plaintiffs do not reference the document in the [complaint]."  *B.R. v.*
25  *Beacon Health Options*, No. 16-cv-04576-MEJ, 2017 WL 2351973, at *3 (N.D. Cal. May 31, 2017);
    *see also Solis v. Webb*, 931 F. Supp. 2d 936, 943 (N.D. Cal. 2012).  Therefore, because the plan
26  document forms the basis for Plaintiff's claims, Defendants submit for the Court's consideration the
    governing Plan document for the Intuit Inc. 401(k) Plan as incorporated into the Complaint.  *See*
27  Declaration of Sarah M. Adams,  Exhibit A (the "Plan Document" or "Plan Doc").

    NOTICE OF MOTION AND MOTION TO
28  DISMISS

Case No. 5:23-cv-05053-PCP

1    III.    **STANDARD OF REVIEW**

2           To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint

3    "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

4    its face.'"  *The Depot, Inc. v. Caring for Montanans*, 915 F.3d 643, 652 (9th Cir. 2019) (quoting

5    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *cert. denied*, 140 S. Ct. 223 (2019).  "Factual

6    allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

7    *Twombly*, 550 U.S. 544, 555 (2007).  Although courts must "accept factual allegations in the

8    complaint as true and construe the pleadings in the light most favorable to the nonmoving party,"

9    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), legal conclusions

10   and conclusory allegations—including those contradicted by documents referenced in a complaint—

11   are not entitled to be assumed true.  *Twombly*, 550 U.S. at 554-55; *Manzarek*, 519 F.3d at 1031.

12   IV.    **ARGUMENT**

13       A.    **Plaintiff Fails to State a Claim for Breach of Fiduciary Duty**

14          Plaintiff claims that, by applying forfeitures as an offset to employer contributions,

15   Defendants breached fiduciary duties of loyalty (Count I) and prudence (Count II) to the Plan.  "To

16   state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant

17   was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered

18   damages."  *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).  As

19   explained below, Plaintiff has failed to allege facts sufficient to satisfy *any* of the required elements

20   of an ERISA fiduciary breach claim.

21           1.    **Plaintiff Fails to Allege that Either Defendant Functioned as a Fiduciary**

22          Plaintiff's fiduciary breach claims must be dismissed for the fundamental reason that she has

23   failed to allege that either Intuit or the Committee "was acting as a fiduciary (that is, was performing

24   a fiduciary function) *when taking the action subject to complaint*."  *Pegram v. Herdrich*, 530 U.S.

25   211, 226 (2000) (emphasis added).  This is the "threshold question" in "every case charging breach

26   of ERISA fiduciary duty[.]"  *Id*.  Resolving this question is crucial because ERISA permits

27

28   NOTICE OF MOTION AND MOTION TO
     DISMISS
                                    7                          Case No. 5:23-cv-05053-PCP

1    employers to wear "two hats"—one settlor and one fiduciary—and therefore the same person or

2    entity may be a fiduciary for some purposes and not for others.  *Id*. at 225.  Here, core ERISA

3    principles, together with the plain language of the Plan Document, make clear that neither Defendant

4    functioned as a fiduciary with respect to the action about which Plaintiff complains.

5         Plaintiff alleges that "Intuit and the Committee (together 'Defendants') are both named

6    fiduciaries of the Plan" and then attempts to state fiduciary breach claims without differentiating

7    between the two.  This is both demonstrably incorrect and legally insufficient.  Intuit is not the

8    named fiduciary of the Plan, as the Plan Document plainly states:  "'Administrator,' as defined in

9    ERISA Section 3(16)(A), means *the Committee* as provided for in Section 7.3, *which also shall be*

10   *the named fiduciary* (as defined in ERISA Section 402(a)(2))."  Plan Doc. § 2.2 (emphasis added).

11   Regardless, status as a named fiduciary does not relieve Plaintiff of the burden to plead and prove

12   that each Defendant was wearing a fiduciary hat with respect to the acts alleged in the Complaint.

13   *See Bafford*, 994 F.3d at 1026-28.

14              a.   **Decisions About Plan Funding Are Settlor Decisions**

15        Plaintiff complains that Defendants' decisions reduced the amount of contributions Intuit

16   made to the Plans.  Compl. ¶¶ 34, 41.  The fundamental flaw with Plaintiff's theory is that decisions

17   regarding plan funding are settlor decisions, not fiduciary decisions.  As the Supreme Court has

18   repeatedly made clear, "ERISA's fiduciary duty requirement simply is not implicated where [an

19   employer], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan

20   such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are

21   calculated."  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).  This makes sense because

22   "[n]othing in ERISA requires employers to establish employee benefits plans."  *Lockheed Corp. v.*

23   *Spink*, 517 U.S. 882, 887 (1996) (citation omitted).  Because they do not have to provide benefit

24   plans in the first place, employers get to choose how much they will contribute to a plan.  *Id*. ("Nor

25   does ERISA mandate what kind of benefits employers must provide if they choose to have such a

26   plan."); *see also Pegram*, 530 U.S. at 226 ("The specific payout detail of the plan was, of course, a

27

28   NOTICE OF MOTION AND MOTION TO
     DISMISS

feature that the employer as plan sponsor was free to adopt without breach of any fiduciary duty under ERISA, since an employer's decisions about the content of a plan are not themselves fiduciary acts.").  As the court in *Coulter v. Morgan Stanley & Co.* explained, "non-fiduciary duties generally include "decisions relating to the timing and amount of contributions." 753 F.3d 361, 367 (2d Cir. 2014) (quoting Lee T. Polk, ERISA Practice & Litigation § 3:32 (2013)).  The *Coulter* court further noted that a decision regarding contributions "does not constitute fiduciary conduct even if the challenged conduct negatively impacted the Plans." *Id.*; *see also Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) (holding that a corporate officer "who chooses to pay corporate obligations in lieu of employer contributions to an ERISA plan does not breach a fiduciary duty"); *Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*, No. LA CV14-02866 JAK (MANx), 2015 WL 13917970, at *14 (C.D. Cal. July 28, 2015) ("Funding a plan is a settlor function.").  The law is clear:  When an employer decides how much to contribute to an ERISA plan, that act is settlor, not fiduciary, and, as such, cannot support a claim for breach of fiduciary duty.

### b.  The Plan's Terms Incorporate the Settlor/Fiduciary Distinction

The Plan Document here codifies the fundamental ERISA distinction between settlor and fiduciary functions by explicitly assigning to *Intuit*—not the Committee or any other fiduciary—the decision whether to use forfeitures to offset employer contributions.  Plaintiff's characterization of this decision as "Defendants'" fiduciary "choice", Compl. ¶¶ 34, 40-41, disregards the plain language of the Plan Document.

### i.  Intuit Decided Its Level of Contribution

In designing the Plan and drafting the Plan Document, Intuit made clear that it was retaining for itself its full settlor authority to determine its level of contributions to the Plan—both whether it would contribute an amount net of forfeitures and whether it would contribute toward the payment of administrative expenses.  Since before the putative class period began on January 1, 2018, the Plan Document mandated how forfeitures would be applied:  forfeitures "**shall be applied, at**

1    **[Intuit's] election**, **to**: (i) with respect to forfeitures of Matching Contributions or Safe Harbor

2    Matching Contributions, **reduce the Participating Employers' obligation to make Safe Harbor**

3    **Matching Contributions**…"  Plan Doc. § 6.2(e) (emphases added).  The Plan Document _**did not**_

4    _**allow**_ forfeitures to be used to pay administrative expenses, _id._, and Plaintiff's allegation that "the

5    Plan provides that forfeited nonvested accounts may be used to pay Plan administrative expenses[,]"

6    Compl. ¶ 20, is patently untrue for this time.  Rather, the Plan Document mandated that "[a]ll

7    reasonable fees and expenses of the Administrator, the Committee and/or the Trustee incurred in the

8    performance of their duties hereunder or under the Trust **_shall_** _be charged against Participants'_

9    _Accounts_, unless _the Employer_ elects to pay such fees and expenses."  _Id.._ § 10.1 (emphasis added).

10        Later, effective January 1, 2020, the Plan Document was amended to permit for the first time

11    the use of forfeitures to pay Plan expenses.  Still the ability to determine the level of the employer

12    contributions and how they would be used remained with Intuit:  "(e) [Forfeitures] shall be applied,

13    **at [Intuit's] election**, to: (i) pay expenses of administering the Plan; (ii) with respect to forfeitures of

14    Matching Contributions or Safe Harbor Matching Contributions, reduce the Participating

15    Employers' obligation to make Safe Harbor Matching Contributions; and (iii) with respect to

16    forfeitures of Profit Sharing Contributions, allocated as Profit Sharing Contributions pursuant to

17    Section 4.7."  Plan Doc. Amend. 2.

18        Thus, at all times, the Plan Document has reflected Intuit's settlor determination as plan

19    sponsor to provide a level of benefits based on contributions _net_ of forfeitures.  Plaintiff has no right

20    to demand more benefits than the plan sponsor decided to provide or than the Plan terms require.

21              **ii.  The Committee Had No Decision-Making Role in the Use of Forfeitures**

22        Because Intuit—not the Committee—had responsibility under the Plan for deciding how

23    forfeitures are to be used, Plaintiffs' claims against the Committee must be dismissed because the

24    Committee had no discretion with respect to the use of forfeitures.  The entire Complaint is

25    constructed around the premise that the Committee should have chosen to do something different

26    with the Plan's forfeitures.  _See, e.g._, Compl. ¶¶ 20, 25, 33, 34, 40, 41, 47, 52.  Yet the Complaint

27

28    

fails to point to any provision in the Plan Document that imbued the Committee with such authority. This glaring omission is unsurprising where, as explained above, the Plan Document reserves to *Intuit* the right to decide how forfeitures will be applied.  Plan Doc. § 6.2(e)  (forfeitures "shall be applied at [Intuit's] election…"); Plan Doc. Amend 2 ("[Forfeitures] shall be applied, at [Intuit's] election…").  The Committee's only relevant task was the administrative function of "allocat[ing] to the Accounts of each Participant the Contributions made on his or her behalf[.]"  *Id.* § 4.2(a).  The Committee had no authority to compel what the amount of those contributions would be or whether they would be net of forfeitures—only to allocate to participant accounts whatever amounts Intuit contributed.

It is unsurprising that the Plan does not imbue the Committee with the responsibility of determining whether there might be some way it could compel Intuit to contribute more.  A plan fiduciary tasked with administrative responsibilities would be unlikely to have the necessary information and insight to evaluate whether forcing the employer to put in more money would be in the participants' best interest.  In fact, it is not a foregone conclusion that it would always be in participants' best interest for an employer to contribute more money to a plan.  Indeed, there are situations in which it may *not* be to the participants' benefit for a fiduciary to attempt to force an employer to make additional contributions to the plan.[8]  A plan fiduciary could not possibly be expected to have sufficient information or authority to make an evaluation that incorporates acts of

---

[8] For example, the McNamara-O'Hara Service Contract Act, 41 U.S.C. §§ 6701–6707 (the "SCA"), requires employers to pay covered employees a specified level of *total* compensation, which includes both wages and benefits such as the employer's contributions to an ERISA 401(k) plan. *See* https://www.dol.gov/agencies/whd/government-contracts/service-contracts.  For purposes of satisfying the total compensation requirement under the SCA, an employer may not consider any forfeitures allocated to an employee's 401(k) account as qualifying compensation.  As the Department of Labor explained, "[p]ension plans often provide that forfeitures of employees who do not vest under the plan will be used to reduce the employer's contribution in the following year.  For SCA purposes, an employer may not use forfeitures as a credit towards satisfying the requirements of an applicable wage determination."  https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch14.pdf.  For a plan whose participants are SCA-covered employees, choosing to apply forfeitures to administrative expenses rather than contributions would mean the employer would have to contribute *more* to the plan and pay *less* compensation outside the plan.  The same could be true under union contracts or other agreements an employer enters into regarding salary and benefits.

11

1 corporate decision-making that occur outside the plan.  This is why ERISA's definition of

2 "fiduciary" is narrowly tailored to sweep in only those persons with discretionary authority over the

3 plan or its assets.  *See* 29 U.S.C. § 1002(21)(A).

4      The law is clear that, where there is no discretion, there is no fiduciary status.  In the early

5 days of ERISA, the Department of Labor issued a set of questions and answers to provide details

6 about what activities would give rise to fiduciary status under the statute.

7      D–2 Q: Are persons who have no power to make any decisions as to plan policy,
       interpretations, practices or procedures, but who perform the following
8      administrative functions for an employee benefit plan, within a framework of
       policies, interpretations, rules, practices and procedures made by other persons,
9      fiduciaries with respect to the plan:
       . . .
10     (8) **Collection of contributions and application of contributions as provided in
       the plan**;
11     . . .
       A: No. Only persons who perform one or more of the functions described in section
12     3(21)(A) of the Act with respect to an employee benefit plan are fiduciaries.
       Therefore, a person who performs purely ministerial functions such as the types
13     described above for an employee benefit plan within a framework of policies,
       interpretations, rules, practices and procedures made by other persons is not a
14     fiduciary because such person does not have discretionary authority or
       discretionary control respecting management of the plan, does not exercise any
15     authority or control respecting management or disposition of the assets of the plan,
       and does not render investment advice with respect to any money or other property
16     of the plan and has no authority or responsibility to do so.

17 29 C.F.R. § 2509.75–8 (emphasis added).

18      Here, the only task the Plan Document assigns to the Committee that implicates forfeitures is

19 to "appl[y] [] contributions as provided in the plan[.]"  *Id.*  Merely executing contract terms

20 determined by others does not give rise to fiduciary status.  *See Santomenno v. Transamerica Life

21 Ins. Co.*, 883 F.3d 833, 840 (9th Cir. 2018) (holding that service provider is not "acting as a fiduciary

22 when withdrawing precise, preset fees…"); *see also Useden v. Acker*, 947 F.2d 1563, 1575 (11th

23 Cir. 1991) ("An entity which assumes discretionary authority or control over plan assets will not be

24 considered a fiduciary if that discretion is sufficiently limited by a pre-existing framework of

25 policies, practices and procedures."); *Gelardi v. Pertec Comput. Corp.*, 761 F.2d 1323, 1325 (9th

26 Cir. 1985) (per curiam) (holding that "processing claims within a framework of policies, rules, and

27

28 NOTICE OF MOTION AND MOTION TO
   DISMISS

Case No. 5:23-cv-05053-PCP

1   procedures established by others" does not give rise to fiduciary status), *overruled on other grounds*

2   *by Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011).  Because the

3   Committee had no authority to decide whether or how to apply forfeitures but only to allocate in

4   accordance with the Plan Document whatever contributions the Plan received, the claims against the

5   Committee fail for lack of fiduciary status and should be dismissed accordingly.

6       **2.  Using Forfeitures to Offset Employer Contributions Is Not a Fiduciary Breach**

7       Not only has Plaintiff failed to allege any fiduciary decisions regarding forfeitures, she has

8   failed to allege a plausible claim that any breach occurred.  She maintains that "Defendants" (she

9   does not differentiate between them) breached their fiduciary duties by failing to apply the

10  forfeitures in a manner that would benefit the Plan rather than Intuit.  The suggestion that ERISA

11  required Defendants to apply the forfeitures to administrative expenses rather than employer

12  contributions is without legal support.

13      A plan fiduciary is obligated to discharge its duties "in accordance with the documents and

14  instruments governing the plan insofar as such documents and instruments are consistent with the

15  provisions of this subchapter and subchapter III."[9]  29 U.S.C. § 1104(a)(1)(D).  The Ninth Circuit

16  has made clear that a fiduciary does not breach ERISA when it acts in compliance with the lawful

17  terms of a plan document.  *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004).

18  In *Wright*, participants claimed that plan fiduciaries breached their duties by declining to allow them

19  to sell more of the company stock they held within the plan, when the plan document limited how

20  much a participant could sell each year.  *Id*. at 1094-96.  The Ninth Circuit rejected the fiduciary

21  breach claim, explaining that, "[b]ecause Defendants complied with the Plan's lawful terms and

22  were under no legal obligation to deviate from those terms, they provided Plaintiffs with their

23  benefits due."  *Id*. at 1100.

24      As in *Wright*, Defendants complied with the Plan terms and were under no obligation to

25  deviate from them.  For the first half of the putative class period, the Plan Document *mandated* that

26  _____

27  [9] The Complaint is devoid of any reference to any provision of the Plan Document that is inconsistent with ERISA.

NOTICE OF MOTION AND MOTION TO

28  DISMISS

13

Case No. 5:23-cv-05053-PCP

1   the forfeitures be used, if at all, to offset employer contributions.  Plan Doc. § 6.2(e) (providing that

2   forfeitures "**shall be applied**, at the Company's election, **to**: (i) with respect to forfeitures of

3   Matching Contributions or Safe Harbor Matching Contributions, **reduce the Participating**

4   **Employers' obligation to make Safe Harbor Matching Contributions**…") (emphasis added).

5   Nothing in the Plan Document even *permitted* administrative expenses to be paid with forfeitures at

6   this time.  *See id.* § 10.1 (mandating that "[a]ll reasonable fees and expenses . . . **shall be charged**

7   **against Participants' Accounts**, unless the Employer elects to pay such fees and expenses")

8   (emphasis added).

9          Even after the Plan was amended to allow forfeitures to be applied either to offset

10   contributions or to pay administrative expenses, applying forfeitures toward employer contributions

11   did not constitute a breach of fiduciary duty.  Plaintiff has not alleged that the forfeiture allocation

12   failed to comply with the terms of the Plan Document or that the terms were unlawful.  *See Wright*,

13   360 F.3d at 1100.  Plaintiff does not dispute that she received the benefits promised by the terms of

14   the Plan Document, and that is all the fiduciary is required to provide with the assets available under

15   the Plan.

16          **3.   Plaintiff Fails to Plead the Necessary Element of Damages**

17          As with every other element of her fiduciary breach claim, Plaintiff has failed to plead

18   plausible factual allegations to support her claim that the Plan was damaged, a necessary element of

19   a fiduciary breach claim.  *See Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010)

20   ("The claim for fiduciary breach gives a remedy for injuries to the ERISA plan as a whole, but not

21   for injuries suffered by individual participants as a result of a fiduciary breach."); *Bafford*, 994 F.3d

22   at 1026.

23          Plaintiff's allegations fail on this element because the suggestion that the Plan has been

24   injured is purely speculative.  She has founded her entire Complaint on the supposition that the Plan

25   was injured because it received less in *future* employer contributions than it would have had the

26   forfeitures not been applied toward employer contributions.  Compl. ¶¶ 20 ("reduce future Company

27

28   NOTICE OF MOTION AND MOTION TO
     DISMISS

matching contributions"), 25 ("reducing future Company matching contributions"), 34 ("reducing its own future contributions"), 47 ("substitute for the Company's own future contributions"), 52 ("substitute for future employer contributions"), 53 ("substituted for future employer contributions"), 57 ("substitute for future employer contributions"), 58 ("substituted for future employer contributions").  Plaintiff pleads not a single fact to support her supposition about what would have happened in the future.

There can be no doubt that it is entirely up to Intuit how much to contribute to the Plan.  *See supra*, IV(A)(1)(b)(i).  Plaintiff's Complaint presupposes that, had a Plan fiduciary decided to allocate the forfeitures to administrative expenses, Intuit would have then *increased* its contributions to cover the difference and keep the benefit levels the same.  The Complaint is devoid of any fact offered in support of this assumption.  Courts have made clear that theories of injury that rely upon speculative assumptions about what the plan sponsor, in its role as settlor, or some other independent actor might do, are insufficient to sustain an ERISA claim.[10]  *See Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 457 (3d Cir. 2003) (finding the "notion that the firm would have passed [certain] savings on to its employees in the form of a higher salary or additional benefits[]" to be "far too speculative to serve as the basis for a claim of individual loss" in an ERISA case); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (dismissing ERISA case for insufficient allegation of injury "where (as is the case here) any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or to predict") (quotation omitted); *Winsor v. Sequoia Benefits & Ins. Servs. LLC*, 62 F. 4th 517 (9th Cir. 2023) (dismissing ERISA case for lack of injury where plaintiff's assertion that employer would have passed along cost benefits to the plan participants was purely speculative).  Where the plaintiff's allegations rest on an unsupported allegation of harm, the complaint must be dismissed.  *See, e.g.*, *Daniels v. Am.'s Wholesale Lender*,

---

[10] For example, Intuit could have adjusted the level of benefits to match the level of contributions it intended to make or amended the Plan to require forfeitures to be used only towards employer contributions.

NOTICE OF MOTION AND MOTION TO DISMISS

15

Case No. 5:23-cv-05053-PCP

No. ED CV 11-1287 PA (MANx), 2011 WL 13225097, at \*4 (C.D. Cal. Oct. 24, 2011) (dismissing claim because "Plaintiffs' alleged harm . . . is too speculative to state a cause of action").

### B.     Plaintiff Fails to State a Claim for Violation of the Anti-Inurement Clause

In Count III, Plaintiff alleges that, "[b]y electing to utilize [forfeitures] as a substitute for the Company's own future contributions to the Plan, thereby saving the Company millions of dollars in contribution expenses, Defendants caused the assets of the plan to inure to the benefit of the employer in violation of 29 U.S.C. § 1103(c)(1)." Compl. ¶ 47.  Plaintiff misunderstands both the Plan and ERISA's anti-inurement provision and, accordingly, fails to state a claim in Count III.

First, it is illogical to characterize the forfeitures as being "substituted" for Intuit's contributions, when, as explained *supra*, section IV(A)(1)(b), Intuit only ever committed to making contributions in an amount already offset by forfeitures.[11]  Beyond that, Plaintiff's interpretation of ERISA's anti-inurement provision is simply incorrect.  The law is clear that, when plan assets are used for the payment of benefits and expenses, there can be no violation of the anti-inurement provision.

ERISA provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). The Supreme Court has made clear that, for a violation of ERISA's anti-inurement provision to occur, the plan's assets would have to be used for some purpose *other* than to pay benefits and administrative expenses.  *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 5 (2004) ("[Section 403(c)(1)] demands only that plan assets be held to supply benefits to plan participants.").  It is immaterial whether the plan sponsor gained some financial benefit through the challenged action, so long as the assets within the plan were directed exclusively toward the

---

[11] Again, as explained *supra*, section IV(A)(1)(b)(ii), the Committee could not have violated any provision of ERISA because the Plan document gave it no authority to determine how forfeitures would be used.  *See* Plan Doc. § 6.2(e); Amend. 2 (giving such authority to Intuit).  Therefore, the Committee could not have "cause[d] the assets of the plan to inure to the benefit of the employer," as Plaintiff alleges, and Count III must be dismissed as to the Committee for this reason as well.

NOTICE OF MOTION AND MOTION TO
DISMISS

Case No. 5:23-cv-05053-PCP

1  payment of benefits and expenses.  *See Hughes*, 525 U.S. at 443 (rejecting participants' argument

2  that employer violated anti-inurement provision when employer directed surplus plan assets

3  comprised of both employer and participant contributions toward the funding of a new, non-

4  contributory benefit structure within the same plan).  As the Supreme Court explained, plaintiffs "do

5  not allege that Hughes used any of the assets for a purpose other than to pay its obligations to the

6  Plan's beneficiaries, Hughes could not have violated the anti-inurement provision under ERISA §

7  403(c)(1)"); *see also Spink v. Lockheed Corp.*, 125 F.3d 1257, 1261 (9th Cir. 1997) (holding that "an

8  employer does not receive 'inurement' under § 403 where plan assets were paid only to plan

9  participants and the plan only advances the employer's business interests").

10       The Complaint makes clear that the forfeitures went directly to pay benefits and/or

11  administrative expenses.  Despite Plaintiff's characterization of the use of forfeitures to offset

12  employer contributions as "for the Company's own benefit," *see, e.g.*, Compl. ¶ 20, the undisputed

13  reality is that contributions are how benefits get paid.  Except to the extent they paid bills for

14  administrative expenses, those employer contributions remain in *participant* benefit accounts *within*

15  the Plan—not in *Intuit's* corporate accounts.  Plaintiff's suggestion that offsetting forfeitures against

16  contributions—when the assets remain in the Plan— constitutes a prohibited inurement to Intuit is

17  simply incorrect under *Hughes Aircraft* and numerous similar decisions.

18       Specifically, to state a claim under ERISA § 403(c), a plaintiff must allege "a *removal of*

19  *plan assets* for the benefit of the plan sponsor or anyone other than the plan participants."  *Aldridge*

20  *v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992)

21  (emphasis added).  An offset, in which assets do not leave the plan and return to the employer's

22  coffers, does not constitute an impermissible inurement even if it reduces the employer's

23  contribution obligation.  In *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984), for example, the

24  employer had implemented a new benefit structure under the same plan and used plan assets from

25  the old portion of the plan as a "setoff in calculating the retirement income owed to Xerox

26  employees under a new minimum retirement income plan."  *Id*. at 550.  The plaintiff argued that the

27

28  NOTICE OF MOTION AND MOTION TO
    DISMISS
                                        17                        Case No. 5:23-cv-05053-PCP

1   employer had violated the anti-inurement provision because the offset served to reduce the

2   contributions the employer would have to make to the new benefit structure.  *Id*.  The court rejected

3   this argument, finding "no violation of either the letter or the spirit of ERISA in this transfer and

4   subsequent intercompany offset of retirement funds provided by Xerox against a guaranteed

5   minimum income pension plan also voluntarily provided by Xerox for the benefit of its employees."

6   *Id*. at 551 (noting that "E[RISA] itself establishes that it is permissible for a pension plan to provide

7   for the offset of social security benefits").  *See also Flanigan v. Gen. Elec. Co.*, 242 F.3d 78 (2d Cir.

8   2001); *Maez  v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir. 1995).  Because the

9   forfeitures remained in the Plan for the payment of benefits and expenses, no prohibited inurement

10  occurred.

11       Finally, it is crucial to recognize the implications of the theory Plaintiff is proffering here.

12  She lays out not a single fact unique to *this* Plan or its fiduciaries with respect to the offsetting of

13  forfeitures against plan contributions.  What she has alleged here could be alleged about *any plan*

14  that permits forfeitures to be used in this manner.  Plaintiff's Complaint is thus founded on the

15  proposition that using forfeitures to reduce employer contributions is *always* an impermissible

16  inurement under ERISA.  If this is the law, then that would be news to Congress and the regulatory

17  agencies, which have declared for decades that forfeitures can be used in this manner.  *See supra*,

18  section II(A).  Accepting Plaintiff's argument would disrupt countless other plans that were

19  structured in reasonable reliance on Congressional and agency guidance.

20       **C.    Plaintiff Fails to Allege Any Prohibited Transaction Occurred**

21       Plaintiff has failed to state any claim for violation of ERISA's prohibited transaction rules for

22  multiple reasons.  As a threshold matter, for a transaction to be prohibited under either section 406(a)

23  or 406(b) of ERISA, the transaction must be caused by a fiduciary.  *See* 29 U.S.C. § 1106(a)(1) ("A

24  *fiduciary* with respect to a plan shall not . . . .") (emphasis added); *id.* § 1106(b) (same); *Lockheed*,

25  517 U.S. at 888-89 ("But in order to sustain an alleged transgression of § 406(a), a plaintiff must

26  show that a fiduciary caused the plan to engage in the allegedly unlawful transaction.  Unless a

27

28  NOTICE OF MOTION AND MOTION TO
    DISMISS

1   plaintiff can make that showing, there can be no violation of § 406(a)(1) to warrant relief under the

2   enforcement provisions.").  For the reasons explained *supra*, section IV(A)(1), Plaintiff has not

3   identified any fiduciary act with respect to the forfeitures that could give rise to a prohibited

4   transaction.

5   　　　Of equal importance, Plaintiff neither identifies the transaction at issue nor explains how that

6   transaction violates any one of the very specific prohibitions listed in ERISA section 406(a)(1) or

7   (b).  *See* Compl. ¶¶ 50, 52 (merging together bits of language from subsections (a) and (d) of

8   406(a)(1) and leaving the Court and Defendants to guess what the specific violation is alleged to be).

9   Rather than identify a transaction, Plaintiff complains about Defendants "electing to use the forfeited

10  funds" and "utilizing these Plan assets as a substitute for future employer contributions[,]" *id*. ¶¶ 52,

11  57, but Intuit's decision about how much to contribute to the Plan does not constitute a "transaction"

12  under Supreme Court guidance.  In *Lockheed*, the Court explained what types of transactions are

13  subject to ERISA's prohibited transaction rules:

14  　　　"a 'transaction' in the sense that Congress used that term in § 406(a)" refers to a
    　　　"commercial bargain[]" such as "the 'sale,' 'exchange,' or 'leasing' of property, 29
15  　　　U.S.C. § 1106(a)(1)(A); the 'lending of money' or 'extension of credit,'
    　　　§ 1106(a)(1)(B); the 'furnishing of goods, services, or facilities,' § 1106(a)(1)(C);
16  　　　and the 'acquisition ... of any employer security or employer real property,'
    　　　§ 1106(a)(1)(E), with a party in interest. See also § 1108(b) (listing similar types of
17  　　　'transactions').

18  517 U.S. at 893 (quotation omitted).  For this reason, the Court concluded that the payment of

19  benefits under a plan did not constitute a "transaction" for purposes of ERISA's prohibited

20  transaction rules.  *Id.* at 895.  *See also Wright*, 360 F.3d at 1101 (dismissing prohibited transaction

21  claim despite benefit to alleged fiduciary where plaintiff identified no transaction but rather "a

22  lawful decision to remain in full compliance with the explicit language of the Plan's terms").

23  　　　Similarly, no such transaction occurred here.  In complaining about Intuit's "electing" and

24  "substituting" with respect to the forfeitures, Plaintiff is, in essence, attacking the calculation that

25  occurred within Intuit's own "mind" as it made the determination to contribute, in accordance with

26

27

28  NOTICE OF MOTION AND MOTION TO
    DISMISS

                                    19                        Case No. 5:23-cv-05053-PCP

the Plan terms, an amount that was offset by forfeitures.  However, an employer's decision regarding how much to contribute to a plan can hardly be said to constitute a prohibited transaction.

Finally, even setting aside the lack of alleged fiduciary act and the absence of a purported transaction, Plaintiff fails to state a claim because she has not plausibly alleged any self-dealing. Defendants have already established, *supra* IV(C), that Plaintiff has no argument that plan assets inured to the benefit of Defendants rather than being used for the exclusive benefit of participants. The Ninth Circuit has approached the issues of impermissible inurement and self-dealing prohibited transactions as conceptually linked.  On remand after the Supreme Court ruled that Spink had failed to allege prohibited transaction against Lockheed Corp., the Ninth Circuit held that it followed that there was no anti-inurement violation either.  The court explained that "[t]he Supreme Court overruled our previous decision, in part, because it determined that Lockheed's use of plan assets to purchase waivers for Lockheed's liability did not constitute the type of 'transaction' that was 'potentially harmful to the plan.'  **Thus**, any benefit received by Lockheed through the amendment of the Plan was permissible under ERISA and may not form the basis of a cause of action under § 403(c)(1)."  *Spink*, 125 F.3d at 1261 (emphasis added).  Here, similarly, there was no impermissible inurement to Defendants and thus no self-dealing to support a prohibited transaction claim.  As with the anti-inurement claim, a situation in which "the plan pays out benefits to the participants pursuant to its terms" does not create the type of impermissible benefit to the employer that the prohibited transaction provisions encompass.  *Lockheed*, 517 U.S. at 895.  Ultimately, Intuit's offsetting of forfeitures against contributions cannot constitute an impermissible benefit to Intuit—and thus cannot support a self-dealing claim—when it was always Intuit's decision how much to contribute to the Plan in the first place.

## D.      Plaintiff Fails to State a Claim Against Intuit for Failure to Monitor

Plaintiff's failure to monitor claim (Count VI) must be dismissed because failure to monitor is a derivative claim that requires an underlying breach.  *See Anderson v. Intel Corp. Inv. Policy Comm'ee*, 579 F. Supp. 3d 1133, 1162 (N.D. Cal. 2023) ("Both derivative claims fail because

1   Plaintiffs have failed to state an underlying ERISA violation.  Therefore, Plaintiffs have failed to

2   state a claim for failure to monitor and co-fiduciary liability.").  For all the reasons explained above,

3   Plaintiff has failed to allege any underlying breach to support a failure to monitor claim.  Even if she

4   had, the duty to monitor is a limited one that does not require the appointing fiduciary to overtake

5   the role of the appointed fiduciary.  Here, Plaintiff fails to allege any facts regarding Intuit's alleged

6   monitoring or lack thereof but instead simply assumes that the monitoring must have been

7   inadequate because, she claims, without factual support, there was (allegedly) an underlying breach.

8   In the absence of any factual allegations, Plaintiff's claim is insufficient and must be dismissed.[12]

9   **V.   CONCLUSION**

10          Plaintiff brings suit based on a novel legal theory that blurs ERISA's clear demarcation

11   between settlor and fiduciary roles.  Furthermore, the Complaint raises no concerns that are

12   particular to this specific Plan.  If she has stated a claim, then any plan that allows employer

13   contributions to be offset by forfeitures is violating ERISA—even though Congress and the agencies

14   have said for decades that offsetting employer contributions with forfeitures is permissible.  Such an

15   allegation is simply not plausible, and the Complaint must be dismissed.

16

17   Dated:  December 18, 2023                    By:     /s/ Sarah M. Adams

18                                               Lars C. Golumbic, *pro hac vice*
                                                 Sarah M. Adams, *pro hac vice*

19                                               Rosemary Loehr, *pro hac vice*
                                                 GROOM LAW GROUP, CHARTERED

20                                               1701 Pennsylvania Avenue NW
                                                 Washington, DC 20006

21                                               P: (202) 857-0620
                                                 F: (202) 659-4503

22                                               lgolumbic@groom.com

23                                               sadams@groom.com
                                                 rloehr@groom.com

24

25   [12] Plaintiff also tacks an additional generalized co-fiduciary or knowing participation claim onto the
     end of each of her fiduciary breach claims.  Compl. ¶¶ 36, 43.  In addition to being derivative of ill-

26   pled claims, *see Anderson*, 579 F. Supp. 3d at 1162, these allegations must be dismissed because
     they are, quite literally, nothing more than "a formulaic recitation of the elements of a cause of

27   action," which "will not do[.]"  *Twombly*, 550 U.S. at 555.

NOTICE OF MOTION AND MOTION TO

28   DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dylan D. Rudolph, Bar No. 278707
drudolph@truckerhuss.com
TRUCKER HUSS, APC
135 Main Street, 9th Floor
San Francisco, CA 94105
P: (415) 788-3111
F: (415) 421-2017

Lindsey Barnhart, Bar No. 294995
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
P: (650) 632-4700
F: (650) 632-4800
lbarnhart@cov.com

Robert Newman, *pro hac vice* pending
COVINGTON & BURLING LLP
850 10th Street, NW
Washington, DC 20001
P: (202) 662-5125
F: (202) 778-5125
rnewman@cov.com

William O'Neil, *pro hac vice* pending
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018
P: (212) 841-1103
F: (646) 441-9103
woneil@cov.com

Attorneys for Defendants
*INTUIT INC.; THE EMPLOYEE
BENEFITS ADMINISTRATIVE
COMMITTEE OF THE INTUIT INC.
401(K) PLAN*

NOTICE OF MOTION AND MOTION TO
DISMISS

22

Case No. 5:23-cv-05053-PCP