**HAYES PAWLENKO LLP**
Matthew B. Hayes (SBN 220639)
Kye D. Pawlenko (SBN 221475)
mhayes@helpcounsel.com
kpawlenko@helpcounsel.com
1414 Fair Oaks Avenue, Suite 2B
South Pasadena, CA 91030
Tel: (626) 808-4357
Fax: (626) 921-4932

Attorneys for Plaintiff
DEBORAH RODRIGUEZ

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DEBORAH RODRIGUEZ, individually and as a representative of a class of participants and beneficiaries on behalf of the Intuit Inc. 401(k) Plan, <br><br> Plaintiff, <br><br> v. <br><br> INTUIT INC.; THE EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE OF THE INTUIT INC. 401(K) PLAN; and DOES 1 to 10 inclusive, <br><br> Defendants. | Case No. 5:23-cv-05053-PCP <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date:  March 14, 2024 <br> Time:  10:00 a.m. <br> Courtroom:  8 |

1

**TABLE OF CONTENTS**

2

INTRODUCTION                                                                          1

3

STATEMENT OF FACTS                                                                   2

4

STATEMENT OF ISSUES TO BE DECIDED                                                    3

5

ARGUMENT                                                                             4

6

   I.   Plaintiff has Stated a Claim for Breach of Fiduciary Duties.          4

7

      A. Intuit was Acting as a Fiduciary When it Applied Forfeitures.      4

8

          1.  Plaintiff Does Not Challenge any Settlor Decision.       4

          2.  Intuit Managed and/or Disposed of Plan Assets.            6

9

          3.  Intuit has Always had Discretion Over Plan Administration. 8

10

      B. Plaintiff has Shown That Intuit Breached its Fiduciary Duties.   9

          1.  Intuit Violated the Plan Document.                        10

11

          2.  Intuit Cannot Hide Behind the Terms of the Plan.          11

12

          3.  Intuit's Reliance on Tax Law is Misplaced.                13

      C. Plaintiff has Shown Two Plan Injuries.                         15

13

          1.  Intuit Ignores the Lost Investment Opportunity Injury.    16

          2.  Intuit was Required to Make "Matching Contributions."     16

14

15

   II.  Plaintiff has Stated a Claim for Unlawful Employer Inurement.      18

      A. Employer Debts to the Plan Cannot be Forgiven With Plan Assets. 18

16

      B. Forfeitures Were Used to Forgive Intuit's Debts to the Plan.    21

17

   III. Plaintiff has Stated a Claim for Prohibited Transactions.            21

18

      A. Plaintiff has Alleged a Transaction That Plausibly Violates § 406(a). 21

      B. Plaintiff has Alleged Self-Dealing That Plausibly Violates § 406(b). 23

19

CONCLUSION                                                                           24

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1

# TABLE OF AUTHORITIES

*Acosta v. Pac. Enterprises,*
 950 F.2d 611 (9th Cir. 1992)    24

*Akers v. Palmer,*
 71 F.3d 226 (6th Cir. 1995)    6

*Asner v. SAG-AFTRA Health Fund,*
 557 F. Supp. 3d 1018 (C.D. Cal. 2021)    6, 17

*Bafford v. Northrop Grumman Corp.,*
 994 F.3d 1020 (9th Cir. 2021)    4

*Barboza v. Cal. Ass'n of Pro. Firefighters,*
 799 F.3d 1257 (9th Cir. 2015)    24

*Barker v. Am. Mobil Power Corp.,*
 64 F.3d 1397 (9th Cir. 1995)    9

*Bd. of Trs. v. Grand River Navigation Co., Inc.,*
 2021 WL 1215060 (D. Md. Mar. 30, 2021)    19

*Blatt v. Marshall & Lassman,*
 812 F.2d 810 (2d Cir. 1987)    8

*Briscoe v. Fine,*
 444 F.3d 478 (6th Cir. 2006)    7

*Brown v. Health Care & Ret. Corp. of Am.,*
 25 F.3d 90 (2d Cir. 1994)    19

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,*
 472 U.S. 559 (1985)    11

*Chao v. Anderson,*
 2007 WL 1448705 (E.D. Va. May 9, 2007)    19-20, 21

*Chao v. Malkani,*
 452 F.3d 290 (4th Cir. 2006)    19

*Cline v. Indus. Maint. Eng'g & Cont. Co.,*
 200 F.3d 1223 (9th Cir. 2000)    4

*Comm'r v. Keystone Consol. Indus., Inc.,*
 508 U.S. 152 (1993)    22

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

*Coulter v. Morgan Stanley & Co. Inc.*,
  753 F.3d 361 (2d Cir. 2014) .................................................................. 4, 5

*David P. Coldesina, D.D.S. v. Est. of Simper*,
  407 F.3d 1126 (10th Cir. 2005) .................................................................. 7

*Doe v. United Behavioral Health*,
  523 F. Supp. 3d 1119 (N.D. Cal. 2021) .......................................... 7, 12-13

*Dytch v. Yoon*,
  2011 WL 839421 (N.D. Cal. Mar. 7, 2011) ............................................ 16

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
  725 F.3d 406 (3d Cir. 2013) ...................................................................... 8

*Esden v. Bank of Bos.*,
  229 F.3d 154 (2d Cir. 2000) .................................................................... 15

*Feinberg v. T. Rowe Price Grp., Inc.*,
  2021 WL 488631 (D. Md. Feb. 10, 2021) .............................................. 13

*Fifth Third Bankcorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ...................................................................... 9, 11, 12

*Glazing Health & Welfare Fund v. Lamek*,
  896 F.3d 908 (9th Cir. 2018) ..................................................................... 5

*Holland v. Arch Coal, Inc.*,
  947 F.3d 812 (D.C. Cir. 2020) ............................................................ 18-19

*Holliday v. Xerox Corp.*,
  732 F.2d 548 (6th Cir. 1984) ................................................................ 20-21

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ........................................................................... 4, 20

*Hunley v. Instagram, LLC*,
  73 F.4th 1060 (9th Cir. 2023) ................................................................. 14

*In re Palombo*,
  456 B.R. 48 (Bankr. C.D. Cal. 2011) ........................................................ 8

*Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Fund v. Duval*,
  925 F. Supp. 815 (D.D.C. 1996) .............................................................. 23

iv

*IT Corp. v. Gen. Am. Life Ins. Co.,*
    107 F.3d 1415 (9th Cir. 1997)               6-7, 8

*Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.,*
    66 F.4th 307 (1st Cir. 2023)               7

*McDaniel v. Chevron Corp.,*
    203 F.3d 1099 (9th Cir. 2000)               15

*Operating Eng'rs Loc. 324 Health Plan v. Dalessandro Cont. Grp., LLC,*
    2012 WL 831758 (E.D. Mich. Mar. 12, 2012)        19

*Ramos v. Banner Health,*
    461 F. Supp. 3d 1067 (D. Colo. 2020)          16

*Reklau v. Merchants Nat. Corp.,*
    808 F.2d 628 (7th Cir. 1986)               15

*Sec'y of Labor v. Seward Ship's Drydock, Inc.,*
    937 F.3d 1301 (9th Cir. 2019)               23

*Spink v. Lockheed Corp.,*
    125 F.3d 1257 (9th Cir. 1997)              20, 24

*Srein v. Frankford Tr. Co.,*
    323 F.3d 214 (3d Cir. 2003)               7-8

*Tedori v. United States,*
    211 F.3d 488 (9th Cir. 2000)               14-15

*Thondukolam v. Corteva, Inc.,*
    2020 WL 1984303 (N.D. Cal. Apr. 27, 2020)        5

*Tibble v. Edison Int'l,*
    843 F.3d 1187 (9th Cir. 2016)               16

*Tr. of S. Cal. Bakery Drivers Security Fund v. Middleton,*
    474 F.3d 642 (9th Cir. 2007)              1, 7

*United Food & Com. Workers Int'l Union-Indus. Pension Fund v. Bank of N.Y. Mellon,*
    2014 WL 4627904 (N.D. Ill. Sept. 16, 2014)        23

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996)                   8

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

*Waller v. Blue Cross of Cal.*,
    32 F.3d 1337 (9th Cir. 1994)       6, 17

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004)       12

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007)       16

**Statutes**

26 U.S.C. § 401(a)       13-14

26 U.S.C. § 4975(c)(1)(A)       22

29 U.S.C. § 1002(14)(C)       22

29 U.S.C. § 1002(21)(A)       6, 8

29 U.S.C. § 1103(c)(1)       18

29 U.S.C. § 1104(a)(1)(A)       3, 9, 11, 13

29 U.S.C. § 1104(a)(1)(B)       9

29 U.S.C. § 1104(a)(1)(D)       11

29 U.S.C. § 1106(a)(1)       21, 22

29 U.S.C. § 1106(b)(1)       23

29 U.S.C. § 1110(a)       11

**Regulations**

26 C.F.R. § 1.401-1(b)(1)       14

**Other Authorities**

Pub. L. No. 99-514, 100 Stat. 2085 (1986)       14

88 Fed. Reg. 12282 (2023)       14-15

Rev. Ruling 71-313, 1971 WL 26693 (1971)       14

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1

**INTRODUCTION**

2   When participants in a retirement plan separate from service before becoming

3   vested in the employer matching contributions made to the plan on their behalf, they

4   forfeit their right to the contributions (called "forfeitures").  This case presents the

5   question whether the Employee Retirement Income Security Act ("ERISA") prohibits

6   an employer-fiduciary from reallocating such forfeitures to offset its own future

7   contributions owing to the plan instead of defraying plan expenses borne by

8   participants and charged to their accounts.

9   Defendant Intuit Inc. ("Intuit") has made two important concessions that

10   assist the Court in answering this question in favor of plaintiff Deborah Rodriguez

11   ("Plaintiff").  First, Intuit does not dispute that forfeitures are "plan assets."  Second,

12   Intuit admits that it has "responsibility under the Plan for deciding how forfeitures

13   are to be used."  MTD p. 10.  This means that Intuit was necessarily wearing its

14   "fiduciary hat" – and not its "settlor hat" – when it decided how to use the forfeitures.

15   *See Tr. of S. Cal. Bakery Drivers Security Fund v. Middleton*, 474 F.3d 642, 646 (9th

16   Cir. 2007) (holding that where "plan assets" are at issue, "an entity that takes

17   'actions in regard to their management and disposition must be judged against

18   ERISA's fiduciary standards'") (quoting *John Hancock Mut. Life Ins. Co. v. Harris

19   Trust & Sav. Bank*, 510 U.S. 86, 106 (1993)).

20   Accordingly, as demonstrated below, Plaintiff has plausibly alleged that Intuit

21   (1) breached its fiduciary duties, (2) allowed plan assets to inure to its benefit, and (3)

22   violated ERISA's ban on "prohibited transactions."  Intuit's motion to dismiss those

23   claims (Counts I-V) should therefore be denied.  However, as to the duty to monitor

24   claim (Count VI) and all claims against the Employee Benefits Administrative

25   Committee ("Committee"), Plaintiff agrees that they should be dismissed.[1]

26   _____

27   [1] Prior to filing suit, Plaintiff made a written request to Intuit for a copy of the plan documents pursuant to 29 U.S.C. § 1024(b)(4).  Intuit produced the current version of

28   (footnote continued)

1

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**STATEMENT OF FACTS**

Plaintiff is a participant in the Intuit Inc. 401(k) Plan ("Plan" or "Intuit Plan"). Compl. ¶ 9.  The Plan is a defined contribution plan sponsored by defendant Intuit. *Id.* ¶¶ 6, 15.  The Intuit Plan is intended to be a tax-qualified "profit sharing plan." Plan Doc. Art. I.

The Plan document requires Intuit to make a "Matching Contribution" to the Plan each pay period on behalf of each participant equal to 125% of the first 6% of the participant's compensation contributed to the Plan, not to exceed $10,000 annually. Plan Doc. § 4.6(a).  Unless an exception applies, these contributions do not vest until participants have completed two years of service.  *Id.* § 6.1(e).

Participants who separate from service before these contributions have vested forfeit their right to the contributions.  *Id.* § 6.2.  The Plan document assigns to Intuit the task of applying the forfeited contributions at its "election."  Prior to 2020, the Plan document provided that such forfeitures "shall be applied, at the Company's election," to reduce Intuit's "obligation to make Safe Harbor Matching Contributions."  *Id.* § 6.2(e).  Effective January 1, 2020, the Plan document was amended to provide that such forfeitures "shall be applied, at the Company's election," to "pay expenses of administering the Plan" and/or to reduce Intuit's "obligation to make Safe Harbor Matching Contributions."  *Id.* Amend. 2.[2]

Substantially all expenses incurred for administering the Intuit Plan are paid by the Plan with Plan assets.  Compl. ¶ 16.  Participant accounts are each charged with an allocation of the expenses paid by the Plan.  *Id.* ¶ 17.  Throughout the

---

the plan documents, which differ in material respects from the prior version of the plan documents Intuit submitted to the Court with its motion.

[2] The Plan document also provides that, at Intuit's election, forfeitures of "Profit Sharing Contributions" shall be allocated as "Profit Sharing Contributions."  Plan Doc. § 6.2(e).  As explained *infra* p. 10, Intuit made no "Profit Sharing Contributions" during the years at issue, so this provision has no application here.

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

putative class period, all participant accounts have been charged with administrative expenses on at least a quarterly basis. *Id.* The deduction of administrative expenses from participant accounts reduced the funds available in the Plan for investing. *Id.*

Although ERISA expressly requires fiduciaries to "defray[] reasonable expenses of administering the plan[,]" 29 U.S.C. § 1104(a)(1)(A)(ii), Intuit has elected to apply nearly all forfeitures to reduce its own matching contributions to the Plan. Compl. ¶ 20. Even after applying forfeitures to reduce its own matching contributions, Intuit left a balance remaining in the forfeiture account at the end of each year. *Id.* ¶¶ 21-24. While this benefitted Intuit by lowering its contribution expenses, it harmed the Plan by (1) decreasing the amount of employer contributions the Plan otherwise would have received and (2) depriving the Plan of the money the individual accounts would have earned had the expenses not been deducted from the accounts. *Id.* ¶¶ 17; 25; *see also id.* ¶¶ 21-24.

| YEAR | CONTRIBUTIONS REDUCED BY FORFEITURES | EXPENSES DEFRAYED BY FORFEITURES | EXPENSES CHARGED TO PARTICIPANTS | BALANCE AT YEAR END |
|---|---|---|---|---|
| 2018 | $4,704,000 | $0 | $730,948 | $331,000 |
| 2019 | $3,508,000 | $0 | $699,937 | $1,042,000 |
| 2020 | $4,751,000 | $0 | $740,846 | $658,000 |
| 2021 | $2,273,000 | $74,000 | $975,040 | $140,000 |

### STATEMENT OF ISSUES TO BE DECIDED

(1)  Whether Intuit was acting as a fiduciary when deciding how to apply the forfeited assets in the Plan or instead was acting as the Plan settlor.

(2)  Whether Intuit's application of forfeitures to reduce its own contributions rather than defray the Plan's expenses states a plausible breach of fiduciary duties.

(3)  Whether Intuit's application of forfeitures to reduce its own contributions rather than defray the Plan's expenses injured the Plan.

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

(4)    Whether Intuit's application of forfeitures to forgive its own debt obligations to the Plan states a plausible violation of ERISA's anti-inurement rule.

(5)    Whether the exchange of forfeitures in the Plan for Intuit's future contributions to the Plan states a plausible transaction prohibited by ERISA.

(6)    Whether Intuit's application of forfeitures in the Plan to reduce its own contributions states a plausible self-dealing claim prohibited by ERISA.

## ARGUMENT

## I.    Plaintiff has Stated a Claim for Breach of Fiduciary Duties.

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).

### A.  Intuit was Acting as a Fiduciary When it Applied Forfeitures.

Plaintiff challenges Intuit's decisions to apply forfeitures – which are indisputably "plan assets"[3] – to reduce the contributions it was required to make to the Plan rather than defray expenses charged to participants. *See* Compl. ¶¶ 20-25. Intuit argues, unpersuasively, that these decisions cannot be challenged because it was acting in a settlor, not fiduciary, capacity when it made them.

#### 1.  Plaintiff Does Not Challenge any Settlor Decision.

A person acts as a "settlor" when the person "makes a decision regarding the form or structure of the Plan." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).  This includes plan design decisions "such as establishing, funding, amending, and terminating the trust." *Coulter v. Morgan Stanley & Co. Inc.,* 753 F.3d 361, 367

---

[3] Intuit does not dispute Plaintiff's allegations that the forfeitures in the Plan's trust fund are "Plan assets."  Compl. ¶¶ 14, 19, 46.  The Ninth Circuit has held that employer contributions "become plan assets" once "the employer pays the employer contributions over to the plan."  *Cline v. Indus. Maint. Eng'g & Cont. Co.,* 200 F.3d 1223, 1234 (9th Cir. 2000).

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

(2d Cir. 2014).   Intuit argues that "decisions regarding plan funding are settlor decisions, not fiduciary decisions."   MTD p. 8.   But Plaintiff does not challenge any plan design decision regarding what benefits to provide or how to fund them.

The cases holding that funding decisions are not fiduciary decisions reason that, *before* employer contributions are deposited into the plan, they are not "plan assets" and, as such, decisions about whether to fund, how to fund, or the amount to fund a plan do not involve discretion or control over "plan assets."   *See, e.g., Glazing Health & Welfare Fund v. Lamek*, 896 F.3d 908, 910 (9th Cir. 2018) (dismissing breach of fiduciary duty claims arising out of failure to make required plan contributions because "[u]ntil the employers pay the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation"); *Coulter,* 753 F.3d at 367 ("Defendants' decision to fund Company contributions in Company stock could not constitute a fiduciary act because, *at the time of the decision*, the Company stock was *not* a Plan asset.") (emphasis added).   Intuit's reliance on such cases is misplaced because Plaintiff challenges Intuit's decisions regarding how to apply forfeited contributions *after* they have been paid to the Plan and have become "plan assets."   Compl. ¶¶ 33, 34, 39, 40.

For example, in *Thondukolam v. Corteva, Inc*, 2020 WL 1984303 (N.D. Cal. Apr. 27, 2020), the plaintiffs "challenge[d] defendants' failure to fund the plan" as well as "the allocation of funds within the Plan."   *Id*. at *2-3.   The Court found that, although the alleged "failure to fund the Plan … does not trigger fiduciary obligations," the "decisions regarding fund allocation" do.   *Id*. at *3.   Like Plaintiff's allegations here, the plaintiffs in *Thondukolam* challenged the employer's decision "to apply the contributions … to meet future Minimum Required Contribution obligations without having to actually contribute additional assets to the Plan."   *Id*. (alterations omitted).   The Court found the employer's decision about how to apply the contributions to be a fiduciary, not a settlor, decision even though the employer was applying the contributions towards its funding obligation.   *Id*.

5

1   At bottom, Intuit argues that its decisions about how to apply forfeitures were
2   settlor decisions because, in designing the Plan, it decided to assign to itself the
3   authority to determine how forfeitures should be applied.  But the law in this Circuit
4   is clear: the implementation of a settlor decision is not itself a settlor decision.  *See*
5   *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1342-43 (9th Cir. 1994) (holding that,
6   although an employer's "*decision* to terminate" the plan was "a business decision"
7   that could "not constitute a breach of fiduciary obligation," the "*implementation* of the
8   decision," such as "choosing annuity providers to satisfy plan liabilities," triggered
9   "fiduciary" obligations) (emphasis in original); *see also Asner v. SAG-AFTRA Health*
10  *Fund*, 557 F. Supp. 3d 1018, 1033 (C.D. Cal. 2021) ("Although decisions concerning
11  plan design are normally 'settlor' in nature, and therefore not subject to ERISA
12  fiduciary duties, the implementation of decisions concerning plan design can be
13  subject to ERISA fiduciary duty.").

14      Accordingly, while Inuit acted as a settlor when it decided to assign to itself
15  the authority to determine how forfeitures should be applied, the company acted as a
16  fiduciary when it exercised that authority over "plan assets."  *See Akers v. Palmer*, 71
17  F.3d 226, 230 (6th Cir. 1995) (holding that a company is "subject to fiduciary
18  restrictions when managing a plan according to its terms, but not when it decides
19  what those terms are to be").[4]

20      **2.  Intuit Managed and/or Disposed of Plan Assets.**

21      ERISA deems a person to be a fiduciary of a plan "to the extent" the person
22  "exercises *any* authority or control respecting *management or disposition of its*
23  *assets*." 29 U.S.C. § 1002(21)(A)(i) (emphasis added).  This means that "[a]ny control
24  over disposition of plan money" – regardless of whether such control is

25  _____

26  [4] Intuit's argument proves too much.  If Intuit were correct, then a plan settlor could
    circumvent ERISA's fiduciary obligations in perpetuity by designing a plan that
27  assigns to itself all decisions regarding the allocation of plan assets.  In Intuit's view,
    those decisions would all be "settlor decisions."
28

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

"discretionary" – "makes the person who has the control a fiduciary." *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997); *see also Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307, 324-25 (1st Cir. 2023) ("Every circuit to have directly addressed the issue has concluded that 'discretionary' control or authority is not required with respect to the management or disposition of plan assets."); *Doe v. United Behavioral Health*, 523 F. Supp. 3d 1119, 1127 (N.D. Cal. 2021) (recognizing that, even if defendant "exercised no discretion in applying" the plan's language, "an entity is also a fiduciary where it 'exercises any authority or control respecting management or disposition of [plan] assets'").

Intuit does not dispute that the forfeitures in the Plan are "plan assets." Nor does Intuit dispute that it has "authority or control respecting the management or disposition" of those assets. *See* Plan Doc. § 6.2(e). In fact, Intuit *concedes* that it has "responsibility under the Plan for deciding how forfeitures are to be used." MTD p. 10. Therefore, Intuit was necessarily acting as a fiduciary when it exercised control over those plan assets by deciding how to use them.

The law is clear that where "plan assets" are at issue, "an entity that takes 'actions in regard to their management and disposition must be judged against ERISA's fiduciary standards.'" *Tr. of S. Cal. Bakery Drivers Security Fund v. Middleton*, 474 F.3d 642, 646 (9th Cir. 2007) (quoting *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 106 (1993)); *Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006) ("[A]ny person or entity that exercises control over the assets of an ERISA-covered plan … acquires fiduciary status with regard to the control of those assets"); *David P. Coldesina, D.D.S. v. Est. of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005) ("In Congress's judgment, and consistent with general trust law, parties controlling plan assets are *automatically* in a position of confidence by virtue of that control, and as such they are obligated to act accordingly.") (emphasis in original); *Srein v. Frankford Tr. Co.*, 323 F.3d 214, 221 (3d Cir. 2003) (holding that the ability to "divert the value of" a plan asset from one "account" to another is, "by

7

1  any definition, the exercise of 'control' (if not 'authority') respecting 'disposition of

2  [plan] assets'"); *Blatt v. Marshall & Lassman*, 812 F.2d 810, 813 (2d Cir. 1987)

3  (finding that the exercise of actual control over plan assets rendered defendants

4  "fiduciaries to the extent of this actual control"); *In re Palombo*, 456 B.R. 48, 61

5  (Bankr. C.D. Cal. 2011) ("Exertion of control over plan assets vests the party having

6  such control with fiduciary status.").

7      Because Intuit does not dispute that it exercised control over "plan assets"

8  when deciding how forfeitures should be applied, as a matter of law the company

9  could not have been wearing its "settlor hat" when it made those decisions.  *See IT*

10 *Corp.*, 107 F.3d at 1421 ("Any control over disposition of plan money makes the

11 person who has the control a fiduciary.").

12      **3.  Intuit has Always had Discretion Over Plan Administration.**

13     ERISA *also* deems a person to be a fiduciary of a plan to the extent the person

14 "has any discretionary authority or discretionary responsibility in the administration

15 of such plan." 29 U.S.C. § 1002(21)(A)(iii).  "The ordinary trust law understanding of

16 fiduciary 'administration' of a trust is that to act as an administrator is to perform

17 the duties imposed, or exercise the powers conferred, by the trust documents." *Varity*

18 *Corp. v. Howe*, 516 U.S. 489, 502 (1996).  "[W]hen a plan or policy requires the

19 performance of an act of plan management or administration in a specific manner,

20 then ERISA's fiduciary duties are not implicated." *Edmonson v. Lincoln Nat. Life*

21 *Ins. Co.*, 725 F.3d 406, 422 (3d Cir. 2013).  "But when the plan or policy permits some

22 leeway in how an act is performed, then the discretionary choice on how to perform

23 that act is cabined by ERISA's fiduciary duties." *Id.*

24     Here, the Plan has always provided Intuit with "some leeway" in deciding

25 what, if anything, to do with forfeitures.  Prior to 2020, the Plan document provided

26 that forfeitures "shall be applied, *at the Company's election,*" to reduce Intuit's

27 "obligation to make Safe Harbor Matching Contributions."  *Id.* § 6.2(e) (emphasis

28 added).  The Plan did *not* require Intuit to apply forfeitures but instead gave Intuit

8

1  an "election."   Intuit could elect to (1) apply forfeitures to reduce "Safe Harbor

2  Matching Contributions" and/or (2) not apply forfeitures and leave them unallocated.

3      Effective January 1, 2020, the Plan document was amended to provide that

4  forfeitures "shall be applied, *at the Company's election*," to "pay expenses of

5  administering the Plan" and/or to reduce Intuit's "obligation to make Safe Harbor

6  Matching Contributions." *Id.* Amend. 2 (emphasis added).   Again, the Plan did *not*

7  require Intuit to apply forfeitures but instead gave Intuit an "election."   Intuit could

8  elect to (1) apply forfeitures to "pay expenses of administering the Plan," (2) apply

9  forfeitures to reduce "Safe Harbor Matching Contributions" and/or (3) not apply

10 forfeitures and leave them unallocated.   Accordingly, at all times during the putative

11 class period, Intuit had "discretionary authority or discretionary responsibility in the

12 administration" of the Plan's forfeiture provision.[5]

13     **B.  Plaintiff has Shown That Intuit Breached its Fiduciary Duties.**

14     ERISA commands that fiduciaries discharge their duties "*solely* in the interest

15 of the participants and beneficiaries" and for "the *exclusive* purpose" of providing

16 them benefits and "*defraying*" their "*expenses*."   29 U.S.C. § 1104(a)(1)(A) (emphasis

17 added).   ERISA also "imposes a 'prudent person' standard by which to measure

18 fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v.*

19 *Dudenhoeffer*, 573 U.S. 409, 419 (2014) (citation omitted); 29 U.S.C. § 1104(a)(1)(B).

20 These twin statutory duties together compel fiduciaries "to act in the best interests of

21 the plan participants and beneficiaries." *Barker v. Am. Mobil Power Corp.,* 64 F.3d

22 1397, 1403 (9th Cir. 1995).

23     Plaintiff alleges that Intuit failed to act in the participants' best interests

24 when it applied forfeitures to reduce its own contributions rather than defray the

25

26 [5] As shown *infra* pp. 10-11, Intuit violated the Plan's forfeiture provision because the
27 contributions it elected to reduce during the putative class period were not "Safe
   Harbor Matching Contributions."

28

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1  expenses charged to their accounts.  Compl. ¶¶ 33, 34, 39, 40.  Intuit argues that it

2  "complied with the Plan terms" and was "under no obligation to deviate from them."

3  MTD p. 13.  According to Intuit, it has always "been permissible for an employer to

4  use forfeitures to reduce future employer contributions if done in accordance with the

5  plan document."  MTD p. 5.  Intuit is wrong both factually and legally.

6  **1. Intuit Violated the Plan Document.**

7  As a factual matter, at no point during the putative class period – January 1,

8  2018 to December 31, 2021 – was Intuit's use of forfeitures to reduce its own

9  contributions *ever* in compliance with the Plan document.  Both before and after the

10  amendment effective January 1, 2020, the Plan document permitted forfeitures to

11  reduce *only* two types of contributions: (1) "Safe Harbor Matching Contributions" and

12  (2) "Profit Sharing Contributions."  *See* Plan Doc. § 6.2(e); *id.* Amend. 2.  The

13  contributions reduced in years 2018, 2019, 2020 and 2021 were not of either type.

14  The contributions reduced in those years could not have been "Safe Harbor

15  Matching Contributions" because the Plan document defines "Safe Harbor Matching

16  Contributions" as contributions made by Intuit "for periods beginning January 1,

17  2012 and *ending* December 31, 2014" that were intended to comply with Internal

18  Revenue Code § 401(k)(13).  *Id.* § 2.45 (emphasis added); *see also id.* § 4.6(b)

19  (requiring Intuit to make "Safe Harbor Matching Contributions" effective "January 1,

20  2012 and *prior to* December 31, 2014") (emphasis added).

21  Nor could the contributions reduced in those years have been "Profit Sharing

22  Contributions."  As Intuit itself reported in its annual filings with the Department of

23  Labor, no "Profit Sharing Contributions" were made in any of those years.  *See*

24  Request for Judicial Notice, Exh. 1 (2019 Form 5500 at Note 3 to Financial

25  Statements ("No discretionary profit sharing contribution has been made for the

26  years ended December 31, 2019 and 2018.")); Exh. 2 (2021 Form 5500 at Note 3 to

27  Financial Statements ("No discretionary profit sharing contribution has been made

28  for the years ended December 31, 2021 and 2020.")).

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1     This means that the contributions reduced in years 2018, 2019, 2020 and 2021

2  could only have been "Matching Contributions."  *See* Plan Doc. §§ 2.31, 4.6(a).  The

3  Plan document has *never* permitted Intuit to use forfeitures to reduce this type of

4  contribution.  *See id*. § 6.2(e) & Amend. 2.  Therefore, Intuit *violated* the Plan

5  document when it used forfeitures to reduce "Matching Contributions" in those years.

6     To be sure, the Plan document allows expenses to "be charged against

7  Participants' Accounts."  *Id.* § 10.1.  However, that provision does not purport to

8  relieve Intuit of its statutory duty to defray Plan expenses, nor could it lawfully do so.

9  *See* 29 U.S.C. § 1104(a)(1)(A)(ii) (requiring fiduciaries to "defray[] reasonable

10 expenses of administering the plan"); *id.* § 1110(a) (stating that "any provision in an

11 agreement or instrument which purports to relieve a fiduciary from responsibility ...

12 for any ... duty under this part shall be void as against public policy").  It simply

13 provides that *when* expenses cannot be defrayed as required by ERISA, they may be

14 charged to participants.

15         **2.  Intuit Cannot Hide Behind the Terms of the Plan.**

16     As a legal matter, Intuit is simply wrong that fiduciaries are categorically

17 immune from liability so long as they comply with plan terms that are not

18 themselves unlawful.  Fiduciaries must act "in accordance with the documents and

19 instruments governing the plan *insofar as such documents and instruments are*

20 *consistent with the provisions of this subchapter*."  29 U.S.C. § 1104(a)(1)(D)

21 (emphasis added).  As the Supreme Court in *Fifth Third* explained, "[t]his provision

22 makes clear that" ERISA's fiduciary duties "trump[] the instructions of a plan

23 document[.]" 573 U.S. at 421; *see also Cent. States, Se. & Sw. Areas Pension Fund v.*

24 *Cent. Transp., Inc.,* 472 U.S. 559, 568 (1985) (holding that "trust documents cannot

25 excuse trustees from their duties under ERISA, and that trust documents must

26 generally be construed in light of ERISA's policies").

27     *Fifth Third* concerned the duty of prudence as applied to an employee stock

28 ownership plan (ESOP), "a type of pension plan that invests primarily in the stock of

11

the company that employs the plan participants." 573 U.S. at 412. The plan required "the ESOP's funds to be invested primarily in shares of common stock of Fifth Third." *Id.* There was no question that this term was lawful. In fact, the Supreme Court acknowledged that "ESOP plans instruct their fiduciaries to invest in company stock, and § 1104(a)(1)(D) requires fiduciaries to follow plan documents so long as they do not conflict with ERISA." *Id.* at 423–24. And the Court recognized that "in many cases an ESOP fiduciary who fears that continuing to invest in company stock may be imprudent finds himself between a rock and a hard place: If he keeps investing and the stock goes down he may be sued for acting imprudently in violation of § 1104(a)(1)(B), but if he stops investing and the stock goes up he may be sued for disobeying the plan documents in violation of § 1104(a)(1)(D)." *Id.* at 424. Nevertheless, a unanimous Supreme Court held "that the duty of prudence trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary." *Id.* at 421.

*Fifth Third* forecloses Intuit's argument that compliance with the Plan's terms excuses its failure to apply forfeitures to defray expenses. Intuit relies exclusively on the Ninth Circuit's decision in *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004), for the proposition that there can be no breach where the fiduciaries "complied with the Plan's lawful terms and were under no legal obligation to deviate from those terms." *Id.* at 1100. But *Wright* must be read in conjunction with the Supreme Court's subsequent opinion in *Fifth Third,* which held that fiduciaries *are* obligated to deviate from plan terms where necessary to satisfy their fiduciary duties. *See* 573 U.S. at 421.

For example, in *Doe v. United Behavioral Health*, 523 F. Supp. 3d 1119 (N.D. Cal. 2021), the plaintiff sued a welfare benefit plan's third-party administrator for breach of ERISA's fiduciary duties after the administrator denied the plaintiff's claim for reimbursement of his treatment costs for Autism. It was undisputed that the plan explicitly excluded coverage for the type of treatment that the plaintiff received.

12

The administrator moved for summary judgment on that basis, arguing that it merely applied the language of the exclusion and lacked any authority to deviate from the plan's terms.

The Court denied the administrator's motion notwithstanding the exclusion and the administrator's inability to rewrite it. Relying on ERISA § 404(a)(1)(D) and *Fifth Third*, as well as numerous circuit court decisions, the Court held that "plan terms cannot override fiduciary duties" because "the statute explicitly requires a fiduciary to apply a plan's terms, but *only* if those terms do not violate ERISA." *Id.* at 1127 (emphasis in original). The Court reasoned that because "ERISA imposes specific and independent duties on its fiduciaries to otherwise comply with the provisions of ERISA[,]" the administrator "cannot hide behind the plan terms" to immunize its decision-making from ERISA scrutiny. *Id.*

By statute, Intuit had a fiduciary duty to defray the Plan's expenses. *See* 29 U.S.C. § 1104(a)(1)(A)(ii). As in *Doe*, Intuit cannot hide behind the Plan's terms to excuse its failure to comply with the statute. Regardless of what the Plan said about the use of forfeitures and the payment of expenses, ERISA imposed independent duties on Intuit to use forfeitures in the participants' best interests. *See Feinberg v. T. Rowe Price Grp., Inc.*, 2021 WL 488631, at *6 (D. Md. Feb. 10, 2021) (holding that "a fiduciary has an obligation to diverge from plan document instructions where necessary to protect the interests of plan participants"). Because Plaintiff has alleged that Intuit failed to do that, *see* Compl. ¶¶ 33, 34, 39, 40, she has stated a claim for breach of fiduciary duties.

### 3. Intuit's Reliance on Tax Law is Misplaced.

Intuit argues (MTD pp. 4-5) that "the question of what the permissible uses are for" forfeitures "has long been answered" by section 401(a)(8) of the Internal Revenue Code, which when enacted in 1962, provided that "[a] trust forming part of a *pension plan* shall not constitute a qualified trust under this section unless the plan provides that forfeitures must not be applied to increase the benefits any employee

13

1  would otherwise receive under the plan." 26 U.S.C. § 401(a)(8) (1962) (emphasis

2  added).  Intuit suggests that this Code provision precluded it from using forfeitures

3  to defray the Plan's expenses.  This argument fails to persuade.

4      It has always been clear that the requirements of "[s]ection 401(a)(8) of the

5  Code" do "not extend to profit-sharing … plans."  Rev. Rul. 71-313, 1971 WL 26693

6  (1971).  The IRS regulations state that "[a] *pension plan* within the meaning of

7  section 401(a)" is a plan that provides for "the payment of *definitely determinable*

8  *benefits*" (i.e., a defined benefit plan).  26 C.F.R. § 1.401-1(b)(1)(i) (emphasis added).

9  A "profit-sharing plan," by contrast, is a plan that provides for "a definite

10 predetermined formula for allocating the *contributions* to the plan" (i.e., a defined

11 contribution plan).  26 C.F.R. § 1.401-1(b)(1)(ii) (emphasis added).  Confirming that

12 section 401(a)(8) has no application to defined contribution plans, the statute was

13 amended in 1986 to replace the term "pension plan" with the term "defined benefit

14 plan."  *See* Pub. L. No. 99-514, 100 Stat. 2085 at § 1119(a) (1986).

15     Intuit relies on comments in the House Conference Report to that amendment

16 stating the drafters' understanding of then-existing tax law as permitting forfeitures

17 in defined contribution plans to be used to reduce future employer contributions.

18 But, as the Ninth Circuit recently reaffirmed, "legislative history is not law."  *Hunley*

19 *v. Instagram, LLC*, 73 F.4th 1060, 1072 (9th Cir. 2023).  Legislative history is

20 relevant only "as an aid to understanding an ambiguous text."  *Id.*  At best, the

21 conference report might support an inference that Code section 401(a) does not

22 disqualify for favorable tax treatment defined contribution plans that allow

23 forfeitures to reduce employer contributions.[6]

24 _____

25 [6] Indeed, last year the IRS published *proposed* regulations that, if promulgated,
26 would do precisely that.  *See* 88 Fed. Reg. 12282 (2023).  There would have been no
   need for the IRS to propose regulations if the question "has long been answered" as
27 Intuit proclaims.  In any event, "proposed regulations carry no more weight than a
   position advanced on brief."  *Tedori v. United States*, 211 F.3d 488, 492 (9th Cir.
28 (footnote continued)

14

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1    Finally, Intuit's purported compliance with section 401(a) of the Code is not a

2    defense to Plaintiff's ERISA claims because that provision has no application to

3    ERISA.   *See McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1117-18 (9th Cir. 2000)

4    (rejecting the notion that "ERISA incorporates" IRC § 401(a)); *Reklau v. Merchants*

5    *Nat. Corp.,* 808 F.2d 628, 631 (7th Cir. 1986) (refusing "to read § 401(a) of the I.R.C.

6    as applicable to ERISA").   Because neither that Code section nor its interpreting

7    regulations apply to ERISA, Intuit's purported compliance with them is of no legal

8    consequence.   *Accord Esden v. Bank of Bos.*, 229 F.3d 154, 176 (2d Cir. 2000) (holding

9    that "[a] favorable determination letter [from the IRS] indicates only that an

10   employee retirement plan qualifies for favorable tax treatment by meeting the formal

11   requirements of I.R.C. § 401(a). … [T]he determination letters do not bar plan

12   participants from asserting their rights under ERISA.").

13   **C.  Plaintiff has Shown Two Plan Injuries.**

14   Plaintiff alleges that Intuit's breach injured the Plan in two distinct ways.

15   First, it "caused the Plan to receive fewer contributions that would otherwise have

16   increased Plan assets."  Compl. ¶ 41.   Second, it deprived the Plan of the money the

17   individual accounts would have earned had Intuit not "caused participants to incur

18   expense deductions from their individual accounts."  *Id.* ¶¶ 17, 41; *see also id.* ¶¶ 17,

19   34 (alleging that the Plan "received decreased Company contributions" and lost the

20   opportunity to invest the "expense deductions" that could have been avoided "by

21   utilizing forfeited funds in the Plan to reduce or eliminate the administrative

22   expenses charged to [the participants'] individual accounts").   Intuit focuses

23   exclusively on the first way in which Plaintiff alleges the Plan was injured and

24   conveniently ignores the second.

25   _____

26   2000).   Even if the proposed regulations eventually become final, they would only
     apply to plan years beginning on or after January 1, 2024.  *See* 88 Fed. Reg. 12282, at

27   12285.   They would have no application here because Plaintiff's claims challenge
     Intuit's use of forfeitures in years 2018 to 2021.  *See* Compl. ¶¶ 21-24, 27.

28

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1

### 1.   Intuit Ignores the Lost Investment Opportunity Injury.

Intuit argues that Plaintiff "has founded her entire Complaint on the supposition that the Plan was injured because it received less in *future* employer contributions than it would have had the forfeitures not been applied toward employer contributions."  MTD p. 14 (emphasis in original).  While that is *one* way in which Plaintiff alleges the Plan was injured, it is not the *only* way.  Intuit overlooks that Plaintiff *also* alleges that the Plan was injured because its participants and beneficiaries "were forced to incur avoidable expense deductions to their individual accounts" which "reduce[d] the funds available" in the Plan for "investing."  Compl. ¶¶ 17, 34.  This injured the Plan as a whole because it resulted in "'lost investment opportunity'; that is, the money that the" expense deductions "would have earned over time."  *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016); *see also Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1126 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021) ("Plan losses include the lost investment opportunity of funds that would have remained in the Plan had the fiduciary performed its duty.").  Even if Intuit believed it proper to use forfeitures to reduce its own contributions, Intuit has not offered *any* explanation for why it failed to use the balance remaining in the forfeiture account each year to defray expense deductions from participant accounts and thereby maximize the funds available for investing.  Because Intuit makes no argument as to *that* injury, it cannot do so for the first time in reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Dytch v. Yoon*, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011).

### 2.  Intuit was Required to Make "Matching Contributions."

With respect to the first way in which Plaintiff alleges the Plan was injured, Intuit argues that the injury is "purely speculative" because "it was entirely up to Intuit how much to contribute to the Plan."  MTD pp. 14-15.  According to Intuit, "Plaintiff's Complaint presupposes that, had a Plan fiduciary decided to allocate the forfeitures to administrative expenses, Intuit would have then *increased* its

16

contributions to cover the difference and keep the benefit levels the same." MTD p. 15 (emphasis in original). While Intuit was free to decide how much to contribute to the Plan when *designing* the Plan, it did not have that same freedom when *implementing* the Plan. *See Waller*, 32 F.3d at 1342-43 (holding that the implementation of a settlor decision triggers fiduciary obligations); *see also Asner*, 557 F. Supp. 3d at 1033 ("[T]he implementation of decisions concerning plan design can be subject to ERISA fiduciary duty").

At all times during the putative class period, the Plan document *required* Intuit to make a "Matching Contribution" to the Plan on behalf of each participant in an amount equal to 125% of the first 6% of the participant's compensation contributed to the Plan. Plan Doc. § 4.6(a) (providing that Intuit "*shall* make a Matching Contribution") (emphasis added). When Intuit applied forfeitures to reduce its "Matching Contributions," Intuit contributed an amount *less* than 125% of the first 6% of participants' annual compensation contributed to the Plan.[7]

And as already shown, *supra* p. 11, because the Plan has *never* permitted Intuit to use forfeitures to reduce "Matching Contributions," Intuit cannot argue that it "only ever committed to making contributions in an amount already offset by forfeitures." MTD p. 16; *see also id.* at p. 10 (asserting that Intuit agreed "to provide a level of benefits based on contributions *net* of forfeitures") (emphasis in original). At best, this argument might pertain to "Safe Harbor Matching Contributions" and "Profit Sharing Contributions" but not the "Matching Contributions" that are at issue in this case. As to "Matching Contributions," Intuit committed to making a fixed level of contributions that could *not* be offset by forfeitures. *See* Plan Doc. §§ 4.6(a), 6.2(e) & Amend. 2. Accordingly, had forfeitures been used to defray expenses, Intuit *still* would have had to make "Matching Contributions" to the Plan at the *same* level.

---

[7] As established *supra* pp. 10-11, the contributions reduced in years 2018, 2019, 2020 and 2021 could only have been "Matching Contributions."

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1   If anything is speculative, it is Intuit's suggestion that had it defrayed expenses as
2   required by the statute, it would have amended the Plan to "adjust[] the level of
3   benefits to match the level of contributions it intended to make."  MTD p. 15, n. 10.

4   **II. Plaintiff has Stated a Claim for Unlawful Employer Inurement.**

5        ERISA § 403(c)(1) provides that "the assets of a plan shall never inure to the
6   benefit of any employer and shall be held for the exclusive purpose of providing
7   benefits to participants in the plan and their beneficiaries and defraying reasonable
8   expenses of administering the plan."  29 U.S.C. § 1103(c)(1).  Plaintiff alleges that
9   this provision was violated when Intuit elected to use forfeited contributions in the
10  Plan "as a substitute for" its "own future contributions to the Plan, thereby saving"
11  itself "millions of dollars in contribution expenses."  Compl. ¶ 47; *see also id.* ¶¶ 21-
12  24.  Intuit argues, incorrectly, that "[a]n offset, in which assets do not leave the plan
13  and return to the employer's coffers, does not constitute an impermissible inurement
14  even if it reduces the employer's contribution obligation."  MTD p. 17.

15       **A. Employer Debts to the Plan Cannot be Forgiven With Plan Assets.**

16       The anti-inurement rule is violated where, as here, plan assets are used to
17  forgive an employer's debts to the plan.  For example, in *Holland v. Arch Coal, Inc.*,
18  947 F.3d 812 (D.C. Cir. 2020), a statute required certain coal operators to fund an
19  ERISA welfare benefit plan by, among other methods, providing security in the form
20  of a bond, letter of credit, or cash escrow in an amount equal to a portion of their
21  retirees' future health care costs.  Following a series of corporate transactions, the
22  defendant's security obligation was satisfied with a letter of credit.  But after the
23  plan drew down the letter of credit, it sued to compel the defendant to provide
24  additional security.  The defendant argued that the proceeds of the letter of credit
25  should be used either to (1) satisfy the requirement that it provide additional security
26  to the plan, or (2) offset its obligation to make contributions to the plan.

27       The D.C. Circuit rejected this contention as prohibited by ERISA's anti-
28  inurement rule.  The Court explained that using the proceeds of the letter of credit

18

"in either case" would "serv[e] to reduce" the defendant's debt "obligations" to the plan. *Id.* at 821. Using the proceeds in this way, the Court held, would "run afoul of the clear injunction in ERISA that the 'assets of a plan shall never inure to the benefit of any employer.'" *Id.* (quoting 29 U.S.C. § 1103(c)(1)). *Holland* thus stands for the principle that the anti-inurement rule prohibits plan assets from being used to satisfy any part of an employer's debt obligations to the plan.

*Holland* is not alone. Many other courts have held that plan assets impermissibly inure to the benefit of the employer when they are used as a credit against the employer's contribution obligations to a plan. *See Chao v. Malkani*, 452 F.3d 290, 298 (4th Cir. 2006) (holding that the "requested offset" of excess contributions "would violate ERISA's anti-inurement provision, because Plan assets would benefit" the employer); *Brown v. Health Care & Ret. Corp. of Am.*, 25 F.3d 90, 93 (2d Cir. 1994) (holding that a "set off" of "amounts overpaid against monies yet to be paid" is "equally in derogation of the principle that funds of an ERISA plan must never inure to the benefit of the employer"); *Bd. of Trustees v. Grand River Navigation Co., Inc.,* 2021 WL 1215060, at *9 (D. Md. Mar. 30, 2021) ("ERISA's anti-inurement provision not only prohibits the transfer of plan assets to an employer, but also forbids the use of plan assets in any way that would benefit a contributing employer, including giving an employer a credit for past overpayments."); *Operating Eng'rs Loc. 324 Health Care Plan v. Dalessandro Cont. Grp., LLC,* 2012 WL 831758, at *5 (E.D. Mich. Mar. 12, 2012) ("To give Defendant an offset or credit for its overpayments would go against the plain language of 29 U.S.C. § 103(c)(1), which states that 'the assets of a plan shall never inure to the benefit of any employer.'").

In *Chao v. Anderson*, 2007 WL 1448705 (E.D. Va. May 9, 2007), for example, the defendant employers argued that their contribution debt to the plan should be offset "by applying the balance of the Forfeiture Account to the Plan's shortfall." *Id.* at *2. The Court disagreed, reasoning that "allowing such an offset would violate ERISA's anti-inurement provision that 'the assets of a Plan shall never inure to the

19

1  benefit of any employer.' 29 U.S.C. § 1103(c)(1)." *Id.*    The Court rejected the

2  defendants' claim that "they do not request any benefit, but simply ask for the assets

3  in the Forfeiture Account to be distributed to the rightful employees." *Id.*  "Such a

4  distribution," the Court held, "would still inure to the benefit of" the defendants,

5  "albeit in the form of debt-relief." *Id.*  "Such a benefit is clearly within the scope of

6  the statute's text, and thus, would violate the anti-inurement provision." *Id.*

7  The cases cited by Intuit are not to the contrary.  In *Hughes Aircraft Co. v.*

8  *Jacobson*, 525 U.S. 432 (1999), the employer used the surplus assets in an

9  overfunded defined benefit plan to fund a new noncontributory benefits structure.

10  The Court held that the employer "did not act impermissibly by using surplus assets

11  from the contributory structure to add the noncontributory structure to the Plan."

12  *Id.* at 442.    Critically, as the Court expressly acknowledged, "at all times" the

13  employer had "satisfied its continuing obligation under the provisions of the Plan and

14  ERISA to assure that the Plan was adequately funded." *Id.*  Thus, the Court

15  emphasized that the employer had *not* used plan assets to satisfy its debt obligations

16  to the plan.  Rather, the employer used surplus assets to provide *additional* benefits

17  not previously required.

18  Likewise, in *Spink v. Lockheed Corp.*, 125 F.3d 1257 (9th Cir. 1997), the

19  employer amended a defined benefit plan to offer new "increased retirement benefits"

20  that "were paid out of the Plan's surplus assets." *Id.* at 1260.  There was no

21  contention that the employer had used plan assets to forgive its debts to the plan.

22  Same with *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984).  There, the

23  employer established an additional benefit program to ensure that employees' annual

24  pension payments were brought up to at least a "minimum pension floor." *Id.* at 549.

25  To determine the "increase" in employer contributions necessary to guarantee a

26  "minimum pension floor," the "annuity payments" under the existing retirement

27  plans were "subtracted as a setoff" from the "minimum pension floor." *Id.* at 549,

28  551.  The annuity payments were not used to forgive the employer's debt, but to

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1  calculate the "net increase" in contributions necessary to fund an additional benefit.

2  *Id.* at 551.

3  **B.  Forfeitures Were Used to Forgive Intuit's Debts to the Plan.**

4  As already discussed, the Plan document required Intuit to make a "Matching

5  Contribution" to the Plan on behalf of each participant equal to 125% of the first 6%

6  of the participant's compensation contributed to the Plan.  Plan Doc. § 4.6(a).  This

7  provision guaranteed that the Plan would receive a fixed amount of "new money"

8  from Intuit in proportion to the amounts contributed by participants.  When Intuit

9  allocated forfeitures to reduce its own matching contributions in years 2018 to 2021,

10  "old money" already in the Plan was recycled and substituted for "new money" that

11  was supposed to come into the Plan.  The upshot is that in each of those years, Intuit

12  contributed less in "new money" than it otherwise would have had the forfeitures

13  been allocated elsewhere.  This debt forgiveness constituted a direct and greater-

14  than-incidental benefit to Intuit in violation of ERISA's anti-inurement rule.  *See*

15  *Chao*, 2007 WL 1448705, at *2 (holding that the anti-inurement rule prohibits

16  forfeitures from being used to offset employer debts to the plan).[8]

17  **III.   Plaintiff has Stated a Claim for Prohibited Transactions.**

18  **A. Plaintiff has Alleged a Transaction That Plausibly Violates § 406(a).**

19  ERISA prohibits plan fiduciaries from causing the plan to engage in "a

20  transaction" in which property is "exchange[d]" between the plan and a "party in

21  interest" or "assets of the plan" are "use[d] by or for the benefit of a party in interest."

22  29 U.S.C. § 1106(a)(1)(A) & (D).  Plaintiff alleges that "[b]y electing to use forfeited

23  _____

24  [8] Intuit argues that the forfeitures did not forgive its debts to the Plan because
"Intuit only ever committed to making contributions in an amount already offset by

25  forfeitures."  MTD p. 16.  But, as already shown, *supra* p. 11, the Plan has *never*
permitted Intuit to apply forfeitures to reduce its "Matching Contribution"

26  obligations.  *See* Plan Doc. § 6.2(e) & Amend. 2.  Intuit's application of forfeitures to
reduce its "Matching Contributions" in *violation* of the Plan confirms that these plan

27  assets impermissibly inured to its benefit.

28

21

1  funds in the Plan as a substitute for" its required "contributions to the Plan," Intuit,

2  acting in a fiduciary capacity as already established, *supra* pp. 4-9, "caused the Plan

3  to engage in transactions that constituted a direct or indirect exchange of existing

4  Plan assets for future employer contributions and/or a use of Plan assets by or for the

5  benefit of" itself.  Compl. ¶ 52.

6      Intuit does not dispute that, as the "employer" of Plan participants, it is a

7  "party in interest."  *See* 29 U.S.C. § 1002(14)(C).  Rather, Intuit argues that its use of

8  forfeitures to reduce its own contributions was not a "transaction" – i.e. was not a

9  "sale or exchange" – within the meaning of ERISA § 406(a)(1)(A).  However, the

10 Supreme Court has found a nearly identical arrangement to be a "transaction"

11 prohibited by the Internal Revenue Code's parallel provision.

12     Like 29 U.S.C. § 1106(a)(1)(A), 26 U.S.C. § 4975(c)(1)(A) prohibits the "sale or

13 exchange" of property "between a plan and a disqualified person."  The issue in

14 *Commissioner v. Keystone Consolidated Industries, Inc.*, 508 U.S. 152 (1993), was

15 whether this provision was violated when the plan received contributions of real

16 property from the employer, a "disqualified person," in satisfaction of the employer's

17 contribution obligations to the plan.  The Supreme Court held that "[t]he contribution

18 of property in satisfaction of a funding obligation is at least both an indirect type of

19 sale and a form of exchange, since the property is exchanged for diminution of the

20 employer's funding obligation."  *Id.* at 159.

21     So too here.   There was a "transaction" because the forfeitures were

22 "exchanged" for diminution of Intuit's funding obligation.  Indeed, the Department of

23 Labor has taken the position in briefing that the "use of" a plan's "forfeiture account

24 funds to reduce the amount [an employer] had to pay for its declared matching

25 obligation were prohibited transactions" because it "caused a direct financial benefit

26 to" the employer.  *See* Request for Judicial Notice, Exh. 3 (DOL Brief pp. 11, 23).

27 / / /

28 / / /

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1       **B**.  **Plaintiff has Alleged Self-Dealing That Plausibly Violates § 406(b).**

2       ERISA also prohibits a plan fiduciary from "deal[ing] with the assets of the

3   plan in his own interest or for his own account."  29 U.S.C. § 1106(b)(1).  Plaintiff

4   alleges that Intuit violated this prohibition when, acting in a fiduciary capacity as

5   already established, *supra* pp. 4-9, it used forfeitures in the Plan "as a substitute for

6   future employer contributions to the Plan, thereby saving the Company millions of

7   dollars in contribution expenses."  Compl. ¶ 57; *see also id.* ¶¶ 21-24.  Once again,

8   Intuit argues that this is not a "transaction" prohibited by the statute.  But the

9   statute does not require a "transaction."[9]

10      Subdivision (b) of 29 U.S.C. § 1106, which prohibits self-dealing, is "broader in

11  scope" than subdivision (a).  *Int'l Bhd. of Painters & Allied Trades Union and Indus.*

12  *Pension Fund v. Duval*, 925 F. Supp. 815, 825 (D.D.C. 1996).  It provides that "[a]

13  fiduciary with respect to a plan shall not – *deal with* the assets of the plan in his own

14  interest or for his own account," and makes no mention of a "transaction."  29 U.S.C.

15  § 1106(b)(1) (emphasis added).  Because "§ 1106(b)(1) does not use the word

16  'transaction,'" an "affirmative transaction" is not "required" to state a claim.  *United*

17  *Food*, 2014 WL 4627904, at *6.

18      Intuit does not dispute that the forfeitures were "assets of the Plan."  Nor does

19  Intuit argue that Plaintiff's allegations fail to show that it "dealt with" the forfeitures

20  in its own interest or for its own account.  Instead, Intuit attempts to rewrite the

21  statute by arguing that "the issues of impermissible inurement and self-dealing

22  prohibited transactions are conceptually linked" such that there can be no self-

23  dealing if there is no inurement.  MTD p. 20.  That is manifestly *not* the law.

24  _____

25  [9] Although "the statutory heading uses the word 'transactions' … the title of a statute
    cannot limit the plain meaning of the text."  *United Food & Com. Workers Int'l*
26  *Union-Indus. Pension Fund v. Bank of N.Y. Mellon*, 2014 WL 4627904, at *6 (N.D. Ill.
    Sept. 16, 2014); *see also Sec'y of Labor v. Seward Ship's Drydock, Inc.*, 937 F.3d 1301,
27  1309 (9th Cir. 2019) (same).

28
**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

*Spink v. Lockheed Corp.*, 125 F.3d 1257 (9th Cir. 1997), on which Intuit relies for this assertion, held that the plaintiff's inurement claim failed not because the Supreme Court dismissed Spink's prohibited transaction claim, but because "the Supreme Court analogized the benefit received by Lockheed through the Plan amendments to other 'incidental benefits' which an employer permissibly receives under ERISA." *Id.* at 1260.   Thus, contrary to Intuit's assertion, Plaintiff need not show "impermissible inurement" to Intuit to state a self-dealing "prohibited transaction claim." MTD p. 20.[10]

All Plaintiff must show is that Intuit dealt with the assets of the Plan in its own interest or for its own account.  *See Acosta v. Pac. Enterprises*, 950 F.2d 611, 621 (9th Cir. 1992) ("In order to state a claim for self-dealing under ERISA," a plaintiff "must demonstrate that" the defendant "actually used its power to deal with the assets of the plan for its own benefit or account.").   Plaintiff has done precisely that, alleging that Intuit used its power to deal with the Plan's assets for its own benefit or account by using forfeitures to reduce its own contributions.  *See* Compl. ¶ 57.  A "fiduciary may not engage in self-dealing under 29 U.S.C. § 1106(b) by paying itself from plan funds." *Barboza v. Cal. Ass'n of Pro. Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015).  "Such conduct constitutes a per se violation of § 1106(b)(1)." *Id.*

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the motion to dismiss Counts I, II, III, IV and V as against Intuit.  Plaintiff agrees that all claims against the Committee should be dismissed, as should Count VI.

DATED:  January 22, 2024                    **HAYES PAWLENKO LLP**
                                            /s/Kye D. Pawlenko
                                            Attorneys for Plaintiff

---

[10] Even if that were a requirement, Plaintiff *has* shown impermissible inurement. *See infra* pp. 18-21.

24

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS**