UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH RODRIGUEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>INTUIT INC., et al.,<br><br>        Defendants. | Case No. 23-cv-05053-PCP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 33 |

Deborah Rodriguez brings this putative class action under the Employee Retirement Income Security Act (ERISA) against both her former employer, Intuit Inc., and the Employee Benefits Administrative Committee of the Intuit Inc. 401(k) Plan ("Committee"). She alleges that Intuit used forfeited nonvested accounts to reduce its own matching contributions to its employee pension benefits plan in contravention of the terms of the plan and in violation of its fiduciary obligations under federal law.

The defendants move to dismiss Ms. Rodriguez's claims under Rule 12(b)(6), contending that the complaint fails to state any valid causes of action. For the following reasons, the defendants' motion is granted as to Count VI (for failure to monitor fiduciaries) and as to all claims against the Committee. The defendants' motion is otherwise denied.

## BACKGROUND[1]

On October 2, 2023, Deborah Rodriguez commenced this putative class action against Intuit, the Committee, and Does 1–10. Dkt. No. 1, Compl. ¶ 1.

Defendant Intuit is a financial software corporation employing over 17,000 individuals.

---

[1] For purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the allegations in Ms. Rodriguez's complaint.

Compl. ¶ 5. Intuit is incorporated under the laws of Delaware with its headquarters located in Mountain View, California. *Id.* Intuit sponsors and administers "The Intuit Plan" (hereinafter "Plan"), "a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34) … subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a)." *Id.* ¶¶ 4, 6 (citing 29 U.S.C. § 1002(16)(B) (Plan sponsor); 29 U.S.C. § 1002(16)(A) (Plan administrator)). The Committee is an entity "created by Intuit to assist in the management of the Plan [that] was delegated with authority to, among other things, direct the trustee with respect to the crediting and distribution of the Plan assets." *Id.* ¶ 7. Defendant Does 1–10 are "Plan fiduciaries unknown to Plaintiff who exercise or exercised discretionary authority or discretionary control respecting the management of the Plan, exercise or exercised authority or control respecting the management or disposition of its assets, or have or had discretionary authority or discretionary responsibility in the administration of the Plan and are responsible or liable in some manner for the conduct alleged in the complaint." *Id.* ¶ 10.

Plaintiff Deborah Rodriguez is a California resident who was previously employed by Intuit in California. Compl. ¶ 9. Ms. Rodriguez has been a participant in the Plan since 2010. *Id.* She brings this action individually on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2)–(3), as well as on behalf of the following putative class estimated to include at least 10,000 members: "[a]ll participants and beneficiaries of the Intuit Plan from January 1, 2018 through December 31, 2021, excluding Defendants and members of the Committee of the Intuit Plan." *Id.* ¶¶ 1, 26–28.

The Plan "is maintained under a written document … restated on January 1, 2017." Compl. ¶ 11. That document specifically designates the Committee as the "Administrator" under the Plan "as defined in ERISA Section 3(16)(A)" and makes the Committee "the named fiduciary (as defined in ERISA Section 402(a)(2))." Plan Doc. §§ 2.2, 7.3(a). The assets of the Plan are held in a trust fund in accordance with 29 U.S.C. § 1103(a). *Id.* ¶ 12.

Participants contribute to the Plan through wage withholdings deposited into the Plan's trust fund. Compl. ¶ 13. Intuit also contributes to the Plan's trust fund through matching contributions. *Id.* "For each year of the class period," from 2018 through December 2021, Intuit "made matching contributions on a pay period basis equal to 125% of up to 6% of the participant's

compensation contributed to the Plan, subject to an annual limit of $10,000." *Id.* ¶¶ 13, 27.

The annual expenses incurred for administering the Plan ranged from $669,937 to $975,040 throughout the class period. Compl. ¶ 16. "Substantially all expenses incurred for administering the Intuit Plan are paid by the Plan with Plan assets." *Id.* Each participant account is charged with an allocation of those expenses paid by the Plan, and "all participant accounts have been charged with administrative expenses on at least a quarterly basis" through the class period, thereby "reduc[ing] the funds available to participants for distribution and/or investing." *Id.* ¶ 17.

Plan participants "are immediately vested in their own contributions, along with any income or losses on those balances," and Intuit's "matching contributions, along with any income or losses on those balances, become vested over a period of years depending on when the participant was hired." Compl. ¶ 18. If a participant "has a break in service prior to full vesting of the Company's matching contributions, the participant forfeits the balance of unvested Company matching contributions in his or her individual account." *Id.* ¶ 19.

The Plan provides Intuit with discretionary authority over the management of forfeitures. Under the express terms of the Plan, forfeited nonvested accounts may be used to either pay administrative expenses or reduce Intuit's matching contributions. Compl. ¶ 20. Section 6.2(e) provides:

> Any amounts forfeited pursuant to this Section, any amounts attributable to forfeitures transferred pursuant to the merger of another tax qualified plan with this Plan, and any other amounts to be treated as forfeitures under the Plan, shall be applied, at the Company's election, to: (i) with respect to forfeitures of Matching Contributions or Safe Harbor Matching Contributions, reduce the Participating Employers' obligation to make Safe Harbor Matching Contributions; and (ii) with respect to forfeitures of Profit Sharing Contributions, allocated as Profit Sharing Contributions pursuant to Section 4.7.

Plan Doc. § 6.2(e). Effective January 1, 2020, Section 6.2(e) was amended as follows:

> Any amounts forfeited pursuant to this Section, any amounts attributable to forfeitures transferred pursuant to the merger of another tax qualified plan with this Plan, and any other amounts to be treated as forfeitures under the Plan, shall be applied, at the Company's election, to: (i) pay expenses of administering the Plan; (ii) with respect to forfeitures of Matching Contributions or Safe Harbor Matching Contributions, reduce the Participating Employers'

3

> obligation to make Safe Harbor Matching Contributions; and (iii) with respect to forfeitures of Profit Sharing Contributions, allocated as Profit Sharing Contributions pursuant to Section 4.7.

Dkt. No. 34-1, at 87.

During the class period, Ms. Rodriguez alleges that the defendants "chose to utilize the forfeited funds in the Plan for the Company's own benefit … by reallocating nearly all of these Plan assets to reduce future Company matching contributions to the Plan." Compl. ¶ 20. For example, in 2018, Intuit's reallocation of forfeited nonvested funds reduced matching contributions by $4,704,000, leaving a balance of approximately $331,000 in the forfeiture account. *Id.* ¶ 21. No portion of the forfeitures was used to pay Plan expenses that year, which totaled $730, 948. *Id.* Intuit acted similarly in 2019 and 2020. *See id.* ¶¶ 22–23. In 2021, Intuit allocated $74,000 of forfeited nonvested funds to pay plan expenses totaling $975,000 that year, leaving a balance of approximately $140,000 in the forfeiture account. *Id.* ¶ 24.

The complaint asserts six total causes of action. The following five causes of action are bought against all defendants: (1) Breach of Fiduciary Duty of Loyalty, 29 U.S.C. § 1104(a)(1)(A)); (2) Breach of Fiduciary Duty of Prudence, 29 U.S.C. § 1104(a)(1)(B); (3) Breach of ERISA's Anti-Inurement Provision, 29 U.S.C. § 1103(c)(1); (4) Prohibited Transactions in violation of 29 U.S.C. § 1106(a)(1); and (5) Prohibited Transactions in violation of 29 U.S.C. § 1106(b)(1). The Complaint asserts a sixth cause of action against Intuit only for failure to monitor fiduciaries.

On December 18, 2023, the defendants moved to dismiss the complaint pursuant to Rule 12(b)(6). Dkt. No. 33. On January 22, 2024, Ms. Rodriguez filed a partial opposition in which she agreed to dismissal of all claims against the Committee and Count VI against Intuit for failure to monitor. Dkt. No. 38. On February 19, 2024, the defendants filed a reply in support of their motion. Dkt. No. 42.

**LEGAL STANDARD**

Under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). The pleadings must nonetheless

4

1  allege facts that would allow the Court "to draw the reasonable inference that the defendant is
2  liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions
3  "can provide the complaint's framework," but the Court will not assume they are correct unless
4  adequately "supported by factual allegations." *Id.* at 679.

## ANALYSIS

### I. The Parties' Requests for Judicial Notice Are Granted.

In support of their motion to dismiss, the defendants have requested judicial notice of the Plan Document, including amendments. In support of her opposition, Ms. Rodriguez requests judicial notice of two documents publicly filed with the Department of Labor and a court filing. The Court grants the parties' respective requests because each of the documents at issue is either incorporated by reference into Ms. Rodriguez's complaint or available from a source whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). While the Court takes judicial notice of the existence and content of the documents at issue, it will not take judicial notice of the underlying truth of any factual assertions therein.

### II. Ms. Rodriguez Has Stated Claims for Breach of Fiduciary Duties Under 29 U.S.C. § 1104(a)(1)(A) (Loyalty) and 29 U.S.C. § 1104(a)(1)(B) (Prudence).

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).

The defendants seek to dismiss Counts I and II for three reasons. First, they argue that Ms. Rodriguez fails to allege that Intuit functioned as a fiduciary, arguing instead that it functioned as a settlor. Second, they argue that offsetting employer contributions is not a fiduciary breach. Third, they argue that Ms. Rodriguez fails to plead damages.

#### A. Ms. Rodriguez Has Adequately Pleaded That Intuit Functioned as a Fiduciary When it Applied Forfeitures.

Generally, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders

investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title." 29 U.S.C. § 1002(21)(A). Under 29 U.S.C. § 1105(c)(1), "[t]he instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan."

The "rules regarding fiduciary capacity—including the settlor-fiduciary distinction—[]apply to pension and welfare plans alike," including contributory plans under the ERISA statute. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *see Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 43–44 (1999). "Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries," but rather "are analogous to the settlors of a trust." *Lockheed*, 517 U.S. at 890. "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate … plans." *Id.* Generally, "[a]ny decisions relating to the management of plan assets should cautiously be presumed to be fiduciary in nature." 1 ERISA Practice and Litigation § 3:32, Miscellaneous fiduciary issues—Non-fiduciary decisions and conduct.

The Plan specifically provides Intuit with discretionary authority over the management of forfeitures. *See* Plan Doc. § Section 6.2(e); Dkt. No. 34-1, at 87. The original and amended language both entrust Intuit with discretion regarding whether and how much of the forfeitures to apply to its contributions. By the Plan's own terms then, the Committee—as the named fiduciary—designates that Intuit will "carry out fiduciary responsibilities under the Plan" with respect to the allocation of forfeitures. 29 U.S.C. § 1105(c)(1). That "discretionary responsibility in the administration of the plan" implies that Intuit is a fiduciary of the plan. *See* 29 U.S.C. § 1002(21)(A)(iii).

Citing no binding precedent, the defendants contend that Ms. Rodriguez challenges a settlor function, not a fiduciary function. Intuit's "decision" to offset matching contributions with

6

forfeitures, they argue, is "fundamentally a decision regarding how much Intuit will contribute to the Plan" and thus a settlor function. Dkt. No. 42, at 7–8. That argument lacks merit.

First, defendants' interpretation mischaracterizes the nature of the allegations. Rather than challenging any decision regarding the design of the Plan (which would be a settlor function), Ms. Rodriguez challenges Intuit's "decisions regarding how to apply forfeited contributions *after* they have been paid to the Plan and have become 'plan assets.'" Dkt. No. 38, at 11 (citing Compl. ¶¶ 33, 34, 39. 40). *See Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1342 (9th Cir. 1994) (holding that where "plaintiffs attack not the *decision* to terminate, but rather the *implementation* of the decision … that distinction is dispositive" and the company "acted in a fiduciary capacity"); *Asner v. SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018, 1033 (C.D. Cal. 2021) ("Although decisions concerning plan design are normally 'settlor' in nature … the implementation of decisions concerning plan design can be subject to ERISA fiduciary duty.").

Second, the defendants do not dispute that the forfeitures are plan assets. Generally, "all assets paid-in are treated as 'plan assets' and an entity that takes 'actions in regard to their management and disposition must be judged against ERISA's fiduciary standards.'" *Trs. of S. Cal. Bakery Drivers Secuity Fund v. Middleton*, 474 F.3d 642, 646 (9th Cir. 2007). Although Intuit's decision about how to allocate those plan assets undoubtedly effected the amount it would contribute as settlor each year, by the Plan's own terms it was making decisions about the management and disposition of plan assets. As such, it acted in a fiduciary capacity when making those decisions.

**B.   Ms. Rodriguez Has Adequately Pleaded that Intuit Breached Its Fiduciary Duty of Loyalty.**

Fiduciaries under the ERISA statute must act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). The statute imposes a "prudent person standard." 29 U.S.C. § 1104(a)(1)(B).

The complaint plausibly alleges that Intuit acted in contravention of ERISA's mandate to provide benefits solely in the interest of participants and beneficiaries when it chose to use

1 forfeitures to reduce its own contributions during the class period. *See* Compl. ¶¶ 33–35. By both
2 violating the terms of the Plan Document and their duties under the statute, Ms. Rodriguez alleges,
3 the defendants' conduct resulted in "saving the Company millions of dollars each year at the
4 expense of the Plan which received decreased Company contributions and its participants and
5 beneficiaries who were forced to incur avoidable expense deductions to their individual accounts."
6 *Id.* ¶ 34.

7       The defendants contend that Intuit did not breach its duty of loyalty because their conduct
8 expressly complied with the terms of the Plan Document, which were not unlawful. *See Wright v.*
9 *Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("Because Defendants complied
10 with the Plan's lawful terms and were under no legal obligation to deviate from those terms, they
11 provided Plaintiffs with their benefits due."). Because the Plan Document provides that "[a]ll
12 reasonable fees and expenses of the Administrator, the Committee and/or the Trustee incurred in
13 the performance of their duties hereunder or under the Trust shall be charged against Participants'
14 Accounts, unless the Employer elects to pay such fees and expenses," Plan Doc. § 10.1, the
15 defendants contend that *Wright* forecloses a finding that Intuit breached any duty.

16       *Wright* does not, however, compel that conclusion at this stage. Even if Section 10.1
17 standing alone could be interpreted to require that all expenses of administration be charged
18 against Plan participants, Section 6.2 modifies that provision by permitting the use of forfeited
19 matching contributions to pay those expenses. For the reasons already noted, Intuit acted as a Plan
20 fiduciary in deciding whether to do so. And Ms. Rodriguez provides a plausible interpretation of
21 the Plan Document, both prior to and after the amendment, as prohibiting the use of forfeitures to
22 offset anything other than Intuit's "Safe Harbor Matching Contributions" and "Profit Sharing
23 Contributions." Dkt. No. 38, at 16–17. *See* Plan Doc. 6.2(e) (permitting forfeitures to reduce only
24 "Safe Harbor Matching Contributions" and "Profit Sharing Contributions"); Dkt. No. 34-1, at 87
25 (permitting the same as amended). She alleges that the contributions Intuit made in 2018 through
26 2021 can be characterized as neither because "Safe Harbor Matching Contributions" by definition
27 include only certain contributions made prior to the class period and because Intuit reported no
28

"Profit Sharing Contributions" during those years. Dkt. No. 38, at 17.[2] Ms. Rodriguez has therefore plausibly alleged that the Plan did not authorize the specific decisions made by Intuit with respect to the use of forfeited Matching Contributions.

Further, even if Intuit had complied with the terms of the Plan Document, that alone would not excuse Intuit from fulfilling its fiduciary duties under ERISA. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (holding that ERISA's fiduciary duties "trump[] the instructions of a plan document"). The allegations in the complaint plausibly suggest that Intuit breached its duty of loyalty by making decisions that were not in the best interest of Plan participants.

### C. Ms. Rodriguez Has Adequately Pleaded that Intuit Breached Its Fiduciary Duty of Prudence.

Section 1104(a)(1)(B) imposes a fiduciary duty of prudence. The duty of prudence requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). A fiduciary must also act "in accordance with the documents and instruments governing the plan insofar as such documents are consistent with the provisions of this subchapter and subchapter III." 29 U.S.C. § 1104(a)(1)(D). The Court's inquiry "turns on 'the circumstances … prevailing at the time the fiduciary acts," which "will necessarily be context specific." *Fifth Third*, 573 U.S. at 425.

The complaint alleges that the defendants breached the duty of prudence by "declining to

---

[2] The Plan Document defines "Safe Harbor Matching Contributions" as "Participating Employer Contributions made by a Participating Employer under this Plan for periods beginning January 1, 2012 and ending December 31, 2014 in accordance with Section 4.6(b) that are intended to satisfy Code Section 401(k)(13)." Plan Doc. § 2.45. The Plan Document defines "Matching Contributions" as "discretionary Employer Contributions made by a Participating Employer under this Plan for periods prior to January 1, 2012 in accordance with Section 4.6(a) on account of Elective Contributions, and Participating Employer Contributions made under this Plan for periods on and after January 1, 2015 in accordance with Section 4.6(a) on account of Elective Contributions." Plan Doc. § 2.31. Intuit nonetheless asks the Court to construe the second reference to "Safe Harbor Matching Contributions" in Section 6.2 as encompassing both Safe Harbor Matching Contributions and Matching Contributions. This construction, however, disregards the clear distinction drawn in that very Section between the two different terms.

1  use the forfeited funds in the plan to eliminate the administrative expenses charged to participant
2  accounts and instead using such Plan assets to reduce the Company's own contributions to the
3  Plan," Compl. ¶ 39. It alleges further that the defendants acted imprudently by failing "to engage
4  in a reasoned and impartial decision-making process" and failing "to consider whether participants
5  would be better served by another use of these Plan assets after considering all relevant factors."
6  *Id.* ¶ 40.

    The defendants contend that Intuit did not breach its duty of prudence because it was
obligated to discharge its duties in accordance with the Plan and did so without an obligation to
deviate. ERISA "makes clear," however, "that the duty of prudence trumps the instructions of a
plan document." *Fifth Third*, 573 U.S. at 421. Generally, "any provision in an agreement or
instrument which purports to relieve a fiduciary from responsibility or liability for any
responsibility, obligation, or duty under this part shall be void as against public policy," 29 U.S.C.
§ 1110(a). Accordingly, it is plausible that the defendants could have breached their duty of
prudence even while complying with the terms of the Plan Document. *See Fifth Third*, 573 U.S. at
421 (observing that Section 1104(a)(1)(D) "would make little sense if … the duty of prudence is
defined by the aims of the particular plan as set out in the plan documents, since in that case the
duty of prudence could never conflict with a plan document."). Here, Ms. Rodriguez has plausibly
alleged not only that Intuit did not in fact comply with the terms of the Plan Document but also
that a prudent employer in this particular context would have at minimum engaged in a "reasoned
and impartial decision-making process" considering "all relevant factors" before determining how
to use the forfeited funds in the best interest of the participants and beneficiaries. Compl. ¶ 40.
According to Ms. Rodriguez, Intuit failed to do so. At this stage, Ms. Rodriguez has stated a
plausible claim for breach of the duty of prudence.[3]

---

[3] Because Ms. Rodriguez has both pleaded specific facts regarding Intuit's decision-making process and alleged that Intuit's duty of prudence at the very least required Intuit to engage in a reasoned and impartial process, the allegations here differ from those at issue in *Hutchins v. HP Inc.*, No. 23-CV-05875-BLF, 2024 WL 3049456 (N.D. Cal. June 17, 2024), in which the plaintiff "opened with a swing for the fences" and "t[ook] the position that a failure to use forfeited contributions to pay administrative costs is always a violation of ERISA," *id.* at *1. *See also id.* at *6 (noting that the plaintiff's theory was "not limited to any particular circumstances that may be present in this case").

10

#### D. Ms. Rodriguez Has Adequately Pleaded Damages.

Section 1132(a)(2) permits "a participant, beneficiary, or fiduciary" to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a). Under Section 1132(a)(2), the plaintiff "must allege that the fiduciary injured the benefit plan or otherwise jeopardized the entire plan or put at risk plan assets." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010). "The claim for fiduciary breach gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of a fiduciary breach." *Id.*

Ms. Rodriguez has pleaded sufficient facts to support her claim that the Plan as a whole was damaged. Ms. Rodriguez alleges that by applying forfeitures to reduce Intuit's contributions in violation of its fiduciary duties, Intuit "caused the Plan to receive fewer contributions that would otherwise have increased Plan assets," thereby "reduc[ing] the funds available to participants for distribution and/or investing." *Id.* ¶¶ 17, 34, 41. The defendants' argument that these allegations are merely speculative is without merit. The Plan required Intuit to make a "Matching Contribution" equal to 125% of the first 6% of the participant's compensation, *see* Plan Doc. § 4.6(a), and thus represented Intuit's commitment to make a defined level of contributions that "could not be offset by forfeitures." *Id.* at 38. Contrary to the defendants' argument, these allegations are more than purely speculative.

### III. Ms. Rodriguez Has Adequately Pleaded a Claim for Breach of ERISA's Anti-Inurement Provision.

Unless an enumerated exception applies, the ERISA statute provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(C)(1). The relevant inquiry "focuses exclusively on whether fund assets were used to pay … benefits to plan participants, without distinguishing either between benefits for new and old employees under one or more benefit structures of the same plan, or between assets that make up a plan's surplus as opposed to those needed to fund the plan's benefits." *Hughes*, 525 U.S. at 442.

Ms. Rodriguez has plausibly stated a claim for breach of ERISA's anti-inurement

11

provision. The crux of Ms. Rodriguez's allegations is that Intuit received a benefit amounting to "millions of dollars in contribution expenses" by "electing to use the plan assets as a substitute for the Company's own future contributions to the plan." Compl. ¶ 47. That savings, Ms. Rodriguez asserts, is equivalent to "debt forgiveness" and is thus a "direct and greater-than-incidental benefit" to Intuit. Dkt. No. 38, at 27.

Intuit argues that "it is illogical characterize the forfeitures as being 'substituted' for Intuit's contributions, when … Intuit only ever committed to making contributions in an amount already offset by forfeitures." Dkt. No. 33, at 22. For the reasons addressed above, however, Ms. Rodriguez proffers a plausible interpretation of the Plan Document as prohibiting the use of forfeitures to reduce Intuit's matching contributions.

Next, the defendants contend that applying forfeitures (which remain plan assets) to offset administrative expenses cannot violate the anti-inurement provision as a matter of law. Ms. Rodriguez's argument, according to the defendants, is inconsistent with *Hughes*. But this case and *Hughes* differ in crucial respects. In *Hughes*, five beneficiaries of a defined benefit plan alleged that their employer violated the anti-inurement provision by amending the plan to establish an early retirement program providing additional benefits to certain eligible active employees and subsequently amending the plan again to provide that beginning in the new year, "new participants could not contribute to the Plan, and would thereby receive fewer benefits." *Id.* at 436. The second amendment allowed existing members of the plan to "continue to contribute or opt to be treated as new participants." *Id.* That meant that the employer used "surplus assets from the contributory structure to add the noncontributory structure to the Plan." *Id.* at 442. Critically, "the Plan's obligations created by these amendments constitute the only use of the Plan's assets other than paying the pre-existing obligations under the original contributory benefit structure." *Id.* at 436. In so doing, the employer "used fund assets for the sole purpose of paying pension benefits to the Plan." *Id.* at 442. The Supreme Court concluded that "at all times, Hughes satisfied its continuing obligation under the provisions of the Plan and ERISA to assure that the Plan was adequately funded." *Id.* Where the respondents "do not allege that Hughes used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries," the Supreme Court held, "Hughes

could not have violated the anti-inurement provision under ERISA § 403(c)(1)." *Id.* at 442–43.

Unlike in *Hughes*, the plaintiff here *does* allege that the Company used "assets for a purpose other than to pay its obligations to the Plan's beneficiaries." *Hughes*, 525 U.S. at 443. Ms. Rodriguez alleges that Intuit used Plan assets "to reduce its future matching contributions," and "sav[e] the Company millions of dollars each year at the expense of the Plan," not to pay obligations of the Plan—though it too had that effect. Compl. ¶ 25; *see id.* ¶¶ 21–24 (alleging that "Company matching contributions to the Plan were reduced … for the Company's own benefit").

Finally, the defendants contend that Ms. Rodriguez's position is incompatible with Treasury regulations permitting the allocation of forfeitures to cover contributions, with Department of Labor guidance permitting such allocations, *see* DOL Adv. Op. 79-56A, 1979 WL 7031 (Aug. 9, 1979), and with Sixth Circuit caselaw endorsing intra-plan transfers to reduce company contributions. These arguments lack merit. That Treasury regulations and DOL Guidance would generally permit employers to structure plans to allow forfeitures to cover contributions does not establish that Intuit's implementation by using forfeitures to offset its mandatory Matching Contributions within the parameters of this specific Plan (which Ms. Rodriguez plausibly alleges prohibited such a use of forfeitures) was permissible, lawful, or inconsistent with a finding that Intuit violated ERISA's anti-inurement provision. The defendants cite no binding authority to the contrary. At the 12(b)(6) stage, Ms. Rodriguez has plausibly stated a claim for unlawful employer inurement.

**IV.  Ms. Rodriguez Has Adequately Pleaded a Claim for Prohibited Transactions Under 29 U.S.C. § 1106(a)(1) and 29 U.S.C. § 1106(b)(1).**

Unless an exception applies, 29 U.S.C. § 1106(a)(1) provides:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> (B) lending of money or other extension of credit between the plan and a party in interest;
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

13

> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(b)(1) prohibits a fiduciary with respect from a plan from:

> (1) deal[ing] with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

A "party in interest" includes "any fiduciary" of the plan and "an employer." 29 U.S.C. § 1002(3)(14)(A), (C).

Ms. Rodriguez alleges that Intuit, as the employer of Plan participants, is a "party in interest," and that it engaged in prohibited transactions by "electing to use forfeited funds in the Plan as a substitute for future employer contributions to the Plan," causing "a direct or indirect exchange of existing Plan assets for future employer contributions and/or use of Plan assets by or for the benefit of a party in interest." Compl. ¶¶ 51–52.

The defendants move to dismiss both of Ms. Rodriguez's prohibited transaction claims for three reasons.

First, they argue that the plaintiff fails to identify an actionable fiduciary act because Intuit never acted in a capacity other than that of a settlor. For the reasons addressed above, that argument lacks merit because Ms. Rodriguez as plausibly pleaded that Intuit acted as fidcuciary and not a settlor with respect to the challenged conduct.

The defendants next argue that Ms. Rodriguez fails to identify a "transaction at issue" that violates 29 U.S.C. § 1106(a)(1) or 29 U.S.C. § 1106(b)(1). They contend that "Intuit's decision about how much to contribute to the Plan does not constitute a 'transaction.'" In so doing, they characterize Ms. Rodriguez's challenge as merely "attacking the calculation that occurred within Intuit's own 'mind' as it made the determination to contribute, in accordance with the Plan terms, an amount that was offset by forfeitures." Dkt. No. 33, at 26. That "decision regarding how much to contribute to a plan can hardly constitute a prohibited transaction," they argue, as the Supreme Court interpreted that term in *Lockheed v. Spink*. The facts of that case, however, are materially

14

different from those here.

*Lockheed* involved a challenge by a former employee to his employer's early retirement programs that conditioned participation in a defined benefit plan on waiver of certain claims under the Age Discrimination in Employment Act and ERISA. *Lockheed*, 517 U.S. at 885–86. His theory was that conditioning participation in the plan on waiver of claims constituted a prohibited transaction under 29 U.SC. § 1106(a)(1)(D) because the employer derived "significant benefit" by so requiring. *Id.* at 886. That *quid pro quo* between the plan sponsor and the participant, the Supreme Court held, did not constitute a transaction within the meaning of § 1106(a)(1)(D). *Id.* at 894–95. The Court compared the type of "transaction" prohibited by Sections 1106(a)(1)(A), (B), (C), and (E)—characterizing them as "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length,"—with the type of "transaction" prohibited under Section 1106(a)(1)(D). *Id.* at 892–93. What all of these "transactions" have in common, the Supreme Court observed, is that they generally "involve uses of plan assets that are potentially harmful to the plan." *Id.* at 893. Any benefit that the employer derived from conditioning participation on waiver did not involve the "use of plan assets" in a way that impacted the plan itself and was otherwise indistinguishable from other benefits the plaintiff conceded were "incidental" and "thus legitimate." *Id.* at 894–95. Without defining the "precise boundaries of the prohibition" in Section 1106(a)(1)(D), the Court narrowly held "there is one use of plan assets that it cannot logically encompass: a *quid pro quo* between the employer and plan participants in which the plan pays out benefits to the participants pursuant to its terms." *Id.* at 895.

The plaintiffs allege a "transaction" that is consistent with the Supreme Court's interpretation of "transaction" under 1106(a)(1). Here the alleged "transaction" is Intuit's reallocation of undisputed plan assets to reduce its own matching contribution. This was a "use" of plan asserts for the purposes of § 1106(a)(1) (as well as a "dealing with" plan assets for the purposes of § 1106(b)(1)). Unlike in *Lockheed*, where the alleged benefit to the employer was distinct and unrelated to any financial risk to the plan itself, Ms. Rodriguez has plausibly alleged that Intuit's reallocation of plan assets "reduced the funds available to participants for distribution and/or investing," a direct threat to the Plan itself. *Id.* ¶ 17.

15

Finally, the defendants invoke their arguments against Ms. Rodriguez's anti-inurement claim to argue that Ms. Rodriguez fails to plausibly allege any self-dealing here. The Court rejects those arguments for similar reasons. Ms. Rodriguez has plausibly pleaded that Intuit's reallocation of forfeitures created a benefit to it to the detriment of the Plan by reducing the funds available to participants and for investment. Those facts are sufficient to support a plausible inference that Intuit engaged in self-dealing in light of the plaintiffs' plausible interpretation of the Plan as prohibiting such conduct.

Accordingly, Ms. Rodriguez has plausibly stated a claim for prohibited transactions under both 29 U.S.C. § 1106(a)(1) and 29 U.S.C. § 1106(b)(1).

## V.  The Remaining Claims Are Dismissed.

Ms. Rodriguez does not challenge the defendants' motion to dismiss Count VI against Intuit for failure to monitor and all claims against the Committee. Dkt No. 38, at 7. Accordingly, those claims are dismissed.

### CONCLUSION

For the foregoing reason, the defendants' motion to dismiss is granted with respect to Count VI and all claims against The Committee. The defendants' motion with respect to all remaining claims is denied.

**IT IS SO ORDERED.**

Dated: August 12, 2024

_____
P. Casey Pitts
United States District Judge

16