**HAYES PAWLENKO LLP**
Matthew B. Hayes (SBN 220639)
Kye D. Pawlenko (SBN 221475)
mhayes@helpcounsel.com
kpawlenko@helpcounsel.com
1414 Fair Oaks Avenue, Suite 2B
South Pasadena, CA 91030
Tel: (626) 808-4357
Fax: (626) 921-4932

Attorneys for Plaintiff
DEBORAH RODRIGUEZ

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| DEBORAH RODRIGUEZ, individually and as a representative of a class of participants and beneficiaries on behalf of the Intuit Inc. 401(k) Plan, <br><br> Plaintiff, <br><br> v. <br><br> INTUIT INC.; THE EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE OF THE INTUIT INC. 401(K) PLAN; and DOES 1 to 10 inclusive, <br><br> Defendants. | Case No. 5:23-cv-05053-PCP <br><br> **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date: July 17, 2025 <br> Time: 10:00 a.m. <br> Courtroom: 8 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............... 3

      A.    The Parties ......................................................... 3

      B.    The Pleadings .................................................... 3

      C.    Discovery and Investigation Completed Before
            Settlement .......................................................... 5

      D.    Settlement Negotiations ..................................... 6

III.  SUMMARY OF SETTLEMENT TERMS .......................... 6

      A.    Settlement Class ................................................ 6

      B.    Amount of Settlement ........................................ 7

            1.  Class Counsel's Attorneys' Fees and Costs ..... 7

            2.  Named Plaintiff Service Award .................... 7

            3.  Settlement Administrator Fees and Costs ...... 7

            4.  Plan Recordkeeper Expense Payment ........... 8

            5.  Independent Fiduciary Expense Payment ...... 9

      C.    Calculation of Individual Settlement Payments ... 9

      D.    The Scope of Release ....................................... 10

      E.    The Notice and Objection Procedures ............... 11

IV.   THE SETTLEMENT WARRANTS PRELIMINARY
      APPROVAL. ........................................................... 11

      A.    The Proposed Class Should be Certified for
            Settlement Purposes. ....................................... 12

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

B.     <u>The Settlement Terms are Fair, Adequate,</u>
<u>and Reasonable.</u>     16

    1.   The Settlement Resulted from Informed
       Arms-Length Negotiations.     16

    2.   The Settlement has No Obvious Deficiencies.     17

    3.   The Settlement Does Not Provide Improper
       Preferential Treatment.     18

    4.   The Settlement Amount Falls Within the
       Range of Possible Approval.     19

    5.   The Attorney Fee Provision has None of the
       Indicia of Collusion.     21

    6.   There are No Additional Agreements to be
       Identified Under Rule 23(e)(3).     23

V.     THE NOTICE PLAN COMPLIES WITH APPLICABLE
LAW.     23

VI.     CONCLUSION     24

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

**Cases**

*Alcantar v. Hobart Serv.,*
　　800 F.3d 1047 (9th Cir. 2015) ..................................................... 13

*Alvarez v. Farmers Ins. Exchange,*
　　2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .............................. 22

*Baird v. BlackRock Institutional Tr. Co., N.A.,*
　　2020 WL 7389772 (N.D. Cal. Feb. 11, 2020) ........................ 14, 15

*Barragan v. Honeywell Int'l Inc.,*
　　2024 WL 5165330 (D.N.J. Dec. 19, 2024) ................................ 1, 20

*Brinker v. Normandin's,*
　　2017 WL 5495980 (N.D. Cal. Nov. 16, 2017) .............................. 12

*Brown v. CVS Pharmacy, Inc.,*
　　2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) ............................... 18

*Carvalho v. HP, Inc.,*
　　2025 WL 588674 (Feb. 24, 2025) ................................................. 16

*Churchill Vill., LLC v. Gen. Elec.,*
　　361 F.3d 566 (9th Cir. 2004) ....................................................... 23

*Coppel v. SeaWorld Parks & Ent., Inc.,*
　　347 F.R.D. 338 (S.D. Cal. 2024) .................................................. 15

*Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.,*
　　2019 WL 7172597 (C.D. Cal. Oct. 7, 2019) ................................ 16

*Deatrick v. Securitas Sec. Servs. USA,*
　　2016 WL 1394275 (N.D. Cal. Apr. 7, 2016) ................................ 16

*Dimou v. Thermo Fisher Scientific, Inc.,*
　　2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) ............................. 20

*Edwards v. Nat'l Milk Producers Federation,*
　　2017 WL 3616638 (N.D. Cal. June 26, 2017) ............................. 22

*Evon v. Law Offices of Sidney Mickell,*
　　688 F.3d 1015 (9th Cir. 2012) ..................................................... 14

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Foster v. Adams & Assoc., Inc.,*
    2022 WL 425559 (N.D. Cal. Feb. 11, 2022)      22

*Glass v. UBS Fin. Servs.,*
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007)      18

*Haralson v. U.S. Aviation Servs. Corp.,*
    2020 WL 12309507 (N.D. Cal. Sept. 3, 2020)      18

*Harris v. Vector Mktg. Corp.,*
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)      19

*Hesse v. Sprint Corp.,*
    598 F.3d 581 (9th Cir. 2010)      18

*Hurtado v. Rainbow Disposal Co.,*
    2019 WL 1771797 (C.D. Cal. Apr. 22, 2019)      13, 15

*Hutchins v. HP Inc,* 737
        F.Supp.3d 851 (N.D. Cal. 2024)      1, 20

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011)      21, 22

*In re LinkedIn ERISA Litig.,*
    2023 WL 8631678 (N.D. Cal. Dec. 13, 2023)      19, 22

*In re LinkedIn User Privacy Litig.,*
    309 F.R.D. 573 (N.D. Cal. Sept. 15, 2015)      19

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cr. 2000)      17

*In re Northrup Grumman Corp. ERISA Litig.,*
    2011 WL 3505264 (C.D. Cal. Mar. 29, 2011)      15

*Kanawi v. Bechtel Corp.,*
    254 F.R.D. 102 (N.D. Cal. 2008)      14, 15

*Larsen v. Trader Joe's Co.,*
    2014 WL 3404531 (N.D. Cal. July 11, 2014)      19

*Leyva v. Medline Industs. Inc.,*
    716 F.3d 510 (9th Cir. 2013)      12

*Madrigal v. Kaiser Found. Health Plan, Inc.,*

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

2025 WL 1299002 (C.D. Cal. May 2, 2025)    20

*Marshall v. Northrop Gruman Corp.*,
    2020 WL 5668935 (C.D. Cal. Sept. 18, 2020)    22

*Martinez v. Helzberg's Diamond Shops*,
    2021 WL 4730914 (C.D. Cal. Apr. 12, 2021)    18

*Mazza v. Amer. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012)    13

*McManus v. Clorox Co.*,
    2025 WL 732087 (N.D. Cal. Mar. 3, 2025)    1, 20

*McManus v. Clorox Co.*,
    2024 WL 4944363 (N.D. Cal. Nov. 1, 2024)    20

*Munro v. Univ. of S. Cal.*,
    2019 WL 7842551 (C.D. Cal. Dec. 30, 2019)    13

*Navarez v. Forty Niners Football Co., LLC*,
    474 F. Supp. 3d 1041 (N.D. Cal. 2020)    19

*Nen Thio v. Genji, LLC*,
    14 F. Supp. 3d 1324 (N.D. Cal. 2014)    19

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. Sept. 15, 2015)    11

*Perez-Cruet v. Qualcomm Inc.*,
    2024 WL 2702207 (S.D. Cal. May 24, 2024)    1, 20

*Rannis v. Recchia*,
    380 Fed. Appx. 646 (9th Cir. 2010)    12, 13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)    17, 19

*Schwartz v. Cook*,
    2017 WL 2834115 (N.D. Cal. June 30, 2017)    22

*Sievert v. Knight-Swift Transportation Holdings, Inc.*,
    2025 WL 1248922 (D. Ariz. April 29, 2025)    20

*Smith v. Am. Greetings Corp.*,
    2015 WL 4498571 (N.D. Cal. July 23, 2015)    18

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Tibble v. Edison Int'l,*
    2009 WL 6764541 (C.D. cal. June 30, 2009)    15

*Wal-Mart Stores, Inc. v Dukes,*
    564 U.S. 338 (2011)    11, 23

**Statutes**

Fed. R. Civ. P. 23    11, 12, 23

29 U.S.C. § 1103    3

29 U.S.C. § 1104    3

29 U.S.C. § 1106    3

29 U.S.C. § 1109    3

29 U.S.C. § 1132    3

**Other Authorities**

4 <u>Newberg on Class Actions</u> (4th Ed. 2002)    18

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# I.    INTRODUCTION

The proposed settlement concerns the resolution of a putative class action brought by Deborah Rodriguez ("Plaintiff") on behalf of the Intuit 401(k) Plan ("Plan") and its participants and beneficiaries against Intuit Inc. ("Intuit") and The Employee Benefits and Administrative Committee of the Plan ("Committee") (together "Defendants"). The lawsuit challenges how "forfeitures" in the Plan were reallocated. Between 2018 and 2021, a "forfeiture" occurred when participants separated employment before fully vesting in the employer contributions made to the Plan on their behalf. Plaintiff alleges that Defendants violated the Employee Retirement Income Security Act ("ERISA") by reallocating forfeitures to offset Intuit's future contributions to the Plan instead of using these funds to defray Plan expenses charged to participant accounts. Plaintiff also alleged that using forfeitures in this manner reduced Plan contributions.

This is a novel legal issue and Defendants vigorously contest the legal viability of Plaintiff's theory of recovery. To date, no circuit-level courts have addressed claims challenging the allocation of forfeitures, and district courts addressing the claims at issue here have reached conflicting rulings. *Compare, e.g., Hutchins v. HP Inc,* 737 F.Supp. 3d 851 (N.D. Cal. 2024) (dismissing as "implausible" ERISA claims challenging employer's "decision to use 'forfeited' employer contributions to a retirement plan to reduce employer contributions rather than to pay administrative costs") *and Barragan v. Honeywell Int'l Inc.,* 2024 WL 5165330 (D.N.J. Dec. 19, 2024) (same); *with McManus v. Clorox Co.*, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025) (finding allegations challenging employer's decision to use forfeitures to reduce employer contributions instead of defray Plan expenses to state "plausible" ERISA violations); *Perez-Cruet v. Qualcomm Inc.,* 2024 WL 2702207 (S.D. Cal. May 24, 2024) (same).

Following this Court's Order granting in part and denying in part Defendants' motion to dismiss, the parties commenced discovery and Plaintiff undertook an

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

extensive investigation into the claims asserted in this lawsuit. This included, among other things, the production and review of over 7,000 pages of pertinent Plan documents and communications.

In January 2025, the parties participated in a full day mediation with Honorable Morton Denlow, a former federal magistrate judge, and made substantial progress toward reaching a settlement. Over the next three months, the parties engaged in protracted arms-length negotiations regarding the finer points of a comprehensive resolution and have now reached a proposed classwide settlement of this action.

Pursuant to the proposed settlement, Defendants will make a non-reversionary gross settlement payment of $1,995,000. This amounts to roughly 63% of the administrative expenses the Complaint alleges could have been covered by forfeitures and 13% of the total amount of damages Plaintiff alleges based on her contention that employer contributions were improperly offset by forfeitures. All individuals who participated in the Plan and had Plan expenses charged to their accounts during the class period will automatically receive a payment without having to make a claim. The net settlement amount will be apportioned among the class members, pro rata, based on the amount of recordkeeping expenses charged to each class member's account during the class period. For class members with active Plan accounts, the individual settlement payment will be deposited into their account. Class members who no longer maintain a Plan account will be mailed a check.

As detailed below, the proposed settlement is fair, reasonable and adequate in light of the substantial risks and delays of further litigation, and satisfies the requirements for preliminary approval. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval, conditionally certify the proposed class for settlement purposes, approve the proposed notice to the class and the proposed plan of allocation, and schedule a final approval hearing.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Parties

Plaintiff is a former employee of Intuit and a participant in the Intuit Inc. 401(k) Plan ("Plan" or "Intuit Plan").  *See* Declaration of Matthew B. Hayes ("Hayes Decl.") ¶ 10.  The Plan is a defined contribution plan sponsored by defendant Intuit.  *See* Hayes Decl. ¶ 11.  Intuit created the Committee and delegated it with certain authorities in connection with the Plan.  *See* Hayes Decl. ¶ 12.

### B.   The Pleadings

On October 2, 2023, Plaintiff filed the present action "on behalf of the Plan" pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2) seeking to represent a class of participants and beneficiaries of the Plan.  *See* Dkt. 1.  The Complaint alleges six claims: (1) breach of ERISA's duty of loyalty in violation of 29 U.S.C. § 1104(a)(1)(A); (2) breach of ERISA's duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B); (3) inurement in violation of 29 U.S.C. § 1103(c)(1); (4) prohibited transactions in violation of 29 U.S.C. § 1106(a)(1); (5) self-dealing in violation of 29 U.S.C. § 1106(b)(1); and (6) failure to monitor fiduciaries.  *See* Dkt. 1.  In connection with these claims, Plaintiff seeks both monetary and equitable relief for the Plan.  *See* Dkt 1 (Compl. pp. 19-21).

All of the claims are premised on Plaintiff's allegations that Defendants violated ERISA when reallocating forfeitures between 2018 and 2021.  *See* Dkt. 1 (Compl. ¶¶ 11-25).  In this regard, the Complaint alleges that "[w]hen a participant has a break in service prior to full vesting of the Company's matching contributions, the participant forfeits the balance of unvested Company matching contributions in his or her individual account and Defendants exercise discretionary authority and control over how these Plan assets are thereafter reallocated."  *See* Dkt. 1 (Compl. ¶ 19).  The Complaint further alleges that "[a]lthough the Plan expressly authorizes the use of forfeited funds to pay Plan expenses" which are otherwise deducted from participant accounts, "Defendants chose to utilize the forfeited funds in the Plan for

3

the Company's own benefit to the detriment of the Plan and its participants, by reallocating nearly all of these Plan assets to reduce future Company matching contributions to the Plan." *See* Dkt. 1 (Compl. ¶ 20).

As a result of this decision, Plaintiff alleges that between 2018 and 2021 Defendants improperly benefitted Intuit "by reducing its contributions expenses" while "harm[ing]" participants "by reducing future Company matching contributions that would otherwise have increased Plan assets and by causing [them] to incur deductions from their individual accounts each year to cover administrative expenses that would otherwise have been covered in whole or in part by utilizing forfeited funds." *See* Dkt. 1 (Compl. ¶ 25).

From 2018 until 2021 – the year Intuit switched to immediate participant vesting in matching contributions – the Complaint alleges that participants incurred a total of $3,146,771 in expense deductions from their individual accounts that could have been covered by forfeitures. *See* Dkt. 1 (Compl. ¶¶ 21-24); Hayes Decl. ¶ 15. The Complaint also alleges that during this time-period Company matching contributions to the Plan were reduced by $15,236,000. *See* Dkt. 1 (Compl. ¶¶ 21-24).

On December 18, 2023, Defendants filed a motion to dismiss the Complaint on the ground that Plaintiff's allegations "failed to state a claim for any ERISA violation." Dkt. 33. After briefing and a hearing, the Court issued an Order on August 12, 2024 granting in part and denying in part Defendants' motion. Dkt. 63. The Court granted the motion as to the claim against Intuit "for failure to monitor fiduciaries" and "as to all claims against the Committee." *Id.* The Court denied the motion as to the remaining claims asserted against Intuit. *Id.*

On September 9, 2024, Intuit filed an Answer denying all alleged liability and asserting multiple affirmative defenses. Dkt. 68. Intuit asserted that at all times it used plan forfeitures consistent with Plan terms and ERISA, and that it administered the Plan prudently and in the best interests of Plan participants.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## C.   <u>Discovery and Investigation Completed Before Settlement</u>

Following the Court's Order on the motion to dismiss, Plaintiff's counsel undertook extensive discovery and investigation concerning the handling of forfeitures, Plan expenses, and company contributions from 2018 through 2021 (hereafter "Class Period"). *See* Hayes Decl. ¶ 18. Plaintiff's counsel served and received responses to multiple sets of written discovery, including document requests, interrogatories and requests for admissions. *See* Hayes Decl. ¶ 19. Plaintiff's counsel met and conferred with Intuit's counsel regarding numerous responses and ultimately secured a production of over 7,000 pages of responsive documents. *See* Hayes Decl. ¶ 20.

Among other things, Plaintiff's counsel sought and ultimately obtained documents and information pertaining to the following throughout the Class Period: (1) all documents governing the Plan and any amendments thereto; (2) the methods used to determine the dollar amounts deducted from participants' account to pay for the Plan's administrative expenses; (3) policies and procedures governing the use or allocations of forfeitures; (4) policies and procedures governing the allocation of the Plan's administrative expenses; (5) meeting minutes documenting any discussions regarding the use or allocation of forfeitures; (6) written and electronic communications concerning any decisions regarding how to use or allocate forfeitures; (7) documents relating to Intuit's decisions to use the forfeitures to offset employer contributions to the Plan; (8) the amount of forfeitures used to offset employer contributions; and (9) the amount of administrative expenses charged to participants' individual accounts. *See* Hayes Decl. ¶ 21.

Based on the discovery undertaken, Plaintiff was able to conduct a thorough assessment of the likelihood of success on the claims and to calculate the alleged damages to participants and beneficiaries resulting from the allocation of forfeitures to reduce employer contributions rather than defray Plan expenses. *See* Hayes Decl. ¶ 22.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**D.** <u>Settlement Negotiations</u>

On January 28, 2025 the parties participated in a full day mediation with Honorable Morton Denlow, a retired federal magistrate judge. *See* Hayes Decl. ¶ 23. Through mediation, the parties reached an agreement on a framework for resolving the action and over the next three months engaged in ongoing arms-length negotiations to work out all of the terms of a comprehensive resolution. *See* Hayes Decl. ¶ 24. Finally, in May 2025, the parties executed the Class Action Settlement Agreement ("Settlement"). *See* Hayes Decl. ¶ 25. The Settlement is attached as Exhibit 1 to the Declaration of Matthew B. Hayes filed concurrently herewith.

**III.** **SUMMARY OF SETTLEMENT TERMS**

**A.** <u>Settlement Class</u>

For purposes of settlement only, the parties have agreed to certification of the following class (hereafter "Settlement Class"):

> All persons who participated in the Plan at any time during the Class Period and had Plan expenses charged to their accounts, excluding members of the Committee, including (a) any Beneficiary of a deceased Person who (i) participated in the Plan at any time during the Class Period and had Plan expenses charged to his or her account or (ii) participated in the Plan before the Class Period and whose beneficiary had an Account in the Plan during the Class Period and had Plan expenses charged to his or her account, and (b) any Alternate Payee of (i) a Person subject to a QDRO who participated in the Plan at any time during the Class Period and had Plan expenses charged to his or her account or (ii) a Person subject to a QDRO who participated in the Plan before the Class Period whose Alternate Payee had an Account in the Plan during the Class Period and had Plan expenses charged to his or her account.

*See* Exh. 1 (Settlement § 1.48).

The "Class Period" is January 1, 2018 through December 31, 2021. *See* Exh. 1 (Settlement § 1.12). The Class Period ends on December 31, 2021 because the Plan document was amended in 2021 to provide for immediate vesting of employer contributions, thereby eliminating the accrual of forfeitures in subsequent years. *See*

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Hayes Decl. ¶ 15.  There are approximately 32,584 members of the Settlement Class.  *See* Hayes Decl. ¶ 31.

### B.  <u>Amount of Settlement</u>

Defendants have agreed to pay a <u>non-reversionary</u> gross settlement amount of $1,995,000 (hereafter "Gross Settlement" or "Gross Settlement Amount").  *See* Exh. 1 (Settlement §§ 1.26, 2.1.).  Subject to Court approval, the following will be deducted from the Gross Settlement:

#### 1.  **Class Counsel's Attorneys' Fees and Costs**

The Settlement allows Plaintiff's counsel to apply to the Court for attorneys' fees and reimbursement of litigation costs.  The amount of attorneys' fees and costs "shall be determined by the Court, but in no event shall" the total combined amount of fees and costs "awarded exceed 33 1/3% of the Gross Settlement Amount."  *See* Exh. A (Settlement § 1.3).  Plaintiff will separately file an application for attorneys' fees and costs "at least forty-five (45) calendar days before the deadline set in the Preliminary Approval Order for objections to the proposed Settlement."  *See* Exh. 1 (Settlement § 7.2).

#### 2.  **Named Plaintiff Service Award**

The Settlement allows Plaintiff to apply to the Court for a "Case Contribution Award" to compensate her for her "assistance in the prosecution of this Class Action."  *See* Exh. 1 (Settlement § 1.8).  "The amount of the Case Contribution Award shall be determined by the Court but in no event shall the amount awarded exceed $5,000."  *Id.*  Plaintiff will include an application for the Case Contribution Award in the application for attorneys' fees and costs.  *See* Exh. 1 (Settlement § 7.1).

#### 3.  **Settlement Administrator Fees and Costs**

The Settlement provides that an amount "not to exceed $90,000" shall be deducted from the Gross Settlement to compensate the "Settlement Administrator" for "all of its duties and responsibilities in administering the Settlement."  *See* Exh. 1 (Settlement § 1.45).  Settlement administration will entail, among other things,

7

"providing notice of the Settlement" to the approximately 32,584 class members, "conducting skip-tracing and other reasonable means of updating" addresses, "disseminating CAFA Notice, setting up and administering the Qualified Settlement Fund, distributing payments from the Qualified Settlement Fund, and handling tax filings and payments with respect to earnings from the Qualified Settlement Fund." *See* Exh. 1 (Settlement § 1.45).

The parties have agreed to utilize Analytics Consulting, LLC as the Settlement Administrator. *See* Exh. 1 (Settlement § 1.44). Plaintiff's counsel solicited settlement administration bids from three vendors, including CPT Group, Inc., A.B. Data Ltd., and Analytics Consulting, and ultimately selected Analytics Consulting because it had the most experience handling ERISA class action settlements and all three quotes were comparable in amount. *See* Hayes Decl. ¶ 27. Plaintiff's counsel has no prior engagements with Analytics Consulting. *See* Hayes Decl. ¶ 27.

Analytics Consulting will be bound by the Stipulation and Discovery Confidential Order entered in this action (Dkt. 63), and has also independently developed an information security plan for handling class member data in accordance with the National Institute of Standards and Technology Cybersecurity Framework, which is summarized in the Information Security disclosure attached as Exhibit 2 to the Declaration of Matthew B. Hayes. *See* Exh. 1 (Settlement § 3.3.1); Exh. 2 (Analytic Consulting Information Security Summary). Analytics Consulting's total cost estimate for administering the Settlement is $85,810. *See* Hayes Decl. ¶ 29.

### 4. Plan Recordkeeper Expense Payment

The Settlement provides that an amount "which shall not exceed $15,000" shall be deducted from the Gross Settlement to pay the "fees and expenses" charged by the Plan's third party recordkeeper "in connection with gathering and providing to the Settlement Administrator" the identity and contact information for all class members and the data necessary to calculate individual settlement payments under the Plan of Allocation. *See* Exh. 1 (Settlement §§ 1.37-1.38).

### 5. Independent Fiduciary Expense Payment

The Settlement provides that, following preliminary approval and before the final fairness hearing, Defendants shall appoint a qualified and independent fiduciary on behalf of the Plan to review and evaluate the Settlement and prepare a written determination on whether to approve and authorize the Plan's release of claims under the Settlement. *See* Exh. 1 (Settlement §§ 3.1-3.1.5). Because the Settlement provides for the Plan to release claims against a "party in interest" (Defendants), the independent fiduciary review will be conducted to comply with the Department of Labor's class action settlement exemption from ERISA § 406's prohibition on certain "transactions" between a "plan and party in interest," as set forth in Prohibited Transaction Class Exemption 2003-39, issued December 31, 2003, 68 Fed. Reg. 75632-01, 2003 WL 23091419, at *75639-75640 (requiring independent "fiduciary that authorizes the settlement"). *See* Exh. 1 (Settlement § 3.1.1). The independent fiduciary shall be paid from the Gross Settlement for its services in "reviewing and opining upon the Settlement," in an amount that "shall not exceed $25,000." *See* Exh. 1 (Settlement §§ 1.27-1.28).

### C. <u>Calculation of Individual Settlement Payments</u>

After the above deductions from the Gross Settlement (which, in aggregate, shall not exceed $800,000), the balance (hereafter "Net Settlement Amount") will be distributed to the Settlement Class pursuant to the Plan of Allocation, which is attached as Exhibit B to the Settlement. *See* Exh. 1 (Settlement §§ 1.29, 6.3, Exh. B).

Under the Plan of Allocation, the Net Settlement Amount will be apportioned pro rata among members of the Settlement Class ("Settlement Class Member" or "Class Member") based on the amount of recordkeeping expenses deducted from their individual accounts during the Class Period. Each Class Member's proportionate share will be calculated by dividing the total recordkeeping expenses paid by the individual Class Member by the total recordkeeping expenses paid by the entire Settlement Class. *See* Exh. 1 (Exh B to Settlement – Plan of Allocation § II. C.). All

9

Class Members will be entitled to at least $10 (the "De Minimis Amount"), such that the Settlement Administrator shall progressively increase Class Members' awards falling below $10 and progressively decrease awards over $10 until the lowest Class Member award is $10. *See* Exh. 1 (Exh. B to Settlement – Plan of Allocation § II.D.)

For Class Members with an active account in the Plan, their share of the Settlement will be deposited into their Plan account and invested pursuant to the Class Member's elections on file for new contributions. *See* Exh. 1 (Exh. B to Settlement – Plan of Allocation § II.E.). For Class Members who no longer maintain an account in the Plan, their share of the Settlement will be paid by check and mailed to them. *See* Exh. 1 (Exh. B to Settlement – Plan of Allocation § II.F.). The checks will remain valid for 180 days from the date of issuance and, thereafter, any funds remaining in the Qualified Settlement Fund will be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan. *See* Exh. 1 (Exh. B to Settlement – Plan of Allocation § II.I.)

### D. <u>The Scope of Release</u>

The scope of the release under the Settlement for the Plan and Class Members is confined to "any and all past, present, and future actual or potential claims" "that were asserted in the [lawsuit] or that could have been asserted based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the Complaint." *See* Exh. 1 (Settlement § 1.39). The release also releases claims against Defendants and the Released Parties related to administration of the Settlement Agreement and approval by the Independent Fiduciary. *See* Exh. 1 (Settlement §§ 1.39, 1.40). However, the Settlement Agreement does not preclude claims brought against the Independent Fiduciary alone for the work it performs under the Settlement Agreement. *See* Exh. 1 (Settlement § 1.39.3).

/ / /

/ / /

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**E.** <u>The Notice and Objection Procedures</u>

All members of the Settlement Class will be sent, via First Class Mail, a written notice of the Settlement in the form attached as Exhibit A to the Settlement. *See* Exh. 1 (Settlement §§ 1.50, 3.4, Exh. A). The notice shall be sent to all Class members by the date set by the Court in the Order granting preliminary approval. *See* Exh. 1 (Settlment § 3.4, Exh. C – Preliminary Approval Order ¶ 8). Because the Settlement Class is being certified pursuant to Federal Rule of Civil Procedure 23(b)(1), Class Members will not have the right to opt-out of the Settlement, but they will be given an opportunity to object to the Settlement. *See Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 362 (2011) ("[Federal Rule of Civil Procedure 23] provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

Class Members will have until 14 days before the date set by the Court for the Final Fairness Hearing to file an objection to the Settlement. *See* Exh. 1 (Settlement § 3.4, Exh. C – proposed Preliminary Approval Order ¶¶ 8, 11). Individuals who wish to object to the Settlement may file an objection with the Court, either by mail or in person, with a copy sent to counsel for the parties. *See* Exh. 1 (Exh. C to Settlement ¶ 11).

**IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL.**

Under Rule 23(e), preliminary approval is the first of a two-stage process whereby the Court considers whether a proposed class action settlement should be approved as fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2) ("If the [settlement] proposal would bind class members, the court may approve it only after a hearing and finding that it is fair, reasonable, and adequate."); *Noll v. eBay, Inc.,* 309 F.R.D. 593, 602 (N.D. Cal. Sept. 15, 2015) ("Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.") (internal quotation omitted).

11

"At the preliminary stage, the court must first assess whether a class exists." *Brinker v. Normandin's*, 2017 WL 5495980, at *1 (N.D. Cal. Nov. 16, 2017). "Second, the court must determine whether the proposed settlement 'is fundamentally fair, adequate, and reasonable.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

## A. The Proposed Class Should Be Certified for Settlement Purposes.

"To be certified," a class "must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *Leyva v. Medline Industs. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). "In addition, "the proposed class must satisfy the requirements of Rule 23(b), which defines three different types of classes." *Id.* As relevant here, Rule 23(b)(1) permits certification if "prosecuting separate actions by or against individual class members would create a risk of" either: "(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. Proc. 23(b)(1).

Though Intuit consents to the filing of Plaintiff's Motion for Preliminary Approval, in doing so, it does not concede that Plaintiff's proposed class should have been certified had the issue been litigated. Nonetheless, Intuit does not contest that the proposed Settlement Class satisfies all of the Federal Rule of Civil Procedure 23 requirements for class certification for settlement purposes.

*First,* the Settlement Class satisfies the numerosity requirement. "[A] proposed class must be 'so numerous that joinder of all members is impracticable.'" *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010) (quoting Fed. R. Civ. P.

12

23(a)(1)). While "[t]he numerosity requirement is not tied to any fixed numerical threshold[,] . . . [i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Id.* at 651. Here, the proposed class contains over 30,000 individuals. *See* Hayes Decl. ¶ 31. Thus, numerosity is satisfied.

*Second,* the Settlement Class satisfies the commonality requirement. "The Supreme Court has recently emphasized that commonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Mazza v. Amer. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). "A common contention need not be one that 'will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv.,* 800 F.3d 1047, 1052-52 (9th Cir. 2015). "It only 'must be of such a nature that it is capable of classwide *resolution*." *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2551) (emphasis added by Ninth Circuit).

Here, Plaintiff's claims are based on a common contention that a decision made by Defendants in the "centralized administration of" the Plan's assets violated ERISA, "which is common to all putative class members." *See Munro v. Univ. of S. Cal.*, 2019 WL 7842551, at *4 (C.D. Cal. Dec. 30, 2019) (finding "commonality" satisfied in ERISA action challenging "administration" of plan). Specifically, each claim asserts that between 2018 and 2021 Defendants violated one of ERISA's statutory commands by making a Plan-wide decision to reallocate forfeited employer contributions toward offsetting Intuit's matching contributions instead of toward defraying the Plan expenses charged to participants. *See* Exh. 1 (Compl. ¶¶ 33, 39, 47, 52, 57). The common legal issue of whether this Plan-wide decision violated ERISA drives resolution of Plaintiff's claims. "[R]esolution of" these legal "questions in Defendants' favor will terminate this litigation in their favor, while resolution against Defendants will likely establish their liability." *Hurtado v. Rainbow Disposal Co.*, 2019 WL 1771797, at *7 (C.D. Cal. Apr. 22, 2019).

Accordingly, commonality is satisfied. *See, e.g., Baird v. BlackRock Institutional Tr. Co., N.A.,* 2020 WL 7389772, at *1 (N.D. Cal. Feb. 11, 2020) (holding that "whether the [named] Defendants are ERISA fiduciaries" and "whether the fiduciaries violated ERISA" in managing a plan "are common questions of fact and law that courts have routinely found to satisfy the commonality requirement"); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) (finding commonality satisfied in ERISA class action where "the common focus" of all claims is "how Defendants' conduct affected the pool of assets that make up the [Plan's] Master Trust").

*Third,* typicality is satisfied because Plaintiff, like the other members of the Settlement Class, maintained a Plan account that was charged with administrative expenses that could have been paid with forfeitures. *See* Hayes Decl. ¶ 33. As such, Plaintiff's alleged injury is like the injury allegedly suffered by other members of the Settlement Class. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (quotation marks and citation omitted).

*Fourth,* the adequacy requirement is satisfied. Adequacy involves "two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon*, 688 F.3d at 1031. Here, there are no known conflicts between Plaintiff or her counsel and the Settlement Class. *See* Hayes Decl. ¶ 34. Furthermore, class counsel is experienced in class actions and ERISA litigation, has successfully represented certified employee classes in numerous cases, and has vigorously represented the interest of the Settlement Class. *See* Hayes Decl. ¶¶ 2-9, 18-25.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Finally,* the requirements for certification of a Rule 23(b)(1) class are satisfied because separate actions by individual Plan participants would risk establishing "incompatible standards of conduct" for Defendants or would "as a practical matter be dispositive of the interests" of other participants "or substantially impair or impede their ability to protect their interests." Indeed, courts in this Circuit have held that "ERISA fiduciary litigation presents the paradigmatic example of a (b)(1) class." *Tibble v. Edison Int'l,* 2009 WL 6764541, at *7 (C.D. cal. June 30, 2009); *Kanawi,* 254 F.R.D. at 106 (same); *see also Baird v. BlackRock Institutional Tr. Co., N.A.,* 2020 WL 7389772, at *14 (N.D. Cal. Feb. 11, 2020) ("[C]ertification under Rule 23(b)(1) is particular appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries.").

The present action involves thousands of participants "all of whom are owed the same duties of loyalty and care from Plan fiduciaries." *Tibble*, 2009 WL 6764541, at *7. "If each Plan participant were to bring a claim against Defendants" challenging the same Plan-wide decision to allocate forfeitures toward reducing employer contributions instead of toward defraying Plan expenses, "inconsistent or varying adjudications" of those individual lawsuits "would establish incompatible standards of conduct" for Defendants. *Id. Id.* Because "separate lawsuits have the potential for conflicting decisions that would make uniform administration of [the Plan] impossible," certification under Rule 23(b)(1) is warranted. *Hurtado v. Rainbow Disposal Co.*, 2019 WL 1771797, at *10 (C.D. Cal. Apr. 22, 2019).

Also, because the claims in this action are brought "on behalf of the Plan" and seek monetary and equitable relief to the Plan "as a whole," the outcome of this litigation "as a practical matter, would be dispositive of the interests of other members" of the Plan and "would substantially impair or impede their ability to protect their interests." *See In re Northrup Grumman Corp. ERISA Litig.,* 2011 WL 3505264, at *18 (C.D. Cal. Mar. 29, 2011); *see also Coppel v. SeaWorld Parks & Ent., Inc.,* 347 F.R.D. 338, 368 (S.D. Cal. 2024) (reasoning that "because Defendants

15

cannot manage the Plan in an individualized fashion for each participant, whatever injunctive relief an individual plaintiff obtains would be applied to the Plan as a whole" and, as such, "necessarily will either dispose of or substantially affect the claims of the other Participants"); *Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.,* 2019 WL 7172597, at *11 (C.D. Cal. Oct. 7, 2019) ("[B]ecause '[t]he relief which Plaintiffs seek from Defendants would inure to the Plan as a whole[,],' it's impossible for individual class members to separately adjudicate their claims without substantially impairing the interests of the class.")

Thus, for all of the above reasons, the Settlement Class should be certified for settlement purposes.

**B.**   **The Settlement Terms are Fair, Adequate, and Reasonable.**

"The Court's task at the preliminary approval stage is to determine whether the settlement falls within the range of possible approval." *Deatrick v. Securitas Sec. Servs. USA,* 2016 WL 1394275, at *4 (N.D. Cal. Apr. 7, 2016) (internal quotation marks omitted).   "The Court may grant preliminary approval of a settlement and direct notice to the class if the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *Carvalho v. HP, Inc.*, 2025 WL 588674, at *4 (Feb. 24, 2025) (internal quotation marks omitted) (Pitts, J.). "Closer scrutiny is reserved for the final approval hearing." *Id.*

**1. The Settlement Resulted from Informed Arms-Length Negotiations.**

Prior to reaching a settlement, Plaintiff's counsel obtained through formal discovery over 7,000 pages of documents, data, and sworn discovery responses, including, among other things, the production of (1) all documents governing the Plan and any amendments thereto, (2) the methods for determining the dollar amounts deducted from participants' account to pay for the Plan's administrative

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

expenses, (3) policies and procedures governing the use or allocations of forfeitures, (4) policies and procedures governing the allocation of the Plan's administrative expenses, (5) meeting minutes documenting any discussions regarding the use or allocation of forfeitures, (6) written and electronic communications concerning any decisions regarding how to use or allocate forfeitures, (7) documents relating to Intuit's decisions to use the forfeitures to offset employer contributions to the Plan, (8) the amount of forfeitures used to offset employer contributions, and (9) the amount of administrative expenses charged to participants' individual accounts. *See* Hayes Decl. ¶¶ 19-21. Based on the extensive discovery received, Plaintiff was able to calculate the alleged injuries to the Settlement Class resulting from the reallocation of forfeitures towards offsetting employer contributions instead of toward defraying Plan expenses. *See* Hayes Decl. ¶ 22.

The protracted settlement negotiations commenced only after a contested motion to dismiss and the completion of extensive discovery, involved a retired federal magistrate judge serving as a neutral mediator, and lasted over three months. *See* Hayes Decl. ¶¶ 23-25. In short, the Settlement is the "product of an arms-length, non-collusive, negotiated resolution." *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

## 2. The Settlement has No Obvious Deficiencies.

Both the amount to be paid to, and the release to be provided by, members of the Settlement Class are reasonable and conform with applicable law.

As detailed more fully below in the discussion of the range of possible approval factor, the recovery of $1,995,000 – constituting approximately 63% of the Plan expenses charged to Class Members that Plaintiff alleges could have been paid with forfeitures and  13% of the total damages Plaintiff alleged based on Intuit's use of forfeitures to pay employer contributions between 2018 and 2021 – is well within the range of what has been considered fair and adequate in class settlements. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cr. 2000) (finding recovery of

"roughly one sixth of potential recovery" to be "fair and adequate"); *Martinez v. Helzberg's Diamond Shops*, 2021 WL 4730914, at *8 (C.D. Cal. Apr. 12, 2021) (approving settlement that recovered 11% of maximum recovery); *Haralson v. U.S. Aviation Servs. Corp.*, 2020 WL 12309507, at *5 (N.D. Cal. Sept. 3, 2020) (approving settlement that recovered 10% of maximum recovery); *Smith v. Am. Greetings Corp.*, 2015 WL 4498571, at *8 (N.D. Cal. July 23, 2015) (approving settlement that recovered 20% of maximum recovery); *Glass v. UBS Fin. Servs.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving settlement that recovered 25% of maximum recovery); *Brown v. CVS Pharmacy, Inc.*, 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (approving settlement that recovered 27% of maximum recovery).

The scope of the release is likewise in accordance with applicable law, as it is confined to claims "that were asserted in the [lawsuit] or that could have been asserted based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the Complaint." *See Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010) ("[W]e have held that federal district courts properly release claims not alleged in the underlying complaint where those claims dependent on the same set of facts as the claims that give rise to the settlement.); 4 <u>Newberg on Class Actions</u> (4th Ed. 2002) § 12:15, pp. 310-311 ("A clause providing for the release of claims may refer to all claims raised in the pending action, or it may refer to all claims, both potential and actual, that may have been raised in the pending action with respect to the matter in controversy.").

### 3. The Settlement Does Not Provide Improper Preferential Treatment.

The Settlement does not provide improper preferential treatment to any particular Class Members or the class representative. As detailed above, in calculating individual payouts, the Settlement prescribes a formula to distributed the funds, pro rata, based on the amount of Plan recordkeeping expenses deducted from each Class Member's account during the Class Period. *See* Exh. 1 (Exh. B to

Settlement).  Given that the alleged injury to the Settlement Class is the deduction of Plan expenses from participant accounts, allocating the funds pro rata based on the amount of expenses deducted from each account is a reasonable and impartial basis for allocating the funds.  *See, e.g., In re LinkedIn ERISA Litig.*, 2023 WL 8631678, at *8 (N.D. Cal. Dec. 13, 2023) (finding ERISA class settlement "Plan of Allocation" that allocates funds "*pro rata*" among class members "based on" their "account balance" to "be fair and reasonable and to treat class member equitably").

Also, the fact that the Settlement authorizes application for a service award to the named plaintiff does not constitute improper preferential treatment.  "[T]he Ninth Circuit has recognized that service awards to named Plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable."  *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) and *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 958-69 (9th Cir. 2009)).  The maximum amount that may be requested here – $5,000 – "is considered 'presumptively reasonable' in this district."  *Navarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1049 (N.D. Cal. 2020) (Koh, J.); *see also, e.g.,  In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. Sept. 15, 2015) (Davila, J.) ("[I]n this district, a $5,000 incentive award is presumptively reasonable."); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at * 10 (N.D. Cal. July 11, 2014) (Orrick, J.).

### 4. The Settlement Amount Falls Within the Range of Possible Approval.

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1335 (N.D. Cal. 2014).  Here, the amount of the Settlement is fair and adequate when viewed in light of the risks associated with continued litigation.

Here, from 2018 until Intuit switched to immediate vesting of employer contributions in 2021, Plaintiff alleges that participants had, in aggregate, $3,146,771 in administrative expenses deducted from their accounts that could have been covered by forfeitures in the Plan, but that Defendants instead used forfeitures to offset $15,236,000 in matching contributions to the Plan. *See* Exh. 1 (Compl. ¶¶ 21-24). The Settlement of $1,995,000 is a significant recovery in light of the considerable risks posed by litigation. *See* Hayes Decl. ¶¶ 36-43.

Most importantly, Plaintiff's entire theory of recovery in this lawsuit is based on "a novel interpretation of ERISA on which there is no binding authority." *McManus v. Clorox Co.*, 2025 WL 732087, * 1 (N.D. Cal. Mar. 3, 2025). Thus far, the majority of district courts to address the theory of recovery in this action have rejected it as a matter of law and, therefore, granted motions to dismiss the claims asserted here. *See, e.g., Hutchins v. HP, Inc.,* 737 F. Supp. 3d 851 (N.D. Cal. 2024) (granting motion to dismiss ERISA claims for breach of fiduciary duty, unlawful inurement, prohibited transactions, and self-dealing based on employer's decision to reallocate forfeitures to reduce employer contributions instead of to defray Plan expenses); *Barragan v. Honeywell Int'l Inc.,* 2024 WL 5165330 (D.N.J. Dec. 19, 2024) (same); *McManus v. Clorox Co.*, 2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) (same); *Dimou v. Thermo Fisher Scientific, Inc.,* 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) (same); *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002 (C.D. Cal. May 2, 2025) (same); *Sievert v. Knight-Swift Transportation Holdings, Inc.*, 2025 WL 1248922 (D. Ariz. April 29, 2025); *but see McManus v. Clorox Co.*, 2025 WL 732087, * 1 (N.D. Cal. Mar. 3, 2025) (after granting motion to dismiss original complaint denying motion to dismiss claims in amended complaint for breach of fiduciary duty based on forfeiture allocation decisions); *Perez-Cruet v. Qualcomm Inc.,* 2024 WL 2702207 (S.D. Cal. May 24, 2024) (finding allegations challenging employer's decision to use forfeitures to reduce employer contributions instead of to defray Plan expenses to state "plausible" ERISA violations). An appeal to the Ninth Circuit concerning the

20

viability of Plaintiff's theory of recovery is currently pending in *Hutchins v. HP, Inc.,* No. 25-826 (9th Cir. Feb. 7, 2025).

In addition to the uncertainty concerning the legal viability of Plaintiff's theory of recovery, there are facts unique to the present case that pose additional risks.  In this regard, the Plan document at issue here contains language providing that administrative "fees and expenses" of the Plan "shall be charged against Participants' Accounts," and, before the Plan document was amended in January 2020, the forfeiture provision did not provide the option of reallocating forfeitures toward paying Plan expenses.  *See* Hayes Decl. ¶¶ 40-41.  If the Court were to find that, prior to 2020, the Plan document did not allow using forfeitures to pay Plan expenses, the maximum potential recovery for Class Members based on Plaintiff's administrative expenses damages theory would be reduced by nearly one-half.  *See* Hayes Decl. ¶ 41.

Because this is the first and only case to reach settlement on this novel theory of recovery, there are no similar past settlements that may serve as comparators.  *See* Hayes Decl. ¶ 42.  Nevertheless, given the obvious risks that could either eliminate or substantially reduce any potential recovery for the Settlement Class, Plaintiff respectfully submits that the recovery of $1,995,000 is an eminently fair and adequate settlement.  *See* Hayes Decl. ¶ 42.

> **5.**  **The Attorney Fee Provision has None of the Indicia of Collusion.**

In evaluating the adequacy of the relief provided under a proposed class settlement, the Ninth Circuit has directed district courts to be on the lookout "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  These "more subtle signs" include:  (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) the existence of a

"clear sailing" arrangement with respect to class counsel's request for attorneys' fees; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than added to the class fund." *Id.* None of these indicia are present here.

*First,* the Settlement does not provide for a disproportionate distribution to class counsel. The Settlement provides that "the amount of Attorneys' Fees and Costs for Class Counsel shall be determined by the Court" and that "in no event shall" the combined "amount awarded" for fees and costs "exceed 33 1/3% of the Gross Settlement Amount." *See* Exh. 1 (Settlement § 1.3). While the maximum combined amount of fees and costs that may be awarded is slightly over the Ninth Circuit's "'benchmark' for a reasonable fee award" (exclusive of costs), *In re Bluetooth,* 654 F.3d at 942, it is still within "the typical range of acceptable attorneys' fees in the Ninth Circuit." *Edwards v. Nat'l Milk Producers Federation*, 2017 WL 3616638, at *8 (N.D. Cal. June 26, 2017) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value."); *Alvarez v. Farmers Ins. Exchange*, 2017 WL 2214585, at *2 (N.D. Cal. Jan. 18, 2017) (same). Moreover, "a 33.3% [fee] recovery is on par with settlements in other complex ERISA class actions." *In re LinkedIn ERISA Litig.,* 2023 WL 8631678, at *10 (N.D. Cal. Dec. 13, 2023) (approving fee award of "one third of the fund" in ERISA class settlement); *see also Foster v. Adams & Assoc., Inc.*, 2022 WL 425559, at *10 (N.D. Cal. Feb. 11, 2022) (same); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, * 1 (C.D. Cal. Sept. 18, 2020) (same); *Schwartz v. Cook*, 2017 WL 2834115, at *5 (N.D. Cal. June 30, 2017) (same).

*Second*, there is no "clear sailing" provision with respect to class counsel's request for attorneys' fees or costs. Rather, the Settlement expressly provided that the "amount" of fees and costs "shall be determined by the Court" and does not prohibit Defendants or the class from contesting the ultimate fees requested. *See* Exh. 1 (Settlement § 1.3).

Finally, because this is a non-reversionary Settlement, any reduction in the amount of the attorneys' fees, costs, or service award would *not* revert to Defendants, but would simply increase the net settlement fund available for distribution to the Settlement Class.  *See* Exh. 1 (Settlement §§ 1.29, 6.2.5).

> **6.  There are No Additional Agreements to be Identified Under Rule 23(e)(3).**

Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Here, the Settlement before the Court reflects *all* of the agreements between the parties concerning the resolution of this lawsuit.  *See* Hayes Decl. ¶ 26.

## V.  THE NOTICE PLAN COMPLIES WITH APPLICABLE LAW.

As the Supreme Court has pointed out, when, as here, a class is to be certified under Rule 23(b)(1), "[t]he Rule provides no opportunity for (b)(1) . . . class members to opt out, and does not even oblige the District Court to afford them notice of the action."  *Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 362 (2011).  Nevertheless, the Settlement provides a proposed procedure for notifying all members of the Settlement Class of this action, the details of the proposed Settlement, and their right to file an objection. See *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (holding that, when notice of a settlement is required, the notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard") (internal quotation marks omitted).

The Settlement provides that Defendants shall coordinate with the Plan's recordkeeper to gather and provide to the Settlement Administrator the last known contact information for members of the Settlement Class and the data necessary to perform the calculations required under the Plan of Allocation.  *See* Exh. 1 (Settlement § 9.2.1).  By the date set by the Court in the preliminary order, the Settlement Administrator will send all Clas Members a Settlement Notice via First

Class U.S. Mail. *See* Exh. 1 (Settlement §§ 1.50, 3.4). The proposed Settlement Notice is attached as Exhibit A to the Settlement. *See* Exh. 1 (Exh. A to Settlement). For any Settlement Notices returned as undeliverable, the Settlement Administrator shall utilize "commercially reasonable efforts" to locate the class member, such as through "skip tracing and other reasonable means of updating Class Member contact information." *See* Exh. 1 (Settlement §§ 1.50, 3.4).

The proposed Settlement Notice describes the key terms and procedures of the Settlement in sufficient detail to alert those who may have concerns with the Settlement to come forward. In this regard, the Settlement Notice (1) describes the nature of the lawsuit and claims at issue (2) describes who is in the class, (3) discloses the amount of the Settlement and details how individual class member settlement payments will be calculated, (4) discloses all deductions that will be requested from the Settlement, (5) explains how a class member can object to the Settlement, (6) discloses the time and place of the final approval hearing, (7) provides a website address at which Class Members can access the Settlement documents and receive updates on the final approval hearing, (8) provides instructions for accessing the case docket through PACER, and (9) displays contact information for class counsel and advises that they may be contacted to answer questions about the Settlement. *See* Exh. 1 (Exh. A to Settlement).

In short, the procedure for providing notice and the content of the notice constitutes the best practicable notice and complies with Rule 23 and due process.

## VI. CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, enter the proposed preliminary approval order submitted herewith, and schedule a final approval hearing for a date at least 120 days from the date of preliminary approval.

DATED: May 16, 2025     **HAYES PAWLENKO LLP**

*/s/Matthew B. Hayes*

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**