**HAYES PAWLENKO LLP**
Matthew B. Hayes (SBN 220639)
Kye D. Pawlenko (SBN 221475)
mhayes@helpcounsel.com
kpawlenko@helpcounsel.com
1414 Fair Oaks Avenue, Suite 2B
South Pasadena, CA 91030
Tel: (626) 808-4357
Fax: (626) 921-4932

Attorneys for Plaintiff
DEBORAH RODRIGUEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEBORAH RODRIGUEZ, individually and as a representative of a class of participants and beneficiaries on behalf of the Intuit Inc. 401(k) Plan,<br><br>Plaintiff,<br><br>v.<br><br>INTUIT INC.; THE EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE OF THE INTUIT INC. 401(K) PLAN; and DOES 1 to 10 inclusive,<br><br>Defendants. | Case No. 5:23-cv-05053-PCP<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD**<br><br>Date: November 13, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8 |

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE. .................. 1

    A. <u>The Requested Fees are Reasonable Under the Percentage-of-the-Fund Method.</u> ............ 2

    B. <u>The Requested Fees are Reasonable Under the Lodestar Method.</u> ............ 6

III. THE REQUESTED COST AWARD IS REASONABLE. .............................. 10

IV. THE REQUESTED SERVICE AWARD IS REASONABLE. ........................ 11

V. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Abrego v. City of Los Angeles,*
    2017 WL 3453293 (C.D. Cal. June 16, 2017) .......... 7

*Alvarez v. Farmers Ins. Exchange,*
    2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .......... 2, 3, 12

*Armstrong v. Brown,*
    805 F. Supp. 2d 918 (N.D. Cal. 2011) .......... 8

*Austin v. Foodline, Inc.,*
    2019 WL 2077851 (N.D. Cal. May 10, 2019) .......... 9

*Avila v. Cold Spring Granite Co.,*
    2018 WL 400315 (E.D. Cal. Jan. 11, 2018) .......... 10

*Barragan v. Honeywell Int'l Inc.,*
    2024 WL 5165330 (D.N.J. Dec. 19, 2024) .......... 4

*Cain v. Siemens Corp.,*
    2025 WL 2172684 (D.N.J. July 31, 2025) .......... 4

*Cohodes v. United States Dept. of Justice,*
    2025 WL 572888, at *4 (N.D. Cal. Jan 24, 2025) .......... 7

*Craft v. Cnty. of San Bernardino,*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) .......... 3

*Deaver v. Compass Bank,*
    2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .......... 5

*Dimou v. Thermo Fisher Scientific, Inc.,*
    2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) .......... 4

*Foster v. Adams & Assoc., Inc.,*
    2022 WL 425559 (N.D. Cal. Feb. 11, 2022) .......... 3, 6

*Grannan v. Alliant Law Group, P.C.,*
    2012 WL 216522 (N.D. Cal. Jan. 24, 2012) .......... 10

*Hopkins v. Stryker Sales Corp.,*
    2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .......... 2-3

*Hubbard v. RCM Technologies (USA), Inc.*,
    2021 WL 5016058 (N.D. Cal. Oct. 28, 2021) ............................................................. 8

*Hutchins v. HP, Inc.*,
    737 F. Supp. 3d 851 (N.D. Cal. 2024) ....................................................................... 4

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................................ 2, 6

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
    109 F.3d 602 (9th Cir. 1997) ..................................................................................... 2

*In re Hyundai and Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019) ..................................................................................... 9

*In re LinkedIn ERISA Litig.*,
    2023 WL 8631678 (N.D. Cal. Dec. 13, 2023) ................................................. Passim

*In re Omnivision Technologies, Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................... 3

*Lesevic v. Spectraforce Technologies Inc.*,
    2021 WL 1599310 (N.D. Cal. Apr. 23, 2021) ........................................................... 6

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
    2025 WL 1299002 (C.D. Cal. May 2, 2025) ............................................................. 4

*Marshall v. Northrop Grumman Corp.*,
    2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ....................................................... 3, 4

*McManus v. Clorox Co.*,
    2025 WL 732087 (N.D. Cal. Mar. 3, 2025) .............................................................. 4

*McWashington v. Nordstrom, Inc.*,
    2025 WL 1736765 (W.D. Wash. June 23, 2025) ...................................................... 4

*Moore v. PetSmart, Inc.*,
    2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) .......................................................... 12

*Navarez v. Forty Niners Football Co., LLC*,
    474 F. Supp. 3d 1041 (N.D. Cal. 2020) ................................................................... 11

*Nelson v. Avon Prods.*,
    2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ............................................................. 9

*Parker v. Vulcan Materials Co. Long Term Disability Plan*,

2012 WL 843623 (C.D. Cal. Feb. 16, 2012) ... 8

*Perkins v. Linkedin Corp.*,
    2016 WL 613255 (Feb. 16, 2016) ... 11

*Reyes v. Bakery and Confectionary Union and Industry Int'l Pension Fund*,
    281 F.Supp. 3d 833 (N.D. Cal. 2017) ... 7-8

*Roberts v. Marshalls of CA, LLC*,
    2018 WL 510286 (N.D. Cal. Jan. 23, 2018) ... 9

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ... 11

*Schiller v. David's Bridal, Inc.*,
    2012 WL 2117001 (E.D. Cal. June 11, 2012) ... 5

*Schwartz v. Cook*,
    2017 WL 2834115 (N.D. Cal. June 30, 2017) ... 3

*Sievert v. Knight-Swift Transportation Holdings, Inc.*,
    2025 WL 1248922 (D. Ariz. April 29, 2025) ... 4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ... 11

*Tom v. Com Dev USA, LLC*,
    2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) ... 7, 8

*United States v. Acad. Mortg. Corp.*,
    2024 WL 5424428 (N.D. Cal. May 31, 2024) ... 8

*Van Kempen v. Matheson Tri-Gas, Inc.*,
    2017 WL 3670787 (N.D. Cal. Aug. 25, 2017) ... 10

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ... 3, 9

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759, 769 (9th Cir. 1977) ... 10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ... 2, 3, 9

*Wallace v. Countrywide Home Loans, Inc.*,
    2015 WL 13284517 (C.D. Cal. Apr. 17, 2015) ... 5

*Wang v. Ehang Holdings Ltd.*,
    2022 WL 5264647 (N.D. Cal. Oct. 6, 2022) ............... 9

*Wright v. JPMorgan Chase & Co.*,
    2025 WL 1683642 (C.D. Cal. June 13, 2025) ............... 4

**Statutes/Rules**

29 U.S.C. § 1132 ............... 12

Federal Rule of Civ. Proc. 23 ............... 1

## I. INTRODUCTION

The present class action, brought on behalf of the Intuit 401(k) Plan ("Plan") and its participants, challenges how "forfeitures" in the Plan were reallocated. A "forfeiture" occurs when participants separate employment before fully vesting in the employer contributions made to the Plan on their behalf. The lawsuit alleges that Intuit, Inc. and The Employee Benefits and Administrative Committee of the Plan (together "Defendants") violated the Employee Retirement Income Security Act ("ERISA") by reallocating forfeitures to offset Intuit's future contributions to the Plan instead using these funds to defray Plan expenses charged to participant accounts.

On July 15, 2025, following over a year of contested litigation, the Court entered an Order granting preliminary approval of a $1,995,000 non-reversionary settlement. The settlement secures a significant recovery – approximately 63% of the expenses the lawsuit alleges should have been paid with forfeitures – in the face of substantial risk. The theory of recovery – that forfeitures should have been used to cover Plan expenses rather than offset employer contributions – is a novel legal issue that has yet to be addressed by any circuit-level courts. The district courts to address the issue to date have reached conflicting rulings, with a majority rejecting the theory of recovery at the pleadings stage.

Considering the novel legal issue and substantial risks of no recovery, the settlement is an excellent result that ensures certain and significant monetary benefits for the class. By this motion, Plaintiff Deborah Rodriguez ("Plaintiff") now seeks approval for an award of attorneys' fees and costs totaling $665,000 (1/3 of the gross settlement) and a service award to Plaintiff of $5,000. As detailed below, these requests are supported by the applicable law and evidence.

## II. THE REQUESTED ATTORNEYS' FES ARE REASONABLE.

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Here, the settlement agreement

1

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

authorizes Plaintiff's counsel to apply to the Court for attorneys' fees and reimbursement of litigation costs. *See* Dkt. 76-3 (Settlement § 7).  The agreement provides that the amount of attorneys' fees and costs "shall be determined by the Court, but in no event shall" the total combined amount of fees and costs "awarded exceed 33 1/3% of the Gross Settlement Amount." *See* Dkt. 76-3 (Settlement § 1.3).

Where, as here, "a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the fee award. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  In exercising that discretion, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,* 109 F.3d 602, 607 (9th Cir. 1997).

Class counsel submits that the requested fee award of $647,155.64, which amounts to just under one-third (1/3) the settlement value, is reasonable under either approach to calculating fees.

### A. The Requested Fees are Reasonable Under the Percentage-of-the-Fund Method.

"The typical range of acceptable attorneys' fees in the Ninth Circuit under [the percentage-of-the-fund] method is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Alvarez v. Farmers Ins. Exchange,* 2017 WL 2214585, at *2 (N.D. Cal. Jan. 18, 2017) (Orrick, J.).  "[T]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002).  "It is well established that the benchmark percentage should be adjusted (or replaced by a lodestar calculation) when circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Alvarez,* 2017 WL 2214585, at *2.  "Indeed, in most common fund cases, the award

2

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

exceeds th[e] benchmark." *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (Koh, J.); *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (Conti, J.) (same).

In ERISA class actions, such as this, courts in this Circuit often award fees amounting to one-third of the settlement value. *In re LinkedIn ERISA Litig.*, 2023 WL 8631678, at *10 (N.D. Cal. Dec. 13, 2023) (Davila, J.) (approving fee award of "one third of the fund" in ERISA class settlement); *see also Foster v. Adams & Assoc., Inc.*, 2022 WL 425559, at *10 (N.D. Cal. Feb. 11, 2022) (Corley, J.) (same); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, * 1 (C.D. Cal. Sept. 18, 2020) (same); *Schwartz v. Cook*, 2017 WL 2834115, at *5 (N.D. Cal. June 30, 2017) (same). Furthermore, "[f]ee award percentages generally are higher in cases," such as this, "where the common fund is below $10 million." *Alvarez,* 2017 WL 2214585, at *3; *see also Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in fees above 25%"); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (percentages greater than 30% tend to be awarded in cases with class funds of less than $10 million).

To determine whether a departure from the 25% benchmark is warranted, courts consider various factors, including (1) the results achieved, (2) the risk involved in the litigation, (3) the skill required and quality of work by counsel, (4) the contingent nature of the fee, and (5) awards made in similar cases. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-1050 (9th Cir. 2002). Each of these factors supports Plaintiff's requests for a fee award of just under one-third of the recovery.

*First*, the Settlement achieved a substantial benefit for the class. The Settlement recovers approximately 63% of the Plan expenses charged to participants that Plaintiff alleges should have been paid with forfeitures. *See* Exh. 1 (Hayes Decl. ¶ 22); Dkt. 1 (Compl. ¶¶ 21-24). All individuals who participated in the Plan and had Plan expenses charged to their accounts during the class period will automatically receive a payment without having to make a claim. Dkt. 76-3 (Settlement, Exh. B –

3

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

Plan of Allocation). This is "a particularly favorable result for an ERISA litigation." *In re LinkedIn ERISA Litig.*, 2023 WL 8631678, at *9 (N.D. Cal. Dex. 13, 2023) (Davila, J.) (finding "recovery of 68%" of class members' alleged damages to be "exceptional" and "strongly favors" an "upward departure from the benchmark"); *see also, e.g., Marshall v. Northrop Grumman Corp.,* 2020 WL 5668935, at *2-3 (C.D. Cal. Sept. 18, 2020) (finding recovery of "29% of Plaintiff's claimed damages" was as "exception result" that "justifies an attorney fee award of one-third of the settlement fund").

*Second,* the recovery of $1,995,000 for the class was secured despite significant risks. Plaintiff's theory of recovery – that forfeitures should have been used to cover Plan expenses rather than offset employer contributions – is based on "a novel interpretation of ERISA on which there is no binding authority." *McManus v. Clorox Co.*, 2025 WL 732087, * 1 (N.D. Cal. Mar. 3, 2025). Thus far, the majority of district courts to address the theory of recovery in this action have rejected it as a matter of law and granted motions to dismiss. *See, e.g., Hutchins v. HP, Inc.,* 737 F. Supp. 3d 851 (N.D. Cal. 2024) (granting motion to dismiss ERISA claims for breach of fiduciary duty, unlawful inurement, prohibited transactions, and self-dealing based on employer's decision to reallocate forfeitures to reduce employer contributions instead of to defray Plan expenses); *Dimou v. Thermo Fisher Scientific, Inc.,* 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) (same); *Wright v. JPMorgan Chase & Co.,* 2025 WL 1683642 (C.D. Cal. June 13, 2025) (same); *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002 (C.D. Cal. May 2, 2025) (same); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, *13-16 (W.D. Wash. June 23, 2025) (same); *Sievert v. Knight-Swift Transportation Holdings, Inc.*, 2025 WL 1248922 (D. Ariz. April 29, 2025) (same); *Barragan v. Honeywell Int'l Inc.,* 2024 WL 5165330 (D.N.J. Dec. 19, 2024) (same); *Cain v. Siemens Corp.*, 2025 WL 2172684 (D.N.J. July 31, 2025) (same). An appeal to the Ninth Circuit concerning the viability of Plaintiff's

4

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

theory of recovery is currently pending in *Hutchins v. HP, Inc.,* No. 25-826 (9th Cir. Feb. 7, 2025).

*Third,* given that this action presented novel legal issues that were vigorously contested by Defendants, class counsel respectfully submits that a significant level of skill and extensive work were required to defeat the motion to dismiss, obtain the necessary discovery, and ultimately negotiate a favorable settlement. As detailed in the lodestar analysis below, class counsel was required to expend over 800 hours of work litigating this action, and the unadorned lodestar exceeds the 25% benchmark. *See* Exh. 1 (Hayes Decl. ¶ 19); Exh. 3 (Summary Report & Hourly Time Records).

*Fourth,* class counsel has litigated this lawsuit on a purely contingency basis for the past two years. *See* Exh. 1 (Hayes Decl. ¶ 25). "No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success." *See Schiller v. David's Bridal, Inc.,* 2012 WL 2117001, *18 (E.D. Cal. June 11, 2012) (quoting *In re Sumitomo Cooper Litig.,* 74 F. Supp. 2d 393, 396-98 (S.D.N.Y. 1999)). Rather, "Courts have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might by paid nothing for their work." *Wallace v. Countrywide Home Loans, Inc.,* 2015 WL 13284517, *9 (C.D. Cal. Apr. 17, 2015); *see also, e.g., Deaver v. Compass Bank,* 2015 WL 8526982, *11 (N.D. Cal. Dec. 11, 2015) (Corley, J.) ("With respect to the contingent nature of litigation – the fourth factor – courts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees.").

*Finally,* a fee award of just under one-third of the recovery is in line with fee awards in similar actions. As this district has recognized, "a 33.3% [fee] recovery is on par with settlements in other complex ERISA class actions." *In re LinkedIn*

*ERISA Litig.*, 2023 WL 8631678, at *10 (N.D. Cal. Dec. 13, 2023) (Davila, J.) (approving fee award of "one third of the fund" in ERISA class settlement); *see also, e.g., Foster v. Adams & Assoc., Inc.*, 2022 WL 425559, at *10 (N.D. Cal. Feb. 11, 2022) (Corley, J.) (same).

### B. The Requested Fees are Reasonable Under the Lodestar Method.

The lodestar is calculated by multiplying the number of hours "reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). The court may then adjust the resulting figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942. "Where, as here, the lodestar is being used as a cross-check, courts may do a rough calculation with a less exhaustive cataloging and review of counsel's hours." *Lesevic v. Spectraforce Technologies Inc.*, 2021 WL 1599310, at *3 (N.D. Cal. Apr. 23, 2021) (Koh, J.) (internal quotation marks omitted).

As detailed in the accompanying billing records and attorney declaration, class counsel has, to date, expended a total of 818.80 hours litigating the class claims over the past two years, consisting of 527.60 hours by Mr. Hayes and 291.20 hours by Mr. Pawlenko. *See* Exh. 1 (Hayes Decl. ¶¶ 16-18); Exh. 3 (Summary Report & Hourly Time Records). This has entailed, among other things, preparation of pleadings, extensive research into novel legal issues, successfully opposing a motion to dismiss, conducting extensive written discovery, meeting and conferring about discovery disputes, analyzing over 7,000 pages of discovery documents, attending court hearings, preparing mediation briefing and damage models, participating in mediation sessions, protracted settlement negotiations, and moving for approval of

the settlement. *See* Exh. 1 (Hayes Decl. ¶¶ 16-18); Exh. 3 (Summary Report & Hourly Time Records). This figure does not include the additional time that will be spent responding to class member inquiries over the next month, moving for final approval, and attending the final approval hearing, which will likely entail at least an additional 25 hours of attorney time. *See* Exh. 1 (Hayes Decl. ¶ 17).

The hourly rates requested by Mr. Hayes and Mr. Pawlenko are $700 per hour and $650 per hour, respectively, which are supported by both their experience and comparable rates in this district. *See* Exh. 1 (Hayes Decl. ¶ 3-15). As detailed in the accompanying attorney declaration, Mr. Hayes and Mr. Pawlenko attended established law schools, completed post-graduate judicial clerkships, have a long history of litigating class actions, and, before starting their current firm, spent years practicing at international corporate law firms and government agencies. *See* Exh. 1 (Hayes Decl. ¶¶ 3-11). Mr. Hayes and Mr. Pawlenko have been practicing law for 24 years and 23 years, respectively. *See* Exh. 1 (Hayes Decl. ¶ 3).

The rates requested here are at the low end of the market rates for partner level litigation attorneys in San Jose according to the Real Rate Report, a "publication that identifies attorney rates by location" that has been relied upon by district courts in the Ninth Circuit to determine prevailing market rates. *Abrego v. City of Los Angeles,* 2017 WL 3453293, at *6 (C.D. Cal. June 16, 2017); *see also, e.g., Cohodes v. United States Dept. of Justice*, 2025 WL 572888, at *4, *12 (N.D. Cal. Jan 24, 2025) (Beeler, M.J.) (relying on Real Rate Report); *Tom v. Com Dev USA, LLC*, 2017 WL 10378629, *7-8 (C.D. Cal. Dec. 4, 2017) (relying on Real Rate Report to determine reasonable hourly rate for fees in ERISA class settlement). Based on the 2024 Real Rate Report, the rates charged by partners practicing litigation in San Jose range from $650 to $1,303 per hour with a mean hourly rate of $996 per hour. *See* Exh. 4 (2024 Real Rate Report). The requested rates are also in line with rates that have been approved for attorneys handling ERISA class actions. *See, e.g., Reyes v. Bakery and Confectionary Union and Industry Int'l Pension Fund*, 281 F.Supp. 3d

7

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

833, 853 (N.D. Cal. 2017) (Tigar, J.) (finding rate of $700 per hour in ERISA class action reasonable for attorney with 28 years of experience); *Com Dev USA, LLC*, 2017 WL 10378629 at *7-8 (finding "$750 per hour for partner" to be "commensurate with the market rate charged in complex ERISA cases").

In 2021, *four years ago*, this district specifically found "hourly rates" of $650 for Mr. Hayes and $600 for Mr. Pawlenko to be "commensurate with their experience and with the legal market in this district" at that time. *Hubbard v. RCM Technologies (USA), Inc.,* 2021 WL 5016058, at *5 (N.D. Cal. Oct. 28, 2021) (Gonzalez Rogers, J.); *see also* Exh. 1 (Hayes Decl. ¶ 13) (collecting cases approving past rates of $650 and $600). The currently requested rates represent an increase of just $50 per attorney (under 8%) to account for an additional four years of experience and inflation. This is likewise at the low end of upward adjustments found reasonable by courts. *See, e.g., United States v. Acad. Mortg. Corp.*, 2024 WL 5424428, at *7-8 (N.D. Cal. May 31, 2024) (Chen, J.) (finding rates from 2021 should be "increased by 20% to account for year over year inflation" for ensuing three years); *Parker v. Vulcan Materials Co. Long Term Disability Plan*, 2012 WL 843623, at *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates because "[i]t is common practice for attorney to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice"); *Armstrong v. Brown*, 805 F. Supp. 2d 918, 921 (N.D. Cal. 2011) (Wilken, J.) (finding it reasonable to increase rates year after year "in light of the incremental rise in hourly rates in the Bay Area and each timekeeper' professional experience"); *see also* Exh. 4 (Real Rate Report) (reflecting that mean rate for litigation partners in San Jose has increased by approximately 10% from 2022 to 2024).

///

///

///

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

Applying the requested hourly rates to the hours worked on this case, results in the following lodestar:

| Attorney | Hourly Rate | Hours | Amount |
|---|---|---|---|
| Matthew B. Hayes | $700 | 527.60 | $369,320 |
| Kye D. Pawlenko | $650 | 291.20 | $189,280 |
| **Total:** | | **818.80** | **$558,600** |

This lodestar, which is likely to be over $575,000 by the time of final approval, is nearly equivalent to the requested award of $647,155.64, requiring a multiplier of roughly 1.16 to make the figures equal. This is a modest multiplier in the class action context. *See In re Hyundai and Kia Fuel Economy Litig.,* 926 F.3d 539, 571-72 (9th Cir. 2019) (finding multipliers of 1.22 and 1.55 to be "modest" and "in line with others we have affirmed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (noting that "[m]ultipliers ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); *see also, e.g., Wang v. Ehang Holdings Ltd.*, 2022 WL 5264647, at *2 (N.D. Cal. Oct. 6, 2022) (Freeman, J.) (characterizing "multiplier of 1.2" as a "modest enhancement"); *Roberts v. Marshalls of CA, LLC,* 2018 WL 510286, at *16 (N.D. Cal. Jan. 23, 2018) (James, J.) (holding that "a multiplier of 1.65 . . . . falls at the low end of the range of multipliers"); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (noting that "multiplier" of "approximately 1.8" is "a relatively low multiplier").

Considering that this lawsuit resulted in a significant benefit for the class (recouping roughly 63% of the expenses in dispute) and was litigated on a purely contingency basis, class counsel submits that a modest risk multiplier of approximately 1.16 would be reasonable in this case. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d at 1051 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.") (internal quotation omitted); *see also Austin v. Foodline, Inc.*, 2019 WL 2077851, at *7 (N.D. Cal. May 10, 2019) (Gilliam, J.) (holding "1.38 multiplier is appropriate given the risk undertaken by class counsel

in litigating this case on contingency"); *Nelson v. Avon Prods.,* 2017 WL 733145, at *6 (N.D. Cal. Feb. 24, 2017) (Freeman, J.) (finding "modest multiplier" of "1.3" was "reasonable in light of the contingent nature of the fee award and the risk of litigation"); *Grannan v. Alliant Law Group, P.C.,* 2012 WL 216522, at *10 (N.D. Cal. Jan. 24, 2012) (Lloyd, J.) ("In class action cases, where counsel works on a contingency basis and risks receiving nothing for the time and effort expended, it is reasonable to apply a multiplier to the lodestar value.  Here, a multiplier of 1.47 is well within the range of permissible multiples.")

Accordingly, class counsel respectfully requests a fee award of $647,155.64.

## III.     THE REQUESTED COST AWARD IS REASONABLE.

Plaintiff's counsel seeks the reimburse of costs totaling $17,844.36, which were incurred in prosecuting this case over the past two years.  *See* Exh. 1 (Hayes Decl. ¶ 28); Exh. 5 (Cost Report).

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation." *Vincent v. Hughes Air W., Inc.,* 557 F.2d 759, 769 (9th Cir. 1977); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable . . . costs that are authorized by law or by the parties' agreement").  "Class counsel is . . . entitled to recover those out-of-pocket expenses that would normally be charged to a fee paying client."  *Van Kempen v. Matheson Tri-Gas, Inc.,* 2017 WL 3670787, *9 (N.D. Cal. Aug. 25, 2017) (internal quotation marks omitted).  "Such expenses regularly include postage, investigation costs, copying costs, hotel bills, meal, messenger services, court costs, electronic research, court reporter costs, delivery fees, and mediation expenses." *Avila v. Cold Spring Granite Co.,* 2018 WL 400315, *13 (E.D. Cal. Jan. 11, 2018).

As set forth in the cost summary submitted herewith, the specific costs for which class counsel is seeking reimbursement are limited to filing fees, service of process fees, travel expenses, copying costs, and mediation fees.  *See* Exh. 5 (Cost

Report). All of the claimed expenses were necessarily incurred and are of the type that are typically billed to a client. *See* Exh. 1 (Hayes Decl. ¶ 29).

## IV. THE REQUESTED SERVICE AWARD IS REASONABLE.

The Settlement allows Plaintiff to apply to the Court for a "Case Contribution Award" to compensate her for her "assistance in the prosecution of this Class Action." *See* Dkt. 76-3 (Settlement § 1.8). "The amount of the Case Contribution Award shall be determined by the Court but in no event shall the amount awarded exceed $5,000." *Id.* "[I]n this district, a $5,000 incentive award is presumptively reasonable." *In re Linkedin User Privacy Litig.,* 309 F.R.D. 573, 592 (N.D. Cal. Sept. 15, 2015) (Davila, J.); *see also Navarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1049 (N.D. Cal. 2020) (Koh, J.) (same).

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003) (internal citation omitted). In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 958 (9th Cir. 2009). Such awards "are intended to compensate class representatives for work done on behalf of the class" and "to make up for financial or reputational risk undertaken in bringing the action." *Id.* at 958-59. To determine the reasonableness of a requested service award, courts consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton,* 327 F.3d at 977.

Here, Plaintiff requests a service award of $5,000, which is the "benchmark award for representative plaintiffs." *Perkins v. Linkedin Corp.,* 2016 WL 613255, *17 (Feb. 16, 2016) (Koh, J.) ("The Ninth Circuit has established $5,000 as a reasonable benchmark for representative plaintiffs."). The requested service award is justified by the time and risks undertaken by Plaintiff and the benefit she secured for the class.

11

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

As detailed in Plaintiff's declaration, Plaintiff dedicated significant time to assisting with this lawsuit, including furnishing counsel with pertinent Plan documents and statements; reviewing pleadings and conferring with class counsel regarding potential claims; assisting with the preparation of initial disclosures; conferring with class counsel regarding Defendants' discovery responses and providing insights to class counsel on Plan documents and fee disclosures included therein; and reviewing settlement documents and conferring with class counsel regarding settlement terms. *See* Exh. 2 (Plaintiff Decl. ¶¶ 8-11). Plaintiff also assumed significant risks by pursuing a novel legal issue in challenging how Defendants reallocated Plan forfeitures. *See* Exh. 2 (Plaintiff Decl. ¶ 4). If unsuccessful, Plaintiff could have been liable for Defendants' legal expenses. *See* 29 U.S.C. § 1132(g)(1).

Thus, awarding Plaintiff the benchmark service award of $5,000 – which is less than 0.3% of the settlement fund – is reasonable and justified. *See, e.g., Alvarez v. Farmers Ins. Exch.,* 2017 WL 2214585, at *1-2 (N.D. Cal. Jan. 17, 2017) (Orrick, J.) (finding service awards of $10,000 each, which, in aggregate, "constitutes 1.8% of the total settlement value" to be reasonably proportional); *Moore v. PetSmart, Inc.,* 2015 WL 5439000, at *13-14 (N.D. Cal. Aug. 4, 2015) (Davila, J.) (finding service awards in aggregate amount of $35,000 to named plaintiffs to be reasonable because, among other things, the amount "is less than one percent of the total settlement").

## V. CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that her motion for attorneys' fees in the amount of $647,155.64, costs in the amount of $17,844.36, and a service award in the amount of $5,000 be granted.

DATED: September 15, 2025                    **HAYES PAWLENKO LLP**

                                                                 /s/Matthew B. Hayes
                                                                 Attorneys for Plaintiff

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD