**HAYES PAWLENKO LLP**
Matthew B. Hayes (SBN 220639)
Kye D. Pawlenko (SBN 221475)
mhayes@helpcounsel.com
kpawlenko@helpcounsel.com
1414 Fair Oaks Avenue, Suite 2B
South Pasadena, CA 91030
Tel: (626) 808-4357
Fax: (626) 921-4932

Attorneys for Plaintiff
DEBORAH RODRIGUEZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| DEBORAH RODRIGUEZ, individually and as a representative of a class of participants and beneficiaries on behalf of the Intuit Inc. 401(k) Plan, | Case No. 5:23-cv-05053-PCP |
| Plaintiff, | **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| INTUIT INC.; THE EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE OF THE INTUIT INC. 401(K) PLAN; and DOES 1 to 10 inclusive, | Date:  November 20, 2025 Time:  10:00 a.m. Courtroom:  8 |
| Defendants. | |

i

**TABLE OF CONTENTS**

I.      INTRODUCTION                                                    1

II.     FACTUAL AND PROCEDURAL BACKGROUND                2

        A.    The Parties                                              2

        B.    The Pleadings                                            2

        C.    Discovery and Investigation Completed Before
              Settlement                                               4

        D.    Settlement Negotiations                                  5

III.    SUMMARY OF SETTLEMENT TERMS                          5

        A.    Settlement Class                                         5

        B.    Amount of Settlement                                     6

              1.  Class Counsel's Attorneys' Fees and Costs            6

              2.  Named Plaintiff Service Award                        6

              3.  Settlement Administrator Fees and Costs              6

              4.  Plan Recordkeeper Expenses Payment                   7

              5.  Independent Fiduciary Expense Payment                7

        C.    Calculation of Individual Settlement Payments            8

        D.    The Scope of Release                                     9

IV.     NOTICE ADMINISTRATION AND REACTION OF
        THE CLASS                                                      9

V.      CERTIFICATION OF THE SETTLEMENT CLASS
        SHOULD BE CONFIRMED.                                           10

VI.     THE SETTLEMENT WARRANTS FINAL APPROVAL.        12

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

A.    <u>Strength of Plaintiff's Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>    13

B.    <u>Amount Offered in Settlement</u>    14

C.    <u>Extent of Discovery Completed and Stage of the Proceedings</u>    15

D.    <u>Experience and Views of Counsel and Independent Fiduciary</u>    16

E.    <u>The Presence of a Government Participant</u>    17

F.    <u>Class Member Reaction to the Settlement</u>    17

VII.    CONCLUSION    18

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1

# TABLE OF AUTHORITIES

2

**<u>Cases</u>**

3

*Barragan v. Honeywell Int'l Inc.,*
4   2024 WL 5165330 (D.N.J. Dec. 19, 2024)    13

5

*Brown v. CVS Pharmacy, Inc.,*
6   2017 WL 3494297 (C.D. Cal. Apr. 24, 2017)   15

7

*Cain v. Siemens Corp.,*
8   2025 WL 2172684 (D.N.J. July 31, 2025)    13

9

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566, 575-76 (9th Cir. 2004)     12

10

*Dimou v. Thermo Fisher Scientific, Inc.,*
11   2024 WL 4508450 (S.D. Cal. Sept. 19, 2024)  13

12

*Class Plaintiffs v. Seattle,*
13   955 F.2d 1268 (9th Cir. 1992)      12

14

*Forsyth v. HP Inc.,*
15   2024 WL 1354551 (N.D. Cal. Mar. 29, 2024)  16

16

*Glass v. UBS Fin. Servs.,*
17   2007 WL 221862 (N.D. Cal. Jan. 26, 2007)   15

18

*Hanlon v. Chrysler Corp.,*
19   150 F.3d 1011 (9th Cir. 1998)      12

20

*Haralson v. U.S. Aviation Servs. Corp.,*
   2020 WL 12309507 (N.D. Cal. Sept. 3, 2020)  15

21

*Harris v. Vector Marketing,*
22   2012 WL 381202 (N.D. Cal. Feb. 6, 2012)   11-12

23

*Hessefort v. Super Micro Computer, Inc.,*
24   2023 WL 7185778 (N.D. Cal. May 5, 2023)   15

25

*Hutchins v. HP, Inc.,*
26   737 F. Supp. 3d 851 (N.D. Cal. 2024)    13

27

*In re Cathode Tube (CRT) Antitrust Litig.,*
   2016 WL 3648478 (N.D. Cal. July 7, 2016)   15

28

iv

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454, 459 (9th Cr. 2000) ............................................................. 15

*In re Northrup Grumman Corp. ERISA Litig.*,
   2011 WL 3505264 (C.D. Cal. mar. 29, 2011) ......................................... 11

*In re Pac Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ..................................................................... 16

*In re Wells Fargo & Co. Shareholder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) ..................................................... 17

*Knapp v. Art*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ..................................................... 17

*Leyva v. Medline Industs. Inc.*,
   716 F.3d 510, 512 (9th Cir. 2013) ............................................................ 10

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
   2025 WL 1299002 (C.D. Cal. May 2, 2025) ............................................ 13

*Martinez v. Helzberg's Diamond Shops*,
   2021 WL 4730914 (C.D. Cal. Apr. 12, 2021) ......................................... 15

*McManus v. Clorox Co.*,
   2025 WL 732087 (N.D. Cal. Mar. 3, 2025) ............................................. 13

*McWashington v. Nordstrom, Inc.*,
   2025 WL 1736765 (W.D. Wash. June 23, 2025) ...................................... 13

*Munro v. Univ. of S. Cal.*,
   2019 WL 7842551 (C.D. Cal. Dec. 30, 2019) ......................................... 10

*Oliveira v. Language Line Servs., Inc.*,
   767 F. Supp. 3d 984 (N.D. Cal. 2025) ..................................................... 17

*Ross v. Bar None Enters.*,
   2015 WL 1046117 (E.D. Cal. Mar. 9, 2015) ........................................... 11

*Sievert v. Knight-Swift Transportation Holdings, Inc.*,
   2025 WL 1248922 (D. Ariz. April 29, 2025) ........................................... 13

*Smith v. Am. Greetings Corp.*,
   2015 WL 4498571 (N.D. Cal. July 23, 2015) ......................................... 15

*Tibble v. Edison Int'l*,

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

2009 WL 6764541 (C.D. Cal. June 30, 2009)                          11

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)                                           9

*Wright v. JPMorgan Chase & Co.,*
    2025 WL 1683642 (C.D. Cal. June 13, 2025)                     13

**<u>Statutes/Rules</u>**

Federal Rule of Civil Procedure 23                              Passim

**<u>Other Authorities</u>**

Dep't of Labor, Class Exemption for the Release of Claim,
    68 FR 75632-01, 2003 WL23091419 (Dec. 31, 2003)               7, 17

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

Plaintiff Deborah Rodriguez ("Plaintiff") moves the Court for final approval of a settlement resolving class claims brought on behalf of the Intuit 401(k) Plan ("Plan") and its participants and beneficiaries against Intuit Inc. ("Intuit") and The Employee Benefits and Administrative Committee of the Plan ("Committee") (together "Defendants").  The lawsuit challenges how "forfeitures" in the Plan were reallocated.  Before the Plan was amended in 2021 to provide for immediate vesting of employer contributions, a "forfeiture" occurred when participants separated employment before fully vesting in the employer contributions made to the Plan on their behalf.  Plaintiff alleges that Defendants violated the Employee Retirement Income Security Act ("ERISA") by reallocating forfeitures to reduce Intuit's future contributions to the Plan instead of using these funds to defray Plan expenses charged to participant accounts.

This is a novel legal issue and Defendants vigorously contest the legal viability of Plaintiff's theory of recovery.  To date, no circuit-level courts have addressed claims challenging the allocation of forfeitures.  The numerous district courts to address the claims at issue here have reached conflicting rulings, with a majority rejecting the theory of recovery at the pleadings stage.

On July 15, 2025, following over a year of contested litigation, this Court entered an Order granting preliminary approval of a $1,995,000 non-reversionary class settlement.  This amounts to roughly 63% of the administrative expenses deducted from participant accounts that the lawsuit alleges should have been covered by forfeitures and approximately 13% of the total employer contributions the lawsuit alleges were improperly offset by forfeitures. Following preliminary approval, the Court-appointed third party administrator disseminated notice of the settlement and, to date, no class members have objected.  As detailed below, the settlement should be finally approved because it is fair, reasonable, adequate, and in the best interests of the class.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Plaintiff is a former employee of Intuit and a participant in the Intuit Inc. 401(k) Plan ("Plan" or "Intuit Plan").  *See* Declaration of Matthew B. Hayes ("Hayes Decl.") ¶ 10.  The Plan is a defined contribution plan sponsored by defendant Intuit. *See* Hayes Decl. ¶ 11.  Intuit created the Committee and delegated it with certain authorities in connection with the Plan.  *See* Hayes Decl. ¶ 12.

### B.    The Pleadings

On October 2, 2023, Plaintiff filed the present action "on behalf of the Plan" pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2) seeking to represent a class of participants and beneficiaries of the Plan.  *See* Dkt. 1.  The Complaint alleges six claims: (1) breach of ERISA's duty of loyalty in violation of 29 U.S.C. § 1104(a)(1)(A); (2) breach of ERISA's duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B); (3) inurement in violation of 29 U.S.C. § 1103(c)(1); (4) prohibited transactions in violation of 29 U.S.C. § 1106(a)(1); (5) self-dealing in violation of 29 U.S.C. § 1106(b)(1); and (6) failure to monitor fiduciaries.  *See* Dkt. 1.  In connection with these claims, Plaintiff seeks both monetary and equitable relief for the Plan.  *See* Dkt 1 (Compl. pp. 19-21).

All of the claims are premised on Plaintiff's allegations that Defendants violated ERISA when reallocating forfeitures between 2018 and 2021.  *See* Dkt. 1 (Compl. ¶¶ 11-25).  In this regard, the Complaint alleges that "[w]hen a participant has a break in service prior to full vesting of the Company's matching contributions, the participant forfeits the balance of unvested Company matching contributions in his or her individual account and Defendants exercise discretionary authority and control over how these Plan assets are thereafter reallocated."  *See* Dkt. 1 (Compl. ¶ 19).  The Complaint further alleges that "[a]lthough the Plan expressly authorizes the use of forfeited funds to pay Plan expenses" which are otherwise deducted from participant accounts, "Defendants chose to utilize the forfeited funds in the Plan for

1  the Company's own benefit to the detriment of the Plan and its participants, by

2  reallocating nearly all of these Plan assets to reduce future Company matching

3  contributions to the Plan." *See* Dkt. 1 (Compl. ¶ 20).

4      As a result of this decision, Plaintiff alleges that between 2018 and 2021

5  Defendants improperly benefitted Intuit "by reducing its contributions expenses"

6  while "harm[ing]" participants "by reducing future Company matching contributions

7  that would otherwise have increased Plan assets and by causing [them] to incur

8  deductions from their individual accounts each year to cover administrative expenses

9  that would otherwise have been covered in whole or in part by utilizing forfeited

10 funds." *See* Dkt. 1 (Compl. ¶ 25).

11     From 2018 until 2021 – the year Intuit switched to immediate participant

12 vesting in matching contributions – the Complaint alleges that participants incurred

13 a total of $3,146,771 in expense deductions from their individual accounts that could

14 have been covered by forfeitures.  *See* Dkt. 1 (Compl. ¶¶ 21-24); Hayes Decl. ¶ 15.

15 The Complaint also alleges that during this time-period Company matching

16 contributions to the Plan were reduced by $15,236,000.  *See* Dkt. 1 (Compl. ¶¶ 21-24).

17     On December 18, 2023, Defendants filed a motion to dismiss the Complaint on

18 the ground that Plaintiff's allegations "failed to state a claim for any ERISA

19 violation."  Dkt. 33.  After briefing and a hearing, the Court issued an Order on

20 August 12, 2024 granting in part and denying in part Defendants' motion.  Dkt. 63.

21 The Court granted the motion as to the claim against Intuit "for failure to monitor

22 fiduciaries" and "as to all claims against the Committee."  *Id.*  The Court denied the

23 motion as to the remaining claims asserted against Intuit.  *Id.*

24     On September 9, 2024, Intuit filed an Answer denying all alleged liability and

25 asserting multiple affirmative defenses.  Dkt. 68.  Intuit asserted that at all times it

26 used plan forfeitures consistent with Plan terms and ERISA, and that it

27 administered the Plan prudently and in the best interests of Plan participants.

28

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

### C.  <u>Discovery and Investigation Completed Before Settlement</u>

Following the Court's Order on the motion to dismiss, Plaintiff's counsel undertook extensive discovery and investigation concerning the handling of forfeitures, Plan expenses, and company contributions from 2018 through 2021 (hereafter "Class Period").  *See* Hayes Decl. ¶ 18.  Plaintiff's counsel served and received responses to multiple sets of written discovery, including document requests, interrogatories and requests for admissions.  *See* Hayes Decl. ¶ 19. Plaintiff's counsel met and conferred with Intuit's counsel regarding numerous responses and ultimately secured a production of over 7,000 pages of responsive documents.  *See* Hayes Decl. ¶ 20.

Among other things, Plaintiff's counsel sought and ultimately obtained documents and information pertaining to the following throughout the Class Period: (1) all documents governing the Plan and any amendments thereto; (2) the methods used to determine the dollar amounts deducted from participants' account to pay for the Plan's administrative expenses; (3) policies and procedures governing the use or allocations of forfeitures; (4) policies and procedures governing the allocation of the Plan's administrative expenses; (5) meeting minutes documenting any discussions regarding the use or allocation of forfeitures; (6) written and electronic communications concerning any decisions regarding how to use or allocate forfeitures; (7) documents relating to Intuit's decisions to use the forfeitures to offset employer contributions to the Plan; (8) the amount of forfeitures used to offset employer contributions; and (9) the amount of administrative expenses charged to participants' individual accounts.  *See* Hayes Decl. ¶ 21.

Based on the discovery undertaken, Plaintiff was able to conduct a thorough assessment of the likelihood of success on the claims and to calculate the alleged damages to participants and beneficiaries resulting from the allocation of forfeitures to reduce employer contributions rather than defray Plan expenses.  *See* Hayes Decl. ¶ 22.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

### D. <u>Settlement Negotiations</u>

On January 28, 2025 the parties participated in a full day mediation with Honorable Morton Denlow, a retired federal magistrate judge. *See* Hayes Decl. ¶ 23. Through mediation, the parties reached an agreement on a framework for resolving the action and over the next three months engaged in ongoing arms-length negotiations to work out all of the terms of a comprehensive resolution. *See* Hayes Decl. ¶ 24. Finally, in May 2025, the parties executed the Class Action Settlement Agreement ("Settlement"). *See* Hayes Decl. ¶ 25; Dkt. 76-3 (Settlement).

## III. SUMMARY OF SETTLEMENT TERMS

### A. <u>Settlement Class</u>

For purposes of settlement only, the parties have agreed to certification of the following class (hereafter "Settlement Class"):

> All persons who participated in the Plan at any time during the Class Period and had Plan expenses charged to their accounts, excluding members of the Committee, including (a) any Beneficiary of a deceased Person who (i) participated in the Plan at any time during the Class Period and had Plan expenses charged to his or her account or (ii) participated in the Plan before the Class Period and whose beneficiary had an Account in the Plan during the Class Period and had Plan expenses charged to his or her account, and (b) any Alternate Payee of (i) a Person subject to a QDRO who participated in the Plan at any time during the Class Period and had Plan expenses charged to his or her account or (ii) a Person subject to a QDRO who participated in the Plan before the Class Period whose Alternate Payee had an Account in the Plan during the Class Period and had Plan expenses charged to his or her account.

*See* Dkt. 76-3 (Settlement § 1.48).

The "Class Period" is January 1, 2018 through December 31, 2021. *See* Dkt. 76-3 (Settlement § 1.12). The Class Period ends on December 31, 2021 because the Plan document was amended in 2021 to provide for immediate vesting of employer contributions, thereby eliminating the accrual of forfeitures in subsequent years. *See* Hayes Decl. ¶ 15. There are 26,018 members of the Settlement Class. *See* Declaration of Analytics Consulting, LLC (hereafter "Administrator Decl.") ¶ 7.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

### B.   Amount of Settlement

Defendants have agreed to pay a <u>non-reversionary</u> gross settlement amount of $1,995,000 (hereafter "Gross Settlement" or "Gross Settlement Amount").   *See* Dkt. 76-3 (Settlement §§ 1.26, 2.1.).   Subject to Court approval, the following will be deducted from the Gross Settlement:

#### 1.   Class Counsel's Attorneys' Fees and Costs

The Settlement allows Plaintiff's counsel to apply to the Court for attorneys' fees and reimbursement of litigation costs.   The amount of attorneys' fees and costs "shall be determined by the Court, but in no event shall" the total combined amount of fees and costs "awarded exceed 33 1/3% of the Gross Settlement Amount."   *See* Dkt. 76-3 (Settlement § 1.3).   Plaintiff has separately filed an application for attorneys' fees and costs totaling $665,000 (1/3 of the Gross Settlement Amount).   *See* Dkt. 81.

#### 2.   Named Plaintiff Service Award

The Settlement allows Plaintiff to apply to the Court for a "Case Contribution Award" to compensate her for her "assistance in the prosecution of this Class Action."   *See* Dkt. 76-3 (Settlement § 1.8).   "The amount of the Case Contribution Award shall be determined by the Court but in no event shall the amount awarded exceed $5,000."   *Id.*   Plaintiff has separately filed an application for a $5,000 Case Contribution Award.   *See* Dkt. 81.

#### 3.   Settlement Administrator Fees and Costs

The Settlement provides that an amount "not to exceed $90,000" shall be deducted from the Gross Settlement to compensate the "Settlement Administrator" for "all of its duties and responsibilities in administering the Settlement."   *See* Dkt. 76-3 (Settlement § 1.45).   The parties retained, and the Court appointed, Analytics Consulting, LLC ("Settlement Administrator") to administer the Settlement.   *See* Dkt. 80 (Order ¶ 8).   The actual amount to be deducted from the Gross Settlement to

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1  cover the Settlement Administrator's fees and expenses totals $85,810.  *See*

2  Administrator Decl. ¶ 4.

3  ### 4. Plan Recordkeeper Expense Payment

4  The Settlement provides that an amount "which shall not exceed $15,000"

5  shall be deducted from the Gross Settlement to pay the "fees and expenses" charged

6  by the Plan's third party recordkeeper "in connection with gathering and providing to

7  the Settlement Administrator" the identity and contact information for all class

8  members and the data necessary to calculate individual settlement payments under

9  the Plan of Allocation.  *See* Dkt. 76-3 (Settlement §§ 1.37-1.38).  The actual amount to

10  be deducted from the Gross Settlement to cover the charges by the Plan's third party

11  recordkeeper, Empower Retirement, LLC, totals $8,500.  *See* Hayes Decl. ¶ 30.

12  ### 5. Independent Fiduciary Expense Payment

13  The Settlement provides that, following preliminary approval and before the

14  final fairness hearing, Defendants shall appoint a qualified and independent

15  fiduciary on behalf of the Plan to review and evaluate the Settlement and prepare a

16  written determination on whether to approve and authorize the Plan's release of

17  claims under the Settlement.  *See* Dkt. 76-3 (Settlement §§ 3.1-3.1.5).  Because the

18  Settlement provides for the Plan to release claims against a "party in interest"

19  (Defendants), the independent fiduciary review will be conducted to comply with the

20  Department of Labor's class action settlement exemption from ERISA § 406's

21  prohibition on certain "transactions" between a "plan and party in interest," as set

22  forth in Prohibited Transaction Class Exemption 2003-39, issued December 31, 2003,

23  68 Fed. Reg. 75632-01, 2003 WL 23091419, at *75639-75640 (requiring independent

24  "fiduciary that authorizes the settlement").  *See* Dkt. 76-3 (Settlement § 3.1.1).  The

25  independent fiduciary shall be paid from the Gross Settlement for its services in

26  "reviewing and opining upon the Settlement," in an amount that "shall not exceed

27  $25,000."  *See* Dkt. 76-3 (Settlement §§ 1.27-1.28).

28

7

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Newport Trust Company, LLC ("Newport") was retained as the independent fiduciary to review and evaluate the Settlement. *See* Hayes Decl. ¶ 46 (Exh. A: Newport's written evaluation of Settlement). The actual amount to be deducted from the Gross Settlement to cover the charges by the independent fiduciary totals $15,000. *See* Hayes Decl. ¶ 31.

### C.     Calculation of Individual Settlement Payments

After the above deductions from the Gross Settlement, the balance (hereafter "Net Settlement Amount") will be distributed to the Settlement Class pursuant to the Plan of Allocation, which is attached as Exhibit B to the Settlement. *See* Dkt. 76-3 (Settlement §§ 1.29, 6.3, Exh. B).

Under the Plan of Allocation, the Net Settlement Amount will be apportioned pro rata among members of the Settlement Class ("Settlement Class Member" or "Class Member") based on the amount of recordkeeping expenses deducted from their individual accounts during the Class Period. Each Class Member's proportionate share will be calculated by dividing the total recordkeeping expenses paid by the individual Class Member by the total recordkeeping expenses paid by the entire Settlement Class. *See* Dkt. 76-3 (Exh B to Settlement – Plan of Allocation § II. C.). All Class Members will be entitled to at least $10 (the "De Minimis Amount"), such that the Settlement Administrator shall progressively increase Class Members' awards falling below $10 and progressively decrease awards over $10 until the lowest Class Member award is $10. *See* Dkt. 76-3 (Exh. B to Settlement – Plan of Allocation § II.D.)

For Class Members with an active account in the Plan, their share of the Settlement will be deposited into their Plan account and invested pursuant to the Class Member's elections on file for new contributions. *See* Dkt. 76-3 (Exh. B to Settlement – Plan of Allocation § II.E.). For Class Members who no longer maintain an account in the Plan, their share of the Settlement will be paid by check and mailed to them. *See* Dkt. 76-3 (Exh. B to Settlement – Plan of Allocation § II.F.).

8

1  The checks will remain valid for 180 days from the date of issuance and, thereafter,

2  any funds remaining in the Qualified Settlement Fund will be paid to the Plan for

3  the purpose of defraying administrative fees and expenses of the Plan.  *See* Dkt. 76-3

4  (Exh. B to Settlement – Plan of Allocation § II.I.)

5       D.   **The Scope of Release**

6       The scope of the release under the Settlement for the Plan and Class Members

7  is confined to "any and all past, present, and future actual or potential claims" "that

8  were asserted in the [lawsuit] or that could have been asserted based on any of the

9  allegations, acts, omissions, facts, matters, transactions, or occurrences that were

10  alleged, asserted, or set forth in the Complaint."  *See* Dkt. 76-3 (Settlement § 1.39).

11  The release also releases claims against Defendants and the Released Parties related

12  to administration of the Settlement Agreement and approval by the Independent

13  Fiduciary.  *See* Dkt. 76-3 (Settlement §§ 1.39, 1.40).   However, the Settlement

14  Agreement does not preclude claims brought against the Independent Fiduciary

15  alone for the work it performs under the Settlement Agreement.  *See* Dkt. 76-3

16  (Settlement § 1.39.3).

17  **IV.   NOTICE ADMINISTRATION AND REACTION OF THE CLASS**

18       On July 15, 2025, the Court entered an Order granting preliminary approval

19  of the Settlement and conditionally certifying the Settlement Class pursuant to

20  Federal Rule of Civil Procedure 23(b)(1).  *See* Dkt. 80.  The Settlement Administrator

21  was thereafter provided the contact information for all members of the Settlement

22  Class and, after searching the National Change of Address database, mailed the

23  Court-approved notice by first-class mail to all 26,018 members of the Settlement

24  Class.  *See* Administrator Decl. ¶¶ 6-8.

25       Where, as here, a class is certified under Rule 23(b)(1), "[t]he Rule provides no

26  opportunity for . . . class members to opt out."  *Wal-Mart Stores, Inc. v. Dukes*, 564

27  U.S. 338, 362 (2011).  But the Settlement does provide class members an opportunity

28  to object to the Settlement. *See* Dkt. 76-3 (Settlement § 3.4, Exh. C – proposed

9

1  Preliminary Approval Order ¶¶ 8, 11).  The deadline for objecting to the Settlement
2  is October 30, 2025.  *See* Dkt. 80 (Order ¶ 11).

3       To date, there have been no objections to the Settlement.  *See* Administrator
4  Decl. ¶ 13.  Of the 26,018 notices mailed, 201 notices have been returned to the
5  Settlement Administrator with a forwarding address and 890 notices have been
6  returned without a forwarding address.  *See* Administrator Decl. ¶¶ 9-10.  The
7  Settlement Administrator has remailed all 201 notices that were returned with a
8  forwarding address and is currently in the process of conducting a skip-trace to
9  identify updated addresses for the 890 notices that have been returned without a
10 forwarding address.  *See* Administrator Decl. ¶¶ 9-10.  Plaintiff will provide the
11 Court with a further update on the results of the notice process after the October 30,
12 2025 objection deadline has passed.

13 **V.    CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE**
14 **CONFIRMED.**

15      As already detailed at length in the papers submitted in support of
16 preliminary approval, the Settlement Class satisfies all of the requirements for
17 certification under Federal Rule of Civil Procedure 23(a) and (b).  *See* Dkt. 76-1
18 (Memo pp. 12-16).

19      *First*, the Settlement Class meets "the four threshold requirements of Federal
20 Rule of Civil Procedure 23(a):  numerosity, commonality, typicality, and adequacy of
21 representation."  *Leyva v. Medline Industs. Inc.,* 716 F.3d 510, 512 (9th Cir. 2013).
22 Numerosity is satisfied because the Settlement Class includes over 26,000
23 individuals.  *See* Administrator Decl. ¶ 7.  Commonality is satisfied because all of
24 Plaintiff's claims challenge a decision made by Defendants in the "centralized" and
25 Plan-wide "administration of" the Plan's forfeitures, "which is common to all putative
26 class members," and resolution of whether this Plan-wide decision violated ERISA
27 will drive resolution of all claims.  *See Munro v. Univ. of S. Cal.,* 2019 WL 7842551,
28 at *4 (C.D. Cal. Dec. 30, 2019).  Typicality is satisfied because Plaintiff, like the other

10

members of the Settlement Class, maintained a Plan account that was charged with administrative expenses that could have been paid with forfeitures. *See* Hayes Decl. ¶¶ 33-35. Adequacy is satisfied because there are no known conflicts between Plaintiff or her counsel and the Settlement Class and because class counsel is experienced in class actions and ERISA litigation and has vigorously represented the Settlement Class. *See* Hayes Decl. ¶ 36.

*Second*, the requirements for certification of a Rule 23(b)(1) class are satisfied because separate actions by individual Plan participants would risk establishing "incompatible standards of conduct" for Defendants or would "as a practical matter be dispositive of the interests" of other participants "or substantially impair or impede their ability to protect their interests." "If each Plan participant were to bring a claim against Defendants" challenging the same Plan-wide decision to allocate forfeitures toward reducing employer contributions instead of toward defraying Plan expenses, "inconsistent or varying adjudications" of those individual lawsuits "would establish incompatible standards of conduct" for Defendants. *See Tibble v. Edison Int'l*, 2009 WL 6764541, at *7 (C.D. Cal. June 30, 2009). Also, because the claims in this action are brought "on behalf of the Plan" and seek monetary and equitable relief to the Plan "as a whole," the outcome of this litigation "as a practical matter, would be dispositive of the interests of other members" of the Plan and "would substantially impair or impede their ability to protect their interests." *See In re Northrup Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *18 (C.D. Cal. mar. 29, 2011).

Accordingly, the Court should confirm its prior certification of the Settlement Class for purposes of final approval. *See, e.g., Ross v. Bar None Enters.,* 2015 WL 1046117, at *3 (E.D. Cal. Mar. 9, 2015) (finding "certification of the class for the purpose of final approval" to be "appropriate" because "[n]o party or class member has objected to certification of the settlement class, and there is nothing before the court to suggest this prior certification was improper"); *see also Harris v. Vector*

11

1  *Marketing*, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary

2  matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and

3  thus] need not analyze whether the requirements for certification have been met and

4  may focus instead on whether the proposed settlement is fair, adequate, and

5  reasonable.").

6  **VI.    THE SETTLEMENT WARRANTS FINAL APPROVAL.**

7     A court may approve a class settlement "only on finding that it is fair,

8  reasonable, and adequate."    Fed. R. Civ. P. 23(e)(2).    To determine whether a

9  settlement agreement meets these standards, a district court must "balance the

10  following factors:    (1) the strength of the plaintiffs' case; (2) the risk, expense,

11  complexity, and likely duration of further litigation; (3) the risk of maintaining class

12  action status throughout the trial; (4) the amount offered in settlement; (5) the extent

13  of discovery completed and the stage of the proceedings; (6) the experience and views

14  of counsel; (7) the presence of a governmental participant; and (8) the reaction of the

15  class members to the proposed settlement."    *Churchill Vill., L.L.C. v. Gen. Elec.*, 361

16  F.3d 566, 575-76 (9th Cir. 2004).

17     In conducting this analysis, the Ninth Circuit has emphasized that

18  "[s]ettlement is the offspring of compromise" and, as such, "the question . . . is not

19  whether the final product could be prettier, smarter or snazzier, but whether it is

20  fair, adequate and free from collusion."    *Hanlon v. Chrysler Corp.,* 150 F.3d 1011,

21  1026 (9th Cir. 1998).    Moreover, the Ninth Circuit has a "strong judicial policy that

22  favors settlement, particularly where complex class action litigation is concerned."

23  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

24     Here, consideration of the pertinent factors warrants final approval of the

25  Settlement.

26  / / /

27  / / /

28  / / /

12

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

A. __Strength of Plaintiff's Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation__

Plaintiff's entire theory of recovery in this lawsuit – that forfeitures should have been used to pay the Plan's administrative expenses rather than to offset employer contributions – is based on "a novel interpretation of ERISA on which there is no binding authority." *McManus v. Clorox Co.*, 2025 WL 732087, * 1 (N.D. Cal. Mar. 3, 2025). Thus far, the majority of district courts to address the theory of recovery in this action have rejected it as a matter of law and, therefore, granted motions to dismiss the claims asserted here. *See, e.g., Hutchins v. HP, Inc.,* 737 F. Supp. 3d 851 (N.D. Cal. 2024) (granting motion to dismiss ERISA claims for breach of fiduciary duty, unlawful inurement, prohibited transactions, and self-dealing based on employer's decision to reallocate forfeitures to reduce employer contributions instead of to defray Plan expenses); *Dimou v. Thermo Fisher Scientific, Inc.,* 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) (same); *Wright v. JPMorgan Chase & Co.,* 2025 WL 1683642 (C.D. Cal. June 13, 2025) (same); *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002 (C.D. Cal. May 2, 2025) (same); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, *13-16 (W.D. Wash. June 23, 2025) (same); *Sievert v. Knight-Swift Transportation Holdings, Inc.*, 2025 WL 1248922 (D. Ariz. April 29, 2025) (same); *Barragan v. Honeywell Int'l Inc.,* 2024 WL 5165330 (D.N.J. Dec. 19, 2024) (same); *Cain v. Siemens Corp.*, 2025 WL 2172684 (D.N.J. July 31, 2025) (same). An appeal to the Ninth Circuit concerning the viability of Plaintiff's theory of recovery is currently pending in *Hutchins v. HP, Inc.,* No. 25-826 (9th Cir. Feb. 7, 2025).

In addition to the uncertainty concerning the legal viability of Plaintiff's theory of recovery, there are facts unique to the present case that pose additional risks. In this regard, the Plan document at issue here contains language providing that administrative "fees and expenses" of the Plan "shall be charged against Participants' Accounts," and, before the Plan document was amended in January 2020, the

13

1   forfeiture provision did not provide the option of reallocating forfeitures toward

2   paying Plan expenses.  *See* Hayes Decl. ¶¶ 42-43.  If the Court were to find that, prior

3   to 2020, the Plan document did not allow using forfeitures to pay Plan expenses, the

4   maximum potential recovery for Class Members based on Plaintiff's administrative

5   expenses damages theory would be reduced by nearly one-half.  *See* Hayes Decl. ¶ 43.

6          Finally, given the novelty of the claims at issue here, it is likely that any

7   ruling on the merits would ultimately be appealed.  Further litigation could therefore

8   drag on for years.  *See* Hayes Decl. ¶ 44. Thus, considering the significant risks of

9   recovery and the extensive delays of further litigation, these factors weigh in favor of

10  granting final approval of a settlement that will guarantee the class a certain,

11  significant, and expeditious recovery.

12         **B.  Amount Offered in Settlement**

13         The Settlement provides for a non-reversionary payment of $1,995,000 for the

14  benefit of the Settlement Class.  When the amount of the Settlement is considered in

15  light of the alleged damages in this lawsuit and the risks and delays associated with

16  continued litigation, it favors final approval of the Settlement.

17         From 2018 until Intuit switched to immediate vesting of employer

18  contributions in 2021, Plaintiff alleges that participants had, in aggregate,

19  $3,146,771 in administrative expenses deducted from their accounts that could have

20  been covered by forfeitures in the Plan, but that Defendants instead used forfeitures

21  to offset $15,236,000 in matching contributions to the Plan.  *See* Exh. 1 (Compl. ¶¶

22  21-24).   The recovery of $1,995,000 therefore constitutes roughly 63% of the

23  administrative expenses deducted from participant accounts that the lawsuit alleges

24  should have been covered by forfeitures and approximately 13% of the total employer

25  contributions the lawsuit alleges were improperly offset by forfeitures.

26         Considering the substantial risk of securing no recovery whatsoever on all

27  claims in this lawsuit given Plaintiff's novel and unsettled theory of recovery, the

28  amount of the Settlement is fair, reasonable, adequate and well within a range

14

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

warranting approval. *See, e.g., In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cr. 2000) (finding recovery of "roughly one sixth of potential recovery" to be "fair and adequate"); *Martinez v. Helzberg's Diamond Shops*, 2021 WL 4730914, at *8 (C.D. Cal. Apr. 12, 2021) (approving settlement that recovered 11% of maximum recovery); *Haralson v. U.S. Aviation Servs. Corp.*, 2020 WL 12309507, at *5 (N.D. Cal. Sept. 3, 2020) (approving settlement that recovered 10% of maximum recovery); *Smith v. Am. Greetings Corp.*, 2015 WL 4498571, at *8 (N.D. Cal. July 23, 2015) (approving settlement that recovered 20% of maximum recovery); *Glass v. UBS Fin. Servs.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving settlement that recovered 25% of maximum recovery); *Brown v. CVS Pharmacy, Inc.*, 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (approving settlement that recovered 27% of maximum recovery).

## C. <u>Extent of Discovery Completed and Stage of the Proceedings</u>

This factor requires the Court to gauge whether Plaintiff has sufficient information to make an informed decision about the merits of their case. "[T]he extent of discovery completed supports approval of a proposed settlement, especially when litigation has proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their case." *Hessefort v. Super Micro Computer, Inc.*, 2023 WL 7185778, at *6 (N.D. Cal. May 5, 2023) (internal quotation marks omitted); *In re Cathode Tube (CRT) Antitrust Litig.,* 2016 WL 3648478, at *8 (N.D. Cal. July 7, 2016) (same).

Prior to reaching a settlement, Plaintiff's counsel obtained through formal discovery over 7,000 pages of documents, data, and sworn discovery responses, including, among other things, the production of (1) all documents governing the Plan and any amendments thereto, (2) the methods for determining the dollar amounts deducted from participants' account to pay for the Plan's administrative expenses, (3) policies and procedures governing the use or allocations of forfeitures, (4) policies and procedures governing the allocation of the Plan's administrative

15

expenses, (5) meeting minutes documenting any discussions regarding the use or allocation of forfeitures, (6) written and electronic communications concerning any decisions regarding how to use or allocate forfeitures, (7) documents relating to Intuit's decisions to use the forfeitures to offset employer contributions to the Plan, (8) the amount of forfeitures used to offset employer contributions, and (9) the amount of administrative expenses charged to participants' individual accounts. *See* Hayes Decl. ¶¶ 18-21. Based on the extensive discovery received, Plaintiff was able to calculate the alleged injuries to the Settlement Class resulting from the reallocation of forfeitures towards offsetting employer contributions instead of toward defraying Plan expenses. *See* Hayes Decl. ¶ 22.

Furthermore, the protracted settlement negotiations commenced only after the Court ruled on a contested motion to dismiss in which the parties extensively briefed the disputed viability of Plaintiffs' theory of recovery. Accordingly, Plaintiff's counsel had a clear view of the strengths and weaknesses of the case prior to reaching a settlement.

**D. Experience and Views of Counsel and Independent Fiduciary**

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Forsyth v. HP Inc.,* 2024 WL 1354551, at *5 (N.D. Cal. Mar. 29, 2024). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995).

Here, class counsel has been practicing for over 20 years and has extensive experienced in class actions and ERISA litigation. *See* Hayes Decl. ¶¶ 2-9. Class counsel believes the Settlement is an excellent result for the Settlement Class in light of the risks, expenses, and delays of further litigation. *See* Hayes Decl. ¶¶ 38-44.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    Furthermore, because the Settlement provides for the Plan to release claims

2    against a "party in interest" (Defendants), an independent fiduciary was retained to

3    review and evaluate the Settlement on behalf of the Plan in accordance with the

4    Department of Labor's Prohibited Transaction Class Exemption 2003-39, 68 Fed.

5    Reg. 75632-01, 2003 WL 23091419, at *75639-75640 (requiring independent

6    "fiduciary that authorizes the settlement").  After conducting an extensive review of

7    the proposed Settlement – which included reviewing Court filings, interviewing

8    counsel for both parties, evaluating the strengths and weaknesses of each claim,

9    analyzing the terms of the Settlement, evaluating the proposed plan of allocation,

10    and reviewing Plaintiff's counsel's requests for attorneys' fees and expenses – the

11    independent fiduciary found the Settlement to be "reasonable" and therefore

12    "determined that the Plan should not object to the Settlement or any portion thereof."

13    *See* Hayes Decl. ¶ 46 (Exh. A: Newport's written evaluation of Settlement).

14    **E.  The Presence of a Governmental Participant**

15    "The seventh factor – the presence of a governmental participant – is neutral

16    because there is no governmental participant in this case."  *Oliveira v. Language*

17    *Line Servs., Inc.,* 767 F. Supp. 3d 984, 1005 (N.D. Cal. 2025) (Pitts, J.).

18    **F.  Class Member Reaction to the Settlement**

19    "The absence of a large number of objections to a class settlement raises a

20    strong presumption that the terms of a proposed class settlement action are favorable

21    to the class members."  *In re Wells Fargo & Co. Shareholder Derivative Litig.,* 445 F.

22    Supp. 3d 508, 518 (N.D. Cal. 2020).  As such, "[a] court may properly infer that a

23    class action settlement is fair, adequate, and reasonable when few class members

24    object to it."  *Knapp v. Art,* 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017).  To date, not

25    a single person has objected to the Settlement.  *See* Administrator Decl. ¶ 13.  As

26    noted above, Plaintiff will provide a further update regarding the reaction to the

27    Settlement once the October 30, 2025 objection deadline has passed.  Thus far, this

28    factor weighs in favor of final approval.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

VII.    **CONCLUSION**

For the reasons discussed above, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

DATED:  October 14, 2025                    **HAYES PAWLENKO LLP**

/s/Matthew B. Hayes
Attorneys for Plaintiff

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**